| | |
|---|---|
| From: | LFGNotifications@LFG.com |
| Sent: | Friday, October 7, 2022 6:23:28 PM |
| To: | |
| CC: | |
| BCC: | |
| Subject: | [Send Secure]Acadian Ambulance Services,inc Claim No. 9832837 Teresa Lundberg |
| Attachments: | duqrhksbqymys3vj98go_13727958.pdf; |

This notification contains important information regarding a claim with Lincoln Financial Group company. THIS IS AN AUTOMATED EMAIL. PLEASE DO NOT RESPOND. You may use the contact information in the attached letter to respond if needed.

EXHIBIT

1

The Lincoln National Life Insurance Company
Disability and Life Claims Appeal
PO Box 2578
Omaha, NE 68172-9688
Phone No.: (888) 437-7611
Secure Fax No.: (603) 334-0401

October 7, 2022

MS TERESA C LUNDBERG

RE: Long Term Disability (LTD) Benefits
Acadian Ambulance Services, Inc
Claim #: 9832837

Dear Ms. Lundberg:

Lincoln National Life Insurance Company, a Lincoln Financial Group company is responsible for managing claims for Long Term Disability (LTD) Benefits under Acadian Ambulance Services Inc's Long Term Disability Policy. We are writing in reference to your appeal request for Long Term Disability (LTD) Benefits under the Policy.

We reviewed your appeal request for Long Term Disability ("LTD") benefits and maintained the decision to deny benefits beyond April 6, 2022.

**Initial Claim Decision**

We received your submitted claim for your absence from work as of January 8, 2020, as a result of back pain and leg weakness. Your LTD benefits began on April 7, 2020, for your own occupation. The change in definition of disability occurred on April 7, 2022, and to receive benefits beyond 24 months, you must be disabled from any occupation as defined in the Policy. Benefits beyond April 6, 2022 were denied, as the evaluation concluded you were no longer disabled as defined by the Policy.

The basis for the decision was outlined in a letter dated December 21, 2021. You were provided an opportunity to request an appeal review of the denial, stating the reasons why you felt that your claim should not have been denied, and submit additional information to support your claim. Specifically, you were advised to submit the following information:

> *A copy of all office treatment notes, test results, therapy records, hospital admission records, operative reports, and treatment plans from all treating providers from January 8, 2020 to the present and any additional information which you feel will support your claim.*
>
> *You should also provide any additional information that you feel will support your claim.*

Please refer to the December 21, 2021 letter, for further details regarding your claim determination.

**Appeal**

In your letter of appeal dated February 14, 2022, you indicated that you have been under the care of your physicians since 2011 for back and leg conditions with a lumbar fusion in February 2020. Treatments have included medication changes, epidural steroid injections, and therapy with no relief of symptoms. Your appeal further states that you had a spinal cord stimulator implanted in August 2021, which has been adjusted several times with increased break through pain in bilateral hips and legs that will not resolve. You stated that you are unable to sit or stand long periods due to pain, and need to lay down to ease the pain, and that you have restrictions due to narcotics and muscle relaxers.

In support of your claim, you submitted the following information, including but not limited to:

- Letter from Kevin McCarthy MD dated January 13, 2022
- Office visits, diagnostic test results, and lab results from Kevin McCarthy MD from January 14, 2020 to March 29, 2022
- Operative reports from Kevin McCarthy MD from February 19, 2020 to August 24, 2021
- Office visit from Craig Wade MD dated June 15, 2021

**Appeal Evaluation**

During the claim evaluation of ongoing benefits, your claim was most recently reviewed by Richard Avioli MD, who is an independent physician Board Certified in Orthopedic Surgery. Dr. Avioli indicated that your primary diagnoses included chronic pain syndrome due to failed back syndrome following L3-S1 decompression and translumbar interbody fusion at L3-4 and L4-5 and instrumented posterolateral fusion from L3-S1 to treat your chronic low back pain and right lower extremity radiculopathy due to lumbar spinal stenosis; clinically significant comorbid diagnoses of morbid obesity; diabetes; depression; and chronic opioid use.

On December 12, 2021, Dr. Avioli further stated the following, in part:

> *Due to the chronicity of the claimant's low back pain and right lower extremity radiculopathy which has failed to resolve following the claimant's 2/19/20 L3-S1 decompression and fusion and permanent placement of an SCS on 8/24/21 (which resulted in temporary resolution of the claimant's back pain and right lower extremity radiculopathy which then recurred in mid-October 2021 and which is requiring ongoing evaluation and treatment by Dr. McCarthy) which is consistent with the assessment that the claimant's chronic pain is due to failed back syndrome, and the fact that this is a difficult entity to treat since there is usually no surgical treatment for this condition since the source of the pain cannot usually be defined, reasonable R/Ls from 12/1/21-5/1/22 would include frequent sit with the ability to change position as needed, no bend/twist at the waist, no squat/kneel/crawl/climb, and no push/pull/lift greater than 5 pounds on an occasional basis. Based on the chronicity of the claimant's low back pain and right lower extremity radiculopathy due to failed back syndrome due to a prolonged course of conservative treatment and 2 surgical procedures it would be reasonable to expect that if there is no improvement in the claimant's condition by 5/1/22 such that she can sit to*

*stand, stand, and walk without impairment from her low back or right lower extremity that this assessment of the claimant's functional capacity would be permanent.*

Your claim was previously reviewed by a vocational consultant, for a Transferrable Skills Analysis based on your prior work history, educational background, and/or life experience and capacity within the restrictions and limitations outlined by Dr. Avioli. The analysis showed the following occupations in the national economy:

| DOT CODE | OCCUPATION | STRENGTH | MONTHLY WAGE |
|---|---|---|---|
| 203.582-054 | Data Entry Clerk | Sedentary | $2,870 |
| 237.367-038 | Receptionist | Sedentary | $2,593 |
| 237.367-010 | Appointment Clerk | Sedentary | $2,593 |
| 241.367-014 | Customer Complaint Clerk | Sedentary | $2,987 |

Please refer to the December 21, 2021 for further details.

During the review of your appeal, your claim was reviewed by Solomon Rojhani MD, who is an independent physician Board Certified in Physical Medicine & Rehabilitation and Pain Medicine. Dr. Rojhani indicated that your primary diagnoses included chronic pain syndrome, postlaminectomy syndrome, lumbar degenerative disc disease, and thoracic degenerative disc disease.

Since benefits were paid through April 6, 2022, the focus of our review was from this date forward.

On May 26, 2022, Dr. Solomon Rojhani further stated the following, in part:

*Yes, given consideration to both the subjective and clinical information, the evidence suggests that the claimant suffers from a medical condition of such severity as to warrant the placement of restrictions and limitations on her activities for the time period of 04/06/2022 and beyond.*

*The evidence so far supports that the claimant has significant impairments in her function, for which she would require the recommendation of restrictions and limitations within the period of review.*

*Sitting: Constantly, as tolerated, for up to 6 hours total per day*
*Standing: Occasionally, as tolerated, for up to 2 hours total per day*
*Walking: Occasionally, as tolerated, for up to 2 hours total per day*
*Lifting: Occasionally, up to 10 lbs. BUE*
*Carrying: Occasionally, up to 10 lbs. BUE*
*Pushing: Occasionally, up to 10 lbs. BUE*
*Pulling: Occasionally, up to 10 lbs. BUE*
*Climbing stairs: Occasionally*
*Balancing: Occasionally*
*Stooping: Occasionally*
*Kneeling: Unrestricted*
*Crouching: Occasionally*
*Crawling: Never*

*Reaching: Occasionally below waist level; Unrestricted overhead and to desk level, BUE*
*Use lower extremities for foot controls: Occasionally RLE; Unrestricted LLE*
*Fine manipulation: Unrestricted BUE*
*Simple and firm grasping: Unrestricted BUE*
*No climbing ladders*
*No operating of heavy machinery*
*No working at unprotected heights*

*The above-recommended restrictions and limitations are indicated from 04/06/2022 and beyond with reassessment on or around 01/22/23.*

*The claimant has a maximal capacity for a sedentary work function.*

*The claimant's complaints of pain are in line with the diagnosis of the post-laminectomy syndrome and are confounded by the residual underlying degenerative disease of the lumbar and thoracic spine. This limits her ability to sustain prolonged standing, walking, and reaching below the waist level.*

Dr. Rojhani left messages for Dr. McCarthy on May 13 and 17, 2022, however, no responses were received.

We referred your file for a Transferrable Skills Analysis with a vocational rehabilitation consult, and based on the updated capacities from Dr. Rojhani, the previously-identified occupations remained viable.

To afford your claim every consideration, on June 7, 2022, we sent you a copy of the medical peer review completed by Dr. Rojhani and the Transferrable Skills Analysis, to review and provide any additional or missing information or comments you wished to have considered. We asked that any additional information you wished for us to consider be returned to us no later than June 28, 2022, at which time we would proceed with making a determination on your appeal.

In response, we received office visits from Dr. Kevin McCarthy dated April 26, 2022, May 27, 2022, and June 17, 2022. This information was referred for a medical review addendum.

On July 20, 2022, Dr. Rojhani stated the following, in part:

*Yes, the new information changes the previous review results.*

*The findings presented reveal that the claimant suffers from persistent pain in the lower back with radiation and burning to the right lower extremity. Her weakness of the right lower extremity persists, and based on the records reviewed, this has resulted in a fall, due to a significantly antalgic gait. The claimant's condition remains consistent with the post-laminectomy syndrome of the lumbar spine with associated weakness of the right lower extremity. However, with the development of a significant fall resulting in trauma from her antalgia, I believe the claimant requires more stringent restrictions with regard to the level of ambulation that she is capable of tolerating. Although she is noted to have decreased range of motion in the neck following her fall, this is not noted on subsequent*

*records, and with the lack of radiologic findings showing significant acute or chronic pathologies, this is most likely a strain related to her fall(s).*

*Sitting: Constantly, as tolerated, for up to a total of 6 hours total per day*
*Standing: Occasionally, as tolerated, for up to a total of 2 hours total per day*
*Walking: Occasionally, as tolerated, for up to a total of 1 hour total per day*
*Lifting: Occasionally, up to 10 lbs. BUE*
*Carrying: Occasionally, up to 10 lbs. BUE*
*Pushing: Occasionally, up to 10 lbs. BUE*
*Pulling: Occasionally, up to 10 lbs. BUE*
*Climbing stairs: Occasionally*
*Balancing: Occasionally*
*Stooping: Occasionally*
*Kneeling: Unrestricted*
*Crouching: Occasionally*
*Crawling: Never*
*Reaching: Occasionally below waist level; Unrestricted overhead and to desk level, BUE*
*Use lower extremities for foot controls: Never RLE; Unrestricted LLE*
*Fine manipulation: Unrestricted BUE*
*Simple and firm grasping: Unrestricted BUE*

*No climbing ladders*
*No operating of heavy machinery*
*No working at unprotected heights*

*The above-recommended restrictions and limitations are indicated from 04/06/2022 and beyond with reassessment on or around 01/22/2023.*

*The claimant's abilities are sustainable on a full-time basis of 8 hours per day for 40 hours a week.*

Due to the changes in your restrictions and limitations, an updated Transferrable Skills Analysis was requested, and based on the updated capacities, the previously identified occupations remained viable.

We received your phone call on August 4, 2022, where you stated you were not cleared for work yet and that you had recent falls, in addition to a neck injury from a workers compensation fall. You stated that no one would hire you if you are on narcotics and didn't understand why your claim would be denied. We discussed that the medical records on file must show the severity of your conditions and the restrictions and limitations as determined from the records and the medical peer review must indicate that you would be unable to work in any occupation per the policy provisions.

Per your request, we sent you a copy of the recent medical review addendum and the updated Transferrable Skills Analysis, and allowed an additional extension so you can provide recent test results and the next office visit.

It was noted that your June 17, 2022, office visit was not included in the most recent medical review addendum. In addition, we did receive office visits from Dr. McCarthy dated July 26, 2022 and

August 25, 2022, as well as a CT and RF thoracic myelogram from August 22, 2022, and CT lumbar myelogram from August 25, 2022. All this information was referred for a medical review addendum, and we requested a 30-day extension to allow time for the report.

On September 12, 2022, Dr. Solomon Rojhani stated that the new information provided for review did not change the previous review opinion.

Dr. Rojhani also stated the following:

> *The claimant was seen on 06/17/22 by Kevin P. McCarthy, MD with reports of the persistence of the pain in the lower back radiating into the right lower extremity, causing a weakness of 4/5 that had resulted in a recent fall. On examination, she also had a positive straight leg raise test on the right side suggestive of lumbar radiculopathy. In the interim, these symptoms and findings persisted as noted on 07/26/22. It was also noted, however, that she had findings of peripheral neuropathy in her EMG/NCV study. She had imaging of the thoracic and lumbar spine on 08/22/22 and 08/25/22 respectively which revealed degenerative disc disease and spondylosis, with neural foraminal narrowing in the lumbar spine. There was no evidence of substantial nerve compression consistent with radiculopathy. On her latest visit with Kevin P. McCarthy, MD on 08/25/22, she still had pain in the lower back radiating into the right lower extremity, with weakness and a positive straight leg raise on the right side. She also had reports of left more than right neck pain; however, there were no findings of an impaired range of motion in the cervical spine, or radiologic evidence of significant degenerative pathologies noted in the records.*
>
> *The information provided reveals that the claimant continues to suffer from pain in the lower back with radicular symptoms to the right lower extremity, as well as weakness and a positive straight leg raise test. Her imaging of the lumbar spine shows no evidence of nerve impingement or high-grade spinal canal stenosis; however, her EMG study is suggestive of underlying peripheral neuropathy. Based on her physical assessments, and the lack of new pathologic findings, as well as the absence of worsening of the prior degenerative pathology of the lumbar spine, the claimant continues to suffer from impairments in her capabilities to maintain prolonged ambulation, standing, sitting, and reaching below, among others, that are unchanged from the prior assessment. Although she has complaints of neck pain, there is no sufficient evidence supporting substantial impairment secondary to cervicalgia solely. Therefore, restrictions and limitations are indicated as follows, unchanged compared to the previous evaluation.*
>
> *For sitting/standing/walking within the restrictions described below, the claimant should be allowed to change position as needed for comfort.*
> *Sitting: Constantly, 1 hour at a time, for up to 6 hours total per day*
> *Standing: Occasionally, 30 minutes at a time, for up to 2 hours total per day*
> *Walking: Occasionally, 10 minutes at a time, for up to 1 hour total per day*
> *Lifting: Occasionally, up to 10 lbs. BUE*
> *Carrying: Occasionally, up to 10 lbs. BUE*
> *Pushing: Occasionally, up to 10 lbs. BUE*
> *Pulling: Occasionally, up to 10 lbs. BUE*
> *Climbing stairs: Occasionally*
> *Balancing: Occasionally*

*Stooping: Occasionally*
*Kneeling: Unrestricted*
*Crouching: Occasionally*
*Crawling: Never*
*Reaching: Occasionally below waist level; Unrestricted overhead and to desk level, BUE*
*Use lower extremities for foot controls: Never RLE; Unrestricted LLE*
*Fine manipulation: Unrestricted BUE*
*Simple and firm grasping: Unrestricted BUE*
*No climbing ladders*
*No operating of heavy machinery*
*No working at unprotected heights*

*The above-recommended restrictions and limitations are indicated from 04/06/22 and beyond with reassessment on or around 04/06/23. The claimant's abilities are sustainable on a full-time basis of 8 hours per day for 40 hours a week.*

Since the above restrictions and limitations varied from the prior review, we sent your file for another updated Transferrable Skills Analysis. The Transferrable Skills Analysis indicated that based on the updated capacities, the previously identified occupations remained viable.

While the information in your file indicates that it would prevent you from working in your own occupation, you would not be precluded from working in any sedentary occupation.

Dr. McCarthy stated in his January 13, 2022 letter, that you are taking medications that prohibit you from working; that narcotics may interfere with your thought process, Norco and Gabapentin interfere with confusion and alter mental state, and that Robaxin causes drowsiness, thus he felt that you were not ready to return to work. Dr. McCarthy stated your restrictions included no bending, lifting greater than 10-15 pounds, or twisting. He also said you cannot stand or sit for long periods of time and require laying down as needed to help with symptomatic control.

While we recognize you provided the opinion of your treating physician(s) regarding your condition and recovery, we found that the medical evidence provided did not support those decisions. The medical records did not support restrictions and limitations that would preclude you from performing in any sedentary occupation.

Dr. Rojhani recognized that your medication list includes Norco and Neurontin among others, and stated that there are no side effects that would have an impact on occupational functioning. It was further mentioned that these medications have been noted to cause significant dizziness and drowsiness, which places you and others at risk of harm with certain work activities such as working at heights, handling heavy machinery, and driving. However, these types of work activities would not preclude you from the main duties of any sedentary occupation.

There was insufficient documented evidence of significant or severe neurologically impairing central spinal cord or nerve root impingement, high grade vertebral and joint weakness and instability, significant gait instability resulting in frequently witnessed falls, significant distal extremity circulatory, sensory and motor deficits, muscular atrophy, dexterity or coordination problems that

would otherwise translate into a wholly diminished sitting, standing, walking, lifting and fingering functional capacity.

In our review of your claim, Lincoln National Life Insurance Company considers the Social Security Administration's (SSA) ruling to approve Social Security Disability (SSD) benefits. We notified you on March 3, 2022 that you can provide your Social Security information which includes the Administrative Law Judge's Decision letter or file; however, to date we have not received this information. Therefore, our decision was based on the information provided, as detailed previously in this letter. It should also be noted, however, that while we fully consider the SSA's ruling, a decision by the SSA does not determine entitlement to benefits under the terms and conditions of Acadian Ambulance Services Inc's Long Term Disability Policy. Moreover, Lincoln National Life Insurance Company (Lincoln Financial Group) has obtained and considered multiple physician peer reviews and vocational reviews that were not considered by the SS in its determination process.

**Conclusion**

We conducted a thorough and independent review of your entire claim. In summary, we acknowledge that you may have continued to experience some symptoms associated with your condition beyond April 6, 2022. However, the information contains insufficient physical examination findings, diagnostic test results or other forms of medical documentation supporting your symptoms and impairments remained of such severity, frequency and duration that they resulted in restrictions or limitations rendering you unable to perform the duties of the occupations identified as being with in your functional capacity and vocational skills after that date.

Having carefully considered all of the information submitted in support of your claim, our position remains that proof of your continued disability in accordance with the Policy provisions after April 6, 2022 has not been provided. Therefore, no further benefits are payable.

This claim decision reflects an evaluation of the claim facts and Policy provisions. No internal rules, guidelines, protocols, standard or other similar criteria were relied upon in rendering the claim determination.

**Policy Provisions**

In order to continue receiving benefits, you must satisfy the requirements of all Policy provisions that state, in part:

> *"**Disability**" or "**Disabled**", with respect to Long Term Disability, means:*
> *1. For persons other than pilots, co-pilots, and crewmembers of an aircraft:*
> *i. that during the Elimination Period and the next 24 months of Disability the Covered Person, as a result of Injury or Sickness, is unable to perform the Material and Substantial Duties of his Own Occupation; and*
> *ii. thereafter, the Covered Person is unable to perform, with reasonable continuity, the Material and Substantial Duties of Any Occupation.*

*"**Any Occupation**" means any occupation that the Covered Person is or becomes reasonably fitted by training, education, experience, age, physical, mental capacity and which provides the Covered Person with substantially the same earning capacity as the Covered Person's former earning capacity prior to the start of the Disability.*

Under the Employee Retirement Income Security Act (ERISA) appeal guidelines, you were entitled to appeal the decision made by Lincoln Financial Group, and to submit any additional information you wished to be considered as part of the appeal. Lincoln Financial Group has conducted a full and fair review of your appeal and accompanying materials, and has concluded that the denial of benefits will be maintained.

At this time, your administrative right to review has been exhausted; no further review will be conducted by Lincoln Financial Group and your claim will remain closed. You may request to receive, free of charge, copies of all documents relevant to your claim. You have the right to bring a civil action under section 502(a) of ERISA following an adverse benefit determination on review.

The Acadian Ambulance Services Inc's Long Term Disability Policy contains the below provision:

***Legal Proceedings***
*A claimant or the claimant's authorized representative cannot start any legal action:*
*1. until 60 days after Proof of claim has been given; or*
*2. more than one year after the time Proof of claim is required.*

If your plan is subject to ERISA, you may have other voluntary alternative dispute resolution options, such as mediation. One way to find out what may be available is to contact your local U.S. Department of Labor Office or your state insurance regulatory agency. In addition, once all required reviews of your claim have been completed, you have the right to bring a civil action under applicable law. Your employer's plan has a contractual limitations period of one year(s), which means that a lawsuit must be brought within one year(s) after the date written proof of claim or proof of continued disability was required. The date on which the contractual limitations period expires for this claim is April 6, 2023.

This information is provided for purposes of this claim only, as the time proof of claim is required may differ based on claim specifics and applicable policy language.

Nothing in this letter should be construed as a waiver of any Lincoln Financial Group rights and defenses under the above captioned Policy, and all of these rights and defenses are reserved to the Company, whether or not they are specifically mentioned herein.

Decisions made by Lincoln Financial Group are based on the provisions outlined in Acadian Ambulance Services Inc's Policy. These provisions are not contingent on decisions made by either the Social Security Administration or other disability-determining entities.

If you require language translation assistance, please contact Lincoln Financial Group to initiate a service provided free of charge to assist with understanding your claim and appeal rights.

如果您需要翻译方面的帮助，请联系我，我会免费为您服务以便了解您的要求和诉求。

Shá ata' hane'go shíká a'doowoł nínízingo saad hosíníłį' dóó ná'ookąąh nííní'ą́ągo naaltsoos nííníłtsoozígíí hazho'ó bik'idi'deeshtįįł nínízingo doo bą́ąh ílínígóó níká a'doowoł éí biniiyé shił hodíílnih áko ákwe'égi níká adeeshwoł.

Si necesita traducción, contácteme para iniciar un servicio gratuito a fin de ayudarle a entender sus derechos de reclamo y apelación.

Kung nangangailangan ka ng tulong sa translation, mangyaring makipag-ugnayan sa akin upang gumamit ng serbisyong ibinigay nang walang bayad upang matulungan kang maunawaan ang iyong mga karapatan sa paghahabol at pag-aapela.

If you have any questions regarding this matter, please contact me.

Sincerely,

Keri Younker
Claim Resolution Specialist
Phone No.: (800) 423-2765 Ext. 7987
Secure Fax No.: (603) 334-0401