# THIRD PARTY LIABILITY INFORMATION FORM

Lincoln Financial Group®

Lincoln Life Assurance Company of Boston
Group Benefits Disability Claims
P.O. Box 7209
London, KY 40742-7209
Phone No.: (800) 320-7585
Secure Fax No.: (603) 334-9124

**Return To:** John Visaysouk

EMPLOYEE/CLAIMANT NAME: Teresa Lundberg
CLAIM NO: 9832837
EMPLOYER/SPONSOR: Acadian Ambulance Services,inc DATE OF BIRTH: ______

We have received your disability claim and it is our understanding that a Third Party has caused your Injury or Sickness. Please provide the following information and return this form to my attention in order to avoid any delay in processing.

**Did any one of the following cause your Injury or Sickness?**

| | | |
|---|---|---|
| Motor Vehicle accident | Yes ☐ | No ☐ |
| Slip and fall accident | Yes ☐ | No ☐ |
| Occupational injury or sickness | Yes ☐ | No ☐ |
| Faulty Product/Product Liability | Yes ☐ | No ☐ |
| Medical Malpractice | Yes ☐ | No ☐ |

1. Date of Injury/Sickness: ______
2. Location of Injury (please include town and state): ______
3. Description of Injury/Sickness (please include copy of accident report, if applicable): ______

4. Is someone else responsible for your damages? Yes ☐ No ☐
   If "Yes": Name: ______
   Address: ______
   Telephone No.: (  ) ______
5. Are any claims being made? Yes ☐ No ☐
   If "Yes": Insurance Carrier: ______
   Address: ______
   Telephone No.: (  ) ______
   Claim Representative: ______
   Claim No.: ______
6. Are you receiving no fault/personal income protection benefits from your own auto insurance carrier? Yes ☐ No ☐
   If "Yes": Insurance Carrier: ______
   Address: ______
   Telephone No.: (  ) ______
   Claim Representative: ______
   Claim No.: ______
   Weekly Benefit $ ______
7. Are you using the services of an attorney? Yes ☐ No ☐
   If "Yes": Name: ______
   Address: ______
   Telephone No.: (  ) ______

EXHIBIT
2, part 7

**Lincoln/Lundberg 1090**

DRIVER'S LICENSE #: ______________________ DATE: ______________________

SIGNATURE: ______________________

DP 447D Rev. 12/02

# ACTIVITIES QUESTIONNAIRE

Lincoln Financial Group®

Lincoln Life Assurance Company of Boston
Group Benefits Disability Claims
P.O. Box 7209
London, KY 40742-7209
Phone No.: (800) 320-7585
Secure Fax No.: (603) 334-9124

**Return To:** John Visaysouk



EMPLOYEE/CLAIMANT NAME: Teresa Lundberg

CLAIM NO: 9832837 DATE OF BIRTH: ____________

EMPLOYER/SPONSOR: Acadian Ambulance Services,inc

**TO BE COMPLETED BY THE CLAIMANT:**
Please answer the following questions and return the form to Lincoln Life Assurance Company of Boston.

How long are you able to:

sit ____________ stand ____________ walk ____________

How many hours a day do you:

sit ____________ stand ____________ walk ____________

Do you take a nap during the day?

Yes____________ No ____________

If Yes, for how long? ____________ At what time of the day?____________

How many hours a day do you spend in bed?____________

Do you require any assistive devices such as a:

cane ________ walker________ crutches ________ wheelchair ________ other________

How long are you able to sit in a car?____________

Do you hold a valid driver's license?

Yes____________ No ____________

If No, please explain: ____________________________________________

If Yes, how long are you able to drive a car?____________

**Please provide a copy of your driver's license when returning this form.**

How do you maintain contact with people or activities that matter most to you?

____________________________________________

Do you have children?

Yes________ No ________ If Yes, what are their dates of birth ____________________

Do you need help caring for your children?

Yes ________ No ________

Are you responsible for taking care of any grandchildren, an elderly parent or grandparent?

Yes________ No ________ If Yes, please explain ____________________

How many times a day do you leave the house during the week? ____________

On the weekends?____________

How often do you run errands? ____________________

Please describe what errands you most commonly run: ____________________________________________

Lincoln Financial Group®

*ACTIVITIES QUESTIONNAIRE*
*page 2 of 3*

How often do you get outdoors? ______________________________

Are you left or right hand dominant? Left ______ Right ______

Are you able to work in your garden? Yes ______ No ______

Are you able to work on your house? Yes ______ No ______

Are you able to wash your car? Yes ______ No ______

How much time is spent daily on your home computer?
_______ None _______ 0-1 hours _______ 1-2 hours _______ 2-3 hours _______ 3+ hours

How much time is spent weekly on your home computer?
_______ None _______ 0-1 hours _______ 1-2 hours _______ 2-3 hours _______ 3+ hours

What activities do you perform on your home computer. Please check all that apply:

_______ Pay bills _______ Read news/articles _______ Use search engines _______ Send emails

_______ Visit chat rooms _______ Photos Other: ______________________

What computer software applications do you utilize. Please check all that apply:

______ Word processing (Word) ______ Spreadsheets (Excel) ______ Database (Access) ______ Graphics

______ Photo software (Photoshop) ______ Programming Other: ______________________

Do you have a working home copy machine/fax machine? ______ Yes ______ No

If yes, please explain purpose and usage: ______________________________

The following questions intend to identify whether or not you are able to independently conduct routine daily activities. If assistance is required, please clarify.

| **How are the following accomplished?** | **By Whom?** | **Assistance Required?** |
|---|---|---|
| Grocery Shopping | | |
| Carrying groceries into the house | | |
| Cooking meals | | |
| Cleaning after meals | | |
| Cleaning bathrooms | | |
| Vacuuming | | |
| Doing the laundry | | |
| Opening and responding to mail | | |
| Managing your finances | | |
| Balancing your checkbook | | |
| Bathing yourself | | |
| Styling your own hair | | |
| Getting dressed | | |
| Going up and down stairs | | |

Have you been confined to a hospital within the last 12 months? Yes ______ No ______

If Yes, please provide reason and hospital contact Information: ______________________

Lincoln Financial Group®

*ACTIVITIES QUESTIONNAIRE*
*page 3 of 3*

How often do you travel or take vacation? ______________________________

Where do you go? How do you get there (transportation method)? ______________________________

______________________________

Are you able to pursue your hobbies? Yes ______ No ______

If Yes, please describe ______________________________

Do you participate in an exercise program? Yes ______ No ______

If Yes, please describe ______________________________

Do you do any Volunteer work? Yes ______ No ______

If Yes:

how many hours per day? __________

how many hours per week? __________

for whom? ______________________________

Are you working for wages? Yes ______ No ______

If Yes, please provide employer's name ______________________________

**Describe in your own words, what prevents you from engaging in any gainful employment.**

______________________________
______________________________
______________________________
______________________________
______________________________

**Please describe your daily routine: (if more space is needed, please use the back of this form)**

______________________________
______________________________
______________________________
______________________________
______________________________

Is there a daytime number where you can be reached in the event we have any questions regarding your responses?

______________________________

In the event we cannot reach you, please provide an alternate contact's name and telephone number.

______________________________

**Upon completion of this form, please sign and date below and return in the envelope provided to you. Thank you for your cooperation.

The above statements are true and complete to the best of my knowledge and belief and I hereby authorize any hospital or physician who has treated me or other person who has attended me or examined me or any company or Government agency to furnish the Insurance Company providing this firm or their representative, any and all information with respect to any illness, injury, medical history, consultations, prescriptions, treatments or benefits and copies of all applicable records. A photo static copy of this form will be as valid as the original. I understand that if this information changes at any time, I will contact Lincoln Financial Group.

Name: ______________________ Date: ______________________

Signature: ______________________

Lincoln Financial Group®

Lincoln Life Assurance Company of Boston
Group Benefits Disability Claims
P.O. Box 7209
London, KY 40742-7209
Phone No.: (800) 320-7585
Secure Fax No.: (603) 334-9124

# AGREEMENT CONCERNING BENEFITS

Return To: John Visaysouk

Policy No: 09 - LF0211

Claim Number: 9832837

Employer: Acadian Ambulance Services,inc

Address

Claimant: Teresa Lundberg

Date of Disability: 01/08/2020

In return for the advance payment of group disability benefits made to me by Lincoln Life Assurance Company of Boston, which may be in excess of the amount due to me under the terms of Policy number 09 LF0211 I, for myself, my heirs, executors, administrators and assigns agree:

1) That I am not currently receiving any benefits from Social Security and/or Workers' Compensation.

2) If I apply for Social Security benefits and/or Workers' Compensation benefits I will promptly notify Lincoln Life Assurance Company of Boston.

3) If I, and/or my spouse and family receive any benefits payments, from Social Security and/or Workers' Compensation, I, and/or my spouse and family will immediately notify by Lincoln Life Assurance Company of Boston, of such benefit payments and pay back any overpayment resulting from this award in accordance with my Policy provisions.

4) I understand that thereafter Lincoln Life Assurance Company of Boston is entitled to integrate any amounts received from Social Security and/or Workers' Compensation with the benefits payable under the Policy in accordance with the terms of the Policy.

I understand that Lincoln Life Assurance Company of Boston in reliance on the above statements and promises, has agreed to advance benefits to me.

Claimant Name (please print)

Address

Signature

Date

***PLEASE RETAIN A COPY FOR YOUR RECORDS, OR ONE MAY BE PROVIDED FOR YOU UPON REQUEST.***

Lincoln Financial Group®

Lincoln Life Assurance Company of Boston
Group Benefits Disability Claims
P.O. Box 7209
London, KY 40742-7209
Phone No.: (800) 320-7585
Secure Fax No.: (603) 334-9124

## AUTHORIZATION FOR THE RELEASE OF INFORMATION INCLUDING PROTECTED HEALTH INFORMATION

**I HEREBY AUTHORIZE THE USE OR DISCLOSURE OF INFORMATION ABOUT ME AS DESCRIBED BELOW:**
**Person(s) or group(s) of persons authorized to use or disclose the information:** Any physicians, medical practitioners, hospitals, clinics, HMOs, long-term care facilities, medical or medically-related facilities, pharmacies, insurance companies, credit or consumer reporting agency, financial/educational institutions, current or former employer, governmental agency, MIB Inc., and any insurance support organizations.
**Person(s) or group(s) of persons authorized to collect or otherwise receive the information**: The particular Company in the Lincoln Financial Group of companies to which I am submitting a claim and its authorized representatives, agents and/or employees, the Plan Sponsor (if self-insured Plan) and other organizations providing claims management services.
**Description of the information that may be used or disclosed**: This Authorization specifically includes the release of all information related to:

* My physical and mental health and my insurance policies and claims, including, but not limited to, those containing diagnosis, treatments, prognosis, prescription drug information, alcohol or drug abuse or information regarding communicable or infectious conditions, including HIV/AIDS.
* Job duties, earnings, personnel records and other work related information and credit reports, bank records, and federal and state tax returns.
* Information concerning Social Security benefits, including any records pertaining to me and my dependents

**The information will be used or disclosed only for the following purpose(s):** For purposes of investigating, evaluating and processing my claim, and/or for insurance-related functions.

**STATEMENTS OF UNDERSTANDING & ACKNOWLEDGMENT:**
**I understand** that information used or disclosed pursuant to this authorization could be subject to redisclosure as necessary by the recipient and, if so, may not be subject to federal or state law protecting its confidentiality.
**I understand** that I may revoke this authorization in writing at any time by sending a written revocation to the Company in the Lincoln Financial Group of companies to which I have submitted a claim, except to the extent that action has been taken in reliance on this authorization, or to the extent that other law provides the Company with the right to contest a claim. I also understand that the revocation of this authorization will not affect uses and disclosures of my health information for purposes of treatment, payment and health care operations.
**I understand** that authorizing the disclosure of my health information is voluntary and the provision of health care services to me is not conditioned on whether I sign this authorization. If I choose not to sign this authorization, insurance coverage or claim payments may be denied or delayed.
This authorization shall remain in force for 24 months from the date of signature, except to the extent applicable state law imposes or allows a different duration. The information obtained under this authorization will be retained in accordance with the Company's standard retention policy and applicable law. I understand that I may request a copy of this authorization.

Name of claimant (print) ____________________________________

Name of legal representative, if applicable (print) _________________________________ Relationship ___________________

Signature of claimant or legal representative ________________________________________

Date of Birth: __________________ Claim Number: 9832837 Date: ____________________________

**A copy of this authorization will be considered as valid as the original.**

# CLAIMANT INFORMATION FORM

Lincoln Life Assurance Company of Boston
Group Benefits Disability Claims
P.O. Box 7209
London, KY 40742-7209
Phone No.: (800) 320-7585
Secure Fax No.: (603) 334-9124

**Return To:** John Visaysouk

EMPLOYEE/CLAIMANT NAME: Teresa Lundberg
CLAIM NO: 9832837
EMPLOYER/SPONSOR: Acadian Ambulance Services,inc DATE OF BIRTH: ______

**TO BE COMPLETED BY EMPLOYEE:**
Please provide us with the names of all medical providers, hospitals, medical insurance carriers, and pharmacies used during the time period from 01/01/2020 to present. *If additional space is needed, please use a separate sheet of paper.*

**MEDICAL PROVIDERS/THERAPISTS/CLINICS/HOSPITALS:**

Name: ______ Name: ______
Specialty: ______ Specialty: ______
Address: ______ Address: ______
______ ______
Telephone No. :( ) ______ Fax No. :( ) ______ Telephone No. :( ) ______ Fax No. :( ) ______

Name: ______ Name: ______
Specialty: ______ Specialty: ______
Address: ______ Address: ______
______ ______
Telephone No. :( ) ______ Fax No. :( ) ______ Telephone No. :( ) ______ Fax No. :( ) ______

**MEDICAL INSURANCE CARRIER(S):**

Name: ______ Name: ______
Specialty: ______ Specialty: ______
Address: ______ Address: ______
______ ______
Telephone No. :( ) ______ Fax No. :( ) ______ Telephone No. :( ) ______ Fax No. :( ) ______

**PHARMACY(S):**

Name: ______ Name: ______
Specialty: ______ Specialty: ______
Address: ______ Address: ______
______ ______
Telephone No. :( ) ______ Fax No. :( ) ______ Telephone No. :( ) ______ Fax No. :( ) ______

I hereby attest the above statement is true. I understand that any person who knowingly and with intent to injure, defraud, or deceive the insurance company files a statement or claim containing any false or misleading information may be guilty of a criminal act punishable under law.

**SIGNATURE:** ______________________________ **DATE:** ______________________________

# CLAIMANT SUPPLEMENTARY STATEMENT

Lincoln Financial Group®

Lincoln Life Assurance Company of Boston
Group Benefits Disability Claims
P.O. Box 7209
London, KY 40742-7209
Phone No.: (800) 320-7585
Secure Fax No.: (603) 334-9124

**Return to:** John Visaysouk

**EMPLOYEE/CLAIMANT NAME:** Teresa Lundberg **CLAIM #:** 9832837

**EMPLOYER:** Acadian Ambulance Services,inc **DATE OF BIRTH:** __________

| | | | |
|---|---|---|---|
| Full Name (Last, First, Middle Int.) | Social Security # | Email Address | |
| Street Address | City | State | Zip Code |
| Telephone Number (include area code) | Cell Phone Number (include area code) | Marital Status | |
| Spouse's Full Name and Date of Birth | Number of Children | Dates of Birth of Children | |

Next of Kin/Emergency Contact (required should additional benefits be payable in the event of your death).
Name Relationship to you? Tel #.

Have you returned to any type of employment or activity that provides you money? If yes, please provide name of employer, start date, hours worked per/wk and rate of pay.

Do you own a business, or are you involved or affiliated with any type of business, corporation, partnership, or sole proprietary? If yes, please explain and provide proof of income from prior year.

Do you have a tax identification number (TIN) or employer identification number (EIN)? If yes, for what purpose?

Do you hold a professional license? If yes, for what purpose?

Are you associated with an Internet business of any kind? Do you have a website? If yes, please explain and provide website address(es) and the date started.

Are you pursuing money from a third party or involved in any litigation? If yes, please explain why and provide your attorney's contact information.

Are you pursuing moneys from a third party: Workers' Compensation Carrier, Insurance Co., or Individual? If yes, please explain.

Identify other income you are receiving or for which you have applied. You have an ongoing obligation to notify us immediately of receipt of any other income or any other changes to this information, including supporting documentation confirming the amount you receive and the effective date:

| Yes | No | Type | Amount per Week/Month | Date Began Receiving | Date Ceased Receiving | Date Income Applied for |
|---|---|---|---|---|---|---|
| ☐ | ☐ | Wages/ Income/ Money/ Unemployment | $ ______ | ______ | ______ | ______ |
| ☐ | ☐ | Social Security (disability or retirement) | $ ______ | ______ | ______ | ______ |
| ☐ | ☐ | Social Security (for your spouse/dependents) | $ ______ | ______ | ______ | ______ |
| ☐ | ☐ | Short Term Disability or State Disability | $ ______ | ______ | ______ | ______ |
| ☐ | ☐ | Pension or Retirement benefits (lump sum/ongoing) | $ ______ | ______ | ______ | ______ |
| ☐ | ☐ | Workers' Compensation | $ ______ | ______ | ______ | ______ |
| ☐ | ☐ | Severance or Employment Separation payment (provide Agreement) | $ ______ | ______ | ______ | ______ |
| ☐ | ☐ | Other income/money/benefit (describe) ______ | ______ | ______ | ______ | ______ |

**If my claim is overpaid, I understand and agree that Lincoln Financial Group has the right to recover such overpayment from me, including the right to reduce future disability benefits, or pursue other collection methods as appropriate. The above statements are true and complete to the best of my knowledge and I understand that any person who knowingly, and with intent to injure, defraud, or deceive Lincoln Financial Group and/or Plan Sponsor, files a statement or claim containing any false, incomplete, or misleading information may be guilty of a criminal act punishable under law. A photo static copy of this form will be valid as the original.**

**EMPLOYEE'S PRINTED NAME:** ____________________

**DATE:** ____________ **EMPLOYEE'S SIGNATURE:** ____________________

DP 409

# FAMILY INFORMATION QUESTIONNAIRE

Lincoln Financial Group®

Lincoln Life Assurance Company of Boston
Group Benefits Disability Claims
P.O. Box 7209
London, KY 40742-7209
Phone No.: (800) 320-7585
Secure Fax No.: (603) 334-9124

**Return to:** John Visaysouk

EMPLOYEE/CLAIMANT NAME: Teresa Lundberg
CLAIM NO: 9832837
EMPLOYER/SPONSOR: Acadian Ambulance Services,inc DATE OF BIRTH: ____________

To document your Long Term Disability Claim file and properly administer benefits, we need the following information. Please complete and return this form in the envelope provided. Thank you for your prompt attention to this request for information.

What is your marital status? Single ____ Married ____ Divorced ____
If married, please indicate your spouse's name and date of birth. Name: ______________ DOB: ________

Do you have children or dependents*? Yes ____ No ____
If yes, please provide additional details below, using additional space as needed.
* An eligible dependent may include:

- Biological child(ren)
- Stepchildren
- Children not residing in your household
- Custodial Grandchildren
- A child 18 or older with a disability that started before age 22
- Adopted Children
- A child 18-19 and a full-time student (not higher than grade 12)

| Name | DOB | If Divorced or Separated, Indicate Custodial or Non-Custodial | High School Student? Yes or No | Anticipated/Actual Last Month/Year of High School |
|---|---|---|---|---|
| | | | | |
| | | | | |
| | | | | |
| | | | | |

Is your spouse and/or children receiving Social Security benefits? Yes: ________ No: ________
If yes, please complete the information below and include a copy of their Social Security Award Certificate(s).

If no, however, they were previously receiving Social Security benefits in the past and are no longer, please include a copy of the Social Security Termination notice (s), if this information has not already been provided to Lincoln Life Assurance Company of Boston.

| Name | DOB | Awarded as: Dependent, Spouse or Disabled | Current Monthly Benefit Amount | Date of Entitlement to Benefits | Benefit Termination Date (if applicable) |
|---|---|---|---|---|---|
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |

Your Name: ______________________ Date: ____________

# REIMBURSEMENT AGREEMENT

Lincoln Financial Group®

Lincoln Life Assurance Company of Boston
Group Benefits Disability Claims
P.O. Box 7209
London, KY 40742-7209
Phone No.: (800) 320-7585
Secure Fax No.: (603) 334-9124

**Return To:** John Visaysouk

Please complete, sign, and return a copy to Lincoln Financial Group.

***TO BE COMPLETED BY LINCOLN FINANCIAL GROUP***

Claimant Name: **Teresa Lundberg**

Address:

Name of Employer: **Acadian Ambulance Services,inc**

In consideration of the receipt of disability benefit payments received by me from the Plan Sponsor, I

( **Teresa Lundberg** ) hereby agree:
(Claimant Name)

(a) to repay the Plan Sponsor for such benefits to the extent they are for losses for which compensation is paid to the covered person by or on behalf of the person at fault;

(b) to allow the Plan Sponsor a lien on such compensation and to hold such compensation in a trust for the Sponsor, and;

(c) to execute and give to the Plan Sponsor any instruments needed to secure the rights under (a) and (b).

Further, when the Plan Sponsor has paid benefits to or on behalf of the injured covered person, the Plan Sponsor will be subrogated to all rights of recovery that the covered has against the person at fault. These subrogation rights will extend only to recovery of the amount the Plan Sponsor has paid. The covered person must execute and deliver any instruments needed and do whatever else is necessary to secure those rights to the Plan Sponsor.

______________________ (Date)

______________________ (Signature of injured individual or legal representative)

**PLEASE RETAIN A COPY FOR YOUR RECORDS, OR ONE MAY BE PROVIDED FOR YOU UPON REQUEST.**

**LINCOLN FINANCIAL GROUP**
**LINCOLN LIFE ASSURANCE COMPANY OF BOSTON**

# SOCIAL SECURITY/REIMBURSEMENT AGREEMENT

**INSTRUCTIONS: The policy/plan under which you are covered provides that Short Term, Statutory and/or Long Term Disability benefits (herein referred to as "disability benefits") will be reduced by the amount of Social Security benefits which you and your dependents (if applicable) are eligible to receive. This may affect your future disability benefits as well as prior disability benefits which have been issued to you.**

**The policy/plan also provides that in the event you do not apply for Social Security Disability benefits, your disability benefits will be reduced by the amount of Social Security Disability benefits you and your dependents (if applicable) would be eligible to receive if application had been made. Please review, sign and return this form to our office. We recommend you maintain a copy for your records.**

**Claimant:** Teresa Lundberg **Date of Birth:** ___________

**Employer:** Acadian Ambulance Services,inc **Policy/Plan Sponsor No.** 09 - LF0211

**A) If disability benefits are approved I request that Lincoln Life Assurance Company of Boston (Liberty Life) pay me my benefit with no reduction for estimated Social Security Disability benefits until Social Security makes a decision. I understand that this may result in an overpayment of disability benefits paid to me if Social Security subsequently awards benefits to me, and I understand that I must repay this overpayment to Liberty Life. In consideration of Liberty Life paying me a disability benefit with no reduction for estimated Social Security benefits until Social Security makes a decision, I agree to the following:**

1) **I agree to apply for Social Security Benefits within 45 days of Liberty Life's written request and provide proof of such application.**
2) **I agree to comply with the policy/plan provision applicable for appealing a denial, if not awarded and provided proof of such appeal.**
3) **I agree to notify Liberty Life immediately if awarded Social Security Benefits.**
4) **I authorize Liberty Life to release information concerning Social Security benefits to my employer for administration of my employer sponsored benefits.**
5) **If Social Security awards benefits to me, I agree that Liberty Life has a first lien on all such benefits to the extent of any overpayment or debt, and I agree to hold all such Social Security benefits in a trust for the benefit of Liberty Life until the amount of Liberty Life's overpayment has been repaid in full.**
6) **I agree to repay Liberty Life in full within the time period specified in my policy/plan provision.**

**B) Social Security benefits will be estimated if:**

1) **I do not sign and return this form to Liberty Life within 45 days of receipt.**
2) **I do not apply for Social Security benefits within 45 days of Liberty Life's written request and provide proof of such application, or I have failed to actively pursue my Social Security claim according to the policy/plan provisions.**

**If I do not repay any overpayment due to Liberty Life in full, I understand Liberty Life will discontinue payment of benefits to me, including payments for insurance premiums and other deductions paid on my behalf, and Liberty Life may withhold future disability benefits until the overpayment is recovered in full. In addition, Liberty Life may also pursue other means permitted by law to collect the overpayment amount owed.**

**(Insured/Employee signature)** ______________________________

**(Address)** ______________________________

**(Date)** ______________________________

***Please retain a copy for your records or one can be provided upon request.***

# TRAINING-EDUCATION-EXPERIENCE FORM (TEE)

Lincoln Financial Group®

Lincoln Life Assurance Company of Boston
Group Benefits Disability Claims
P.O. Box 7209
London, KY 40742-7209
Phone No.: (800) 320-7585
Secure Fax No.: (603) 334-9124

EMPLOYEE/CLAIMANT NAME: Teresa Lundberg
CLAIM NO: 9832837
EMPLOYER/SPONSOR: Acadian Ambulance Services,inc DATE OF BIRTH: ______

**Please fill out each section completely**

**EDUCATIONAL BACKGROUND: (If you have a resume, please attach)**

Highest Grade Completed: ______ Check if earned: ☐ GED ☐ HS Diploma

Vocational Training: ______ Certificate Program completed: ______

Associates Degree: ______ College: number of years: ______

Bachelor's Degree: BA /BS Major: ______ Graduate School: MA ☐ MS ☐ CAGS ☐ PHD Degree: ______

Professional Training, License, Certificates(s): ______

Are you currently attending any classes: ☐ Y ☐ N If yes, provide name of school: ______

List any other Training or Classes Attended or Plan to Attend: ______

Primary language spoken: ______ Other language(s) spoken fluently: ______

Additional Skills, Hobbies & Volunteer Work ______

Did you serve in the Armed Forces? ☐ Y ☐ N From: ______ To: ______

Branch of Service: ______ Specialty: ______

**WORK EXPERIENCE:** (If you've held different positions for the same employer, please include them below)
Please list chronologically (starting with the most recent) all the jobs/positions you have held in the past 15 years.
(add additional pages if needed for a complete work history).

1. Company: ______ Department: ______ From: ______ To: ______
   Job Title(s): ______
   Supervisory Experience ☐ Y ☐ N
   Tasks/Duties/Physical Requirements (please be specific): ______

2. Company: ______ Department: ______ From: ______ To: ______
   Job Title(s): ______
   Supervisory Experience ☐ Y ☐ N
   Tasks/Duties (please be specific): ______

3. Company: ______________________ Department: ______________________ From: ________ To: ______
   Job Title(s): ____________________________________________
   Supervisory Experience ☐ Y ☐ N
   Tasks/Duties (please be specific): ____________________________________________
   ____________________________________________

4. Company: ______________________ Department: ______________________ From: ________ To: ______
   Job Title(s): ____________________________________________
   Supervisory Experience ☐ Y ☐ N
   Tasks/Duties (please be specific): ____________________________________________
   ____________________________________________

5. Company: ______________________ Department: ______________________ From: ________ To: ______
   Job Title(s): ____________________________________________
   Supervisory Experience ☐ Y ☐ N
   Tasks/Duties (please be specific): ____________________________________________
   ____________________________________________

**Computer Utilization:**

Computer Training/Courses, Certifications: ____________________________________________

| | Home | Work | | Home | Work |
|---|---|---|---|---|---|
| Email | ☐ | ☐ | Graphics Software | ☐ | ☐ |
| Internet | ☐ | ☐ | Installation/Repair Hardware | ☐ | ☐ |
| Word Processing (MS Word) | ☐ | ☐ | Installation/Repair Programming | ☐ | ☐ |
| Spread Sheet (MS Excel) | ☐ | ☐ | Project Management | ☐ | ☐ |
| Database | ☐ | ☐ | Other: ____________ | | |
| Photo Software | ☐ | ☐ | | | |

How much time is spent daily on your work computer? ☐ None ☐ 1-2 hours ☐ 2-3 hours ☐ 3+ hours

How much time is spent daily on your home computer? ☐ None ☐ 1-2 hours ☐ 2-3 hours ☐ 3+ hours

Keyboarding/Typing Experience: ☐ Yes ☐ No If yes, WPM (words per minute) ________________
(We recommend- http://typingtest.com to determine WPM)

Please provide your email address: Personal: ____________________ Work: ____________________

**SIGNATURE:** ______________________ **PHONE NO: (      )** ______________________

# Workers' Compensation
# INFORMATION FORM

Lincoln Financial Group®

Lincoln Life Assurance Company of Boston
Group Benefits Disability Claims
P.O. Box 7209
London, KY 40742-7209
Phone No.: (800) 320-7585
Secure Fax No.: (603) 334-9124

Return To: John Visaysouk

EMPLOYEE/CLAIMANT NAME: Teresa Lundberg

CLAIM NO: 9832837

EMPLOYER/SPONSOR: Acadian Ambulance Services,inc DATE OF BIRTH: ______

We received your disability claim form. The form indicates that your disability is the result of a work related Injury/Sickness. Please provide the following information and return this form to my attention in order to avoid any delay in processing.

1. Date of Injury/Sickness: ______
2. Location of Injury (please provide complete address): ______
3. Description of Injury/Sickness (please include copy of accident report): ______

______

4. Please provide the name of your Employer:
   - Company Name: ______
   - Address: ______
   - Supervisor Name: ______ Telephone: ( ) ______
5. Please provide the name of your Employer's Workers' Compensation Carrier or Administrator:
   - Insurance Carrier: ______
   - Address: ______
   - Telephone: ( ) ______
   - Claim Representative: ______
6. Are you collecting benefits from your Employer's Workers' Compensation Insurance Company or Administrator?
   - Yes ☐ No ☐
   - If "Yes": Weekly Benefit Amount $ ______
   - Claim No.: ______
7. Are you using the services of an attorney?
   - Yes ☐ No ☐
   - If "Yes": Name: ______
   - Address: ______
   - Telephone: ( ) ______

SIGNATURE: ______ DATE: ______

DP 539D – Rev. 12/02

**Lincoln/Lundberg 1105**

# Advantages of Social Security Disability Benefits

- **Increased Disability Benefits**
  - **Though you and your dependents' initial Social Security benefit would be offset from your Long Term Disability payment, your future Social Security cost of living (COLA) increases would not. Therefore you would maximize your combined benefits because they would increase each year.**
- **Increased Retirement Benefits**
  - **For any period within a year that you are not paying into Social Security (FICA) out of your earnings, zeros are being factored into your earnings record. If found eligible for SSDI for any period of time when there were zeros, they will be excluded from the calculation of future benefits. As a result, the amount of your eventual Social Security Retirement Benefit could be *substantially higher*.**
- **Cost of Living Adjustment (COLA) Raises**
  - **SSA will provide you and any eligible dependents an increase annually. These increases will not affect your Long Term Disability benefits.**
- **Tax Free Income**
  - **The majority of Social Security beneficiaries who receive Social Security Disability income are either entirely or partially tax free based on certain criteria set by SSA.**
- **Medicare Coverage**
  - **After you have received Social Security Disability benefits for 24 months, regardless of your age, you also become eligible for Medicare benefits. This includes Part A Hospital benefits, and Part B Medical benefits, which added to any other health insurance coverage you might have, will increase your overall health insurance protection.**
  - **Once you establish Medicare Eligibility your premiums for any other health insurance you might have could decrease. With Medicare coverage available to help pay medical expenses, such premiums may be adjusted downwards.**
  - **Medicare Part A is at no cost while Medicare Part B has an associated premium. You can access http://www.socialsecurity.gov/medicare/ for more information and costs associated with the program.**
- **COBRA Extension**
  - **If you receive Social Security Disability benefits the length of your COBRA benefits may be extended an additional 11 months.**
- **Return To Work Incentives**
  - **Social Security will provide you opportunities to Return To Work while still paying you disability benefits.**

Lincoln Financial Group®

# Attending Physician's Statement

**Lincoln Financial Group**
P.O. Box 7209
London, KY 40742-7209
Phone No:(800) 320-7585
Secure Fax No: (603) 334-9124

**Return To:** John Visaysouk

**To be completed by treating provider:**

**1. Patient Information**

| Full Name (First) | (M.I.) | (Last Name) | Claim Number |
|---|---|---|---|
| Teresa | | Lundberg | 9832837 |

| Height | Weight | Blood Pressure | Employer Name |
|---|---|---|---|
| | | | |

**2. Diagnosis**

| Primary ICD diagnostic Code **(Required)** | Primary ICD diagnosis Description |
|---|---|
| | |

| Secondary ICD Diagnosis Code | Secondary ICD Diagnosis Description |
|---|---|
| | |

**Pregnancy** ____/____/____ First Treated ____/____/____ Estimated Delivery ____/____/____ Date of Delivery ☐ Vaginal ☐ C-Section

Symptoms

Objective Findings (Include copies of any x-rays, laboratory data, EKG's, MRI's, scans and any clinical findings)

**3. Disability Circumstances** - *Check if applicable*

☐ Illness ☐ Injury ☐ Work Related

If work related or injury, summarize circumstances

Date of:

| Symptoms first Appeared | Reduced Ability to work | Advised to stop work |
|---|---|---|
| ____/____/____ | ____/____/____ | ____/____/____ |

| Initial Treatment | Most Recent Treatment | Next Treatment |
|---|---|---|
| ____/____/____ | ____/____/____ | ____/____/____ |

Dates hospital confined: ____/____/____ to ____/____/____

Lincoln Financial Group is not responsible for charges incurred due to completion of this form. The patient is responsible for any charges associated with form completion.

(Please see FRAUD NOTICES attached)

Lincoln Financial Group is the marketing name for Lincoln National Corporation and its affiliates.

# Attending Physician's Statement

Lincoln Financial Group
P.O. Box 7209
London, KY 40742-7209
Phone No:(800) 320-7585
Secure Fax No: (603) 334-9124

## 4. Limitations and Restrictions

Restrictions (what the patient SHOULD NOT do)

Limitations (what the patient CANNOT do)

**Indicate frequency per day the listed activities below can be used performed using:**
N= Never 0% O= Occasionally <33% F= Frequently 34%-66% C= Continuously 67% -100%

| **Lifting/Carrying** | | | | | | **Reaching** | |
|---|---|---|---|---|---|---|---|
| 1-5 lbs. | _____ | Standing | _____ | Crouching | _____ | Overhead | _____ |
| 6-10 lbs. | _____ | Walking | _____ | Crawling | _____ | Desk Level | _____ |
| 11-25 lbs. | _____ | Sitting | _____ | Grasping | _____ | Below Waist | _____ |
| 26-50 lbs. | _____ | Balancing | _____ | Climbing | _____ | | |
| 51-100 lbs. | _____ | Stooping | _____ | Pushing | _____ | | |
| 100 + lbs. | _____ | Kneeling | _____ | Pulling | _____ | | |
| | | Fingering | _____ | Bending | _____ | | |

What job modifications would allow the patient to return to work?

## 5. Treatment

Describe current and recommended treatment plans including any completed or future surgeries. (Include dates)

## 6. Prognosis

Describe the patients prognosis for recovery

## 7. Physician's Information

Name

Street Address

City State Zip Code

**Activities of Daily Living**

If patient cannot complete these activities of Daily living indicate, when they were first unable to do so. (M/D/Y)

Continence _____ / _____ / __________

Dressing _____ / _____ / __________

Transferring _____ / _____ / __________

Bathing _____ / _____ / __________

Toileting _____ / _____ / __________

Eating _____ / _____ / __________

Date patient experienced loss of
Cognitive Functioning: _____ / _____ / _______

Describe ongoing treatment frequency

Patient able to return to work Full-Time on:

_____ / _____ / _____ to _____ / _____ / _____

If a specific date is unavailable, please provide a date range you expect a fundamental or marked change.

Phone Number Fax Number

**Signature** ___/___/___ **Date**

Lincoln Financial Group is not responsible for charges incurred due to completion of this form. The patient is responsible for any charges associated with form completion.
(Please see FRAUD NOTICES attached)

**FRAUD NOTICES. For your protection, certain states require that the following notices appear on this form.**

**Alabama.** Any person who knowingly presents a false or fraudulent claim for payment of a loss or benefit or who knowingly presents false information in an application for insurance is guilty of a crime and may be subject to restitution fines or confinement in prison, or any combination thereof.

**Alaska.** A person who knowingly and with intent to injure, defraud, or deceive an insurance company files a claim containing false, incomplete or misleading information may be prosecuted under state law.

**Arizona.** For your protection Arizona law requires the following statement to appear on this form. Any person who knowingly presents a false or fraudulent claim for payment of a loss is subject to criminal and civil penalties.

**Arkansas, Louisiana, Rhode Island and West Virginia.** Any person who knowingly presents a false or fraudulent claim for payment of a loss or benefit or knowingly presents false information in an application for insurance is guilty of a crime and may be subject to fines and confinement in prison.

**California.** For your protection California law requires the following to appear on this form: Any person who knowingly presents a false or fraudulent claim for the payment of a loss is guilty of a crime and may be subject to fines and confinement in state prison.

**Colorado.** It is unlawful to knowingly provide false, incomplete, or misleading facts or information to an insurance company for the purpose of defrauding or attempting to defraud the company. Penalties may include imprisonment, fines, denial of insurance and civil damages. Any insurance company or agent of an insurance company who knowingly provides false, incomplete, or misleading facts or information to a policyholder or claimant for the purpose of defrauding or attempting to defraud the policyholder or claimant with regard to a settlement or award payable from insurance proceeds shall be reported to the Colorado Division of Insurance within the Department of Regulatory Agencies.

**Delaware.** Any person who knowingly, and with intent to injure, defraud or deceive any insurer, files a statement of claim containing any false, incomplete or misleading information is guilty of a felony.

**District of Columbia.** It is a crime to provide false or misleading information to an insurer for the purpose of defrauding the insurer or any other person. Penalties include imprisonment and/or fines. In addition, an insurer may deny insurance benefits if false information materially related to a claim was provided by the applicant.

**Florida.** Any person who knowingly and with intent to injure, defraud, or deceive any insurer files a statement of claim or application containing any false, incomplete, or misleading information is guilty of a felony of the third degree.

**Idaho.** Any person who knowingly, and with intent to defraud or deceive any insurance company, files a statement or claim containing any false, incomplete or misleading information is guilty of a felony.

**Indiana.** A person who knowingly and with intent to defraud an insurer files a statement of claim containing any false, incomplete, or misleading information commits a felony.

**Kentucky.** Any person who knowingly and with intent to defraud any insurance company or other person files a statement of claim containing any materially false information or conceals, for the purpose of misleading, information concerning any fact material thereto commits a fraudulent insurance act, which is a crime.

**Maine.** It is a crime to knowingly provide false, incomplete or misleading information to an insurance company for the purpose of defrauding the company. Penalties may include imprisonment, fines or a denial of insurance benefits.

**Maryland.** Any person who knowingly or willfully presents a false or fraudulent claim for payment of a loss or benefit or who knowingly or willfully presents false information in an application for insurance is guilty of a crime and may be subject to fines and confinement in prison.

**Minnesota.** A person who files a claim with intent to defraud or helps commit a fraud against an insurer is guilty of a crime.

**New Hampshire.** Any person who, with a purpose to injure, defraud or deceive any insurance company, files a statement of claim containing any false, incomplete or misleading information is subject to prosecution and punishment for insurance fraud, as provided in RSA 638:20.

**New Jersey.** Any person who knowingly files a statement of claim containing any false or misleading information is subject to criminal and civil penalties.

**New Mexico.** Any person who knowingly presents a false or fraudulent claim for payment of a loss or benefit or knowingly presents false information in an application for insurance is guilty of a crime and may be subject to civil fines and criminal penalties.

**New York.** Any person who knowingly and with intent to defraud any insurance company or other person files an application for insurance or statement of claim containing any materially false information or conceals for the purpose of misleading, information concerning any fact material thereto commits a fraudulent insurance act, which is a crime and subject to a civil penalty not to exceed five thousand dollars and the stated value of the claim for each such violation.

**Ohio.** Any person who, with intent to defraud or knowing that he is facilitating a fraud against an insurer, submits an application or files a claim containing a false or deceptive statement is guilty of insurance fraud.

**Oklahoma.** Any person who knowingly, and with intent to injure, defraud or deceive any insurer, makes any claim for the proceeds of an insurance policy containing any false, incomplete or misleading information is guilty of a felony.

**Oregon.** Any person who knowingly and with intent to defraud any insurance company or other person: (1) files an application for insurance or statement of claim containing any materially false information; or, (2) conceals for the purpose of misleading, information concerning any material fact, may have committed a fraudulent insurance act.

**Pennsylvania.** Any person who knowingly and with intent to defraud any insurance company or other person files an application for insurance or statement of claim containing any materially false information or conceals for the purpose of misleading, information concerning any fact material thereto commits a fraudulent insurance act, which is a crime and subjects such person to criminal and civil penalties.

**Puerto Rico.** Any person who knowingly and with the intention of defrauding presents false information in an insurance application, or presents, helps, or causes the presentation of a fraudulent claim for the payment of a loss or any other benefit, or presents more than one claim for the same damage or loss, shall incur a felony and, upon conviction, shall be sanctioned for each violation by a fine of not less than five thousand dollars ($5,000) and not more than ten thousand dollars ($10,000), or a fixed term of imprisonment for three (3) years, or both penalties. Should aggravating circumstances be present, the penalty thus established may be increased to a maximum of five (5) years, if extenuating circumstances are present, it may be reduced to a minimum of two (2) years.

**Tennessee, Virginia, and Washington.** It is a crime to knowingly provide false, incomplete or misleading information to an insurance company for the purpose of defrauding the company. Penalties include imprisonment, fines and denial of insurance benefits.

**Texas.** Any person who knowingly presents a false or fraudulent claim for the payment of a loss is guilty of a crime and may be subject to fines and confinement in state prison.

**FOR ALL OTHER STATES EXCLUDING CONNECTICUT AND KANSAS.** A person may be committing insurance fraud, if he or she submits an application or claim containing a false or deceptive statement with intent to defraud (or knowing that he or she is helping to defraud) an insurance company.

**From:**SCU
**Sent:**Wed, 26 Feb 2020 14:02:31 +0000
**To:**Campbell, Cara
**Cc:**Crawford, Troy
**Subject:**RE: claim creation - ltd

Good morning,
Claim # 9832837 has been created per your request.
Thank you,

Nubia Vega
SCU Service Processor
Claim Intake & Contact Center
Lincoln Financial Group
100 Liberty Way
Dover, NH 03820

603-200-6829

LincolnFinancial.com

Follow us on:

---

**From:** Campbell, Cara <Cara.Campbell@lfg.com>
**Sent:** Tuesday, February 25, 2020 4:09 PM
**To:** SCU <SCU@lfg.com>
**Subject:** claim creation - ltd

Hello,

An STD claim (9711813) was created, however this ee doesn't have STD eligibility. Can you please create an LTD claim for this EE and assign to the next avail DCM in triage?

Thank you!

Cara Campbell
LTD Technical Specialist I Lincoln Financial Group
P.O. Box 7209
London, KY 40742-7209

800.320.7585 ext. 41466
603.334.3579 Fax

LincolnFinancial.com

Follow us on:

**From:**SCU (SCU@lfg.com)
**Sent:**Wed, 26 Feb 2020 13:36:26 +0000
**To:**'Anne.Leblanc@ACADIAN.COM'
**Cc:**Crawford, Troy;'liz.gerald@acadian.com.'
**Subject:**New Disability Claim - 9832837 - TERESA LUNDBERG

Hello,

We have received a claim for TERESA LUNDBERG (SSN: with a reported date of disability of 01/08/2020.

In order to expedite the processing of this claim, we ask that you provide the following information within 24 hours.

- Reported Last Day Worked:

**Please do not respond back to this email address.** When submitting your response, please do so to the attention of the case manager, Troy Crawford at Troy.Crawford@Lfg.Com or fax your information to (603) 422-0119.

If you have any questions regarding our need for this information, please contact us at 800-320-7585.

Thank you,

Screening and Creation Unit
Lincoln Life Assurance Company of Boston

**From:** DoNotReply@lfg.com
**Sent:** Fri, 24 Jan 2020 17:10:40 +0000
**To:** ANNE.LEBLANC@ACADIAN.COM;Liz.Gerald@acadian.com
**Subject:** Lincoln Finaincial Group - LUNDBERG, TERESA, Claim #9711813, DE

**THIS IS AN AUTOMATED EMAIL, PLEASE DO NOT RESPOND.**

The above named employee has applied for short term disability benefits. The claim has been denied. The case manager for this claim is Troy Crawford.

If you have further questions please call Lincoln Financial Group at (800) 320-7585.

**Important**
Please note, effective September 1, 2019, Liberty Life Assurance Company of Boston's name has been changed to Lincoln Life Assurance Company of Boston.

**Importante**
Tenga en cuenta que, a partir del 1 de septiembre de 2019, el nombre de Liberty Life Assurance Company of Boston ha sido cambiado a Lincoln Life Assurance Company of Boston.

**From:** DoNotReply@lfg.com
**Sent:** Fri, 24 Jan 2020 17:10:40 +0000
**To:** ANNE.LEBLANC@ACADIAN.COM;Liz.Gerald@acadian.com
**Subject:** Lincoln Finaincial Group - LUNDBERG, TERESA, Claim #9711813, DE

**THIS IS AN AUTOMATED EMAIL, PLEASE DO NOT RESPOND.**

The above named employee has applied for short term disability benefits. The claim has been denied. The case manager for this claim is Troy Crawford.

If you have further questions please call Lincoln Financial Group at (800) 320-7585.

**Important**
Please note, effective September 1, 2019, Liberty Life Assurance Company of Boston’s name has been changed to Lincoln Life Assurance Company of Boston.

**Importante**
Tenga en cuenta que, a partir del 1 de septiembre de 2019, el nombre de Liberty Life Assurance Company of Boston ha sido cambiado a Lincoln Life Assurance Company of Boston.

Lincoln Life Assurance Company of Boston
Group Benefits Leave Services
P.O. Box 7209
London, KY 40742-7209

MS. TERESA LUNDBERG

Lincoln Financial Group®

Lincoln Life Assurance Company of Boston
Group Benefits Leave Services
P.O. Box 7209
London, KY 40742-7209
Phone No.: (866) 277-5276
Secure Fax No.: (603) 334-5245

January 24, 2020

Ms. Teresa C. Lundberg

RE: Short Term Disability (STD) Benefits
Acadian Ambulance Services,inc
Claim #: 9711813

Dear Ms. Teresa Lundberg:

Lincoln Life Assurance Company of Boston is responsible for managing claims for Short Term Disability (STD) benefits under Acadian Ambulance Services,inc's Group Disability Policy. We are writing in reference to your claim for STD benefits under the Policy.

Based on the information received, your claim has been denied and no benefits are payable.

*Eligibility Requirements for Insurance benefits*
*Minimum Hourly Requirement:*
*Employees working a minimum of 30 regularly scheduled hours per week*
*Short Term Disability Benefits:*
*Class 1: All full-time active US Employees*
*Note: This policy does not cover the following Employees: Temporary and Seasonal*

Your employer confirmed that you did not elect Short Term Disability coverage. Since you are not enrolled in the Short Term Disability Plan, we are unable to process your claim and your claim is denied.

This claim determination reflects an evaluation of the claim facts and the Policy provisions. No internal rules, guidelines, protocols, standards or other similar criteria were relied upon in rendering the claim determination. We reserve the right to make a determination on any additional information that may be submitted.

Under the Employee Retirement Income Security Act of 1974 (ERISA), you may request a review of this denial by writing to the address below:

Lincoln Life Assurance Company of Boston
Attn: Appeal Review Unit
Group Benefits Disability Claims

P.O. Box 7213
London, KY 40742-7213

The written request for review must be sent within 180 days from the receipt of this letter and state the reasons you feel your claim should not have been denied. In your request for review please include the following documentation:

Proof of Short Term Disability coverage effective as of your last day of work, as well as any medical information you feel will support your claim, such as office therapy notes, lab results, etc. from all treating providers.

You should also provide any additional information that you feel will support your claim.

You are entitled to receive, upon request and free of charge, copies of all claim file documents relevant to the claim determination. If Lincoln Financial Group does not receive your written request for review within 180 days from the receipt of this notice, our claim decision will be final, your file will remain closed, and no further review will be conducted.

Under normal circumstances, you will be notified of the final decision within 45 days from the date your request is received.

If you require language translation assistance, please contact Lincoln Financial Group to initiate a service provided free of charge to assist with understanding your claim and appeal rights.

如果您需要翻译方面的帮助，请联系我，我会免费为您服务以便了解您的要求和诉求。

Shá ata’ hane’go shíká a’doowoł nínízingo saad hosíníłį́į’ dóó ná’ookąąh níínį́’ąągo naaltsoos nííníłtsoozígíí hazho’ó bik’idi’deeshtį́įł nínízingo doo bą́ąh ílínígóó níká a’doowoł éí biniiyé shił hodíílnih áko ákwe’égi níká adeeshwoł.

Si necesita traducción, contácteme para iniciar un servicio gratuito a fin de ayudarle a entender sus derechos de reclamo y apelación.

Kung nangangailangan ka ng tulong sa translation, mangyaring makipag-ugnayan sa akin upang gumamit ng serbisyong ibinigay nang walang bayad upang matulungan kang maunawaan ang iyong mga karapatan sa paghahabol at pag-aapela.

If special circumstances cause a delay in our decision, you will be notified of the final decision no later than 90 days from the date your request is received.

Nothing in this letter should be construed as a waiver of any rights and defenses under the above captioned Policy, and all of these rights and defenses are reserved to the company, whether or not they are specifically mentioned herein.

If you have any questions regarding this matter, please contact me.

Sincerely,

Troy Crawford
Disability Claims Case Manager
Phone No.: (800) 320-7585 Ext. 41581
Secure Fax No.: (603) 334-5245

Lincoln Financial Group®

Lincoln Life Assurance Company of Boston
Disability Claims
P.O. Box 7209
London, KY 40742-7209
Phone: (800) 320-7585
Secure Fax No.: (603) 422-0119

TERESA LUNDBERG

Cover Page
Insert 1 0
Insert 2 0
Insert 3 0
Insert 4 0
Insert 5 0
Insert 6 0
Insert 7 0

Lincoln Financial Group®

Lincoln Life Assurance Company of Boston
Disability Claims
P.O. Box 7209
London, KY 40742-7209
Phone: (800) 320-7585
Secure Fax No.: (603) 422-0119

January 22, 2020

TERESA LUNDBERG

RE: ACADIAN AMBULANCE SERVICES,INC
Short Term Disability Benefits
Claim #: 9711813

MS. LUNDBERG

We acknowledge receipt of your request for consideration of disability benefits.

Lincoln Life Assurance Company of Boston is required to inform you of certain state mandated regulations, one of which is fraud notification.

For your protection, Louisiana law requires us to provide the following statement: Any person who knowingly presents a false or fraudulent claim for payment of a loss or benefit or knowingly presents false information in an application for insurance is guilty of a crime and may be subject to fines and confinement in prison.

Sincerely,

Troy Crawford
Disability Case Manager
Phone: (800) 320-7585
Secure Fax No.: (603) 422-0119

**From:** DoNotReply@lfg.com
**Sent:** Wed, 22 Jan 2020 17:03:57 +0000
**To:** ANNE.LEBLANC@ACADIAN.COM;Liz.Gerald@acadian.com
**Subject:** Lincoln Finaincial Group - LUNDBERG, TERESA, Claim #9711813, PE

**THIS IS AN AUTOMATED EMAIL, PLEASE DO NOT RESPOND.**

The above named employee has applied for short term disability benefits. The claim number is 9711813.

If you have further questions or if the employee has returned to work, please call Lincoln Financial Group at (800) 320-7585.

**Important**
Please note, effective September 1, 2019, Liberty Life Assurance Company of Boston's name has been changed to Lincoln Life Assurance Company of Boston.

**Importante**
Tenga en cuenta que, a partir del 1 de septiembre de 2019, el nombre de Liberty Life Assurance Company of Boston ha sido cambiado a Lincoln Life Assurance Company of Boston.

**From:** DoNotReply@lfg.com
**Sent:** Wed, 22 Jan 2020 17:03:57 +0000
**To:** ANNE.LEBLANC@ACADIAN.COM;Liz.Gerald@acadian.com
**Subject:** Lincoln Finaincial Group - LUNDBERG, TERESA, Claim #9711813, PE

**THIS IS AN AUTOMATED EMAIL, PLEASE DO NOT RESPOND.**

The above named employee has applied for short term disability benefits. The claim number is 9711813.

If you have further questions or if the employee has returned to work, please call Lincoln Financial Group at (800) 320-7585.

**Important**
Please note, effective September 1, 2019, Liberty Life Assurance Company of Boston's name has been changed to Lincoln Life Assurance Company of Boston.

**Importante**
Tenga en cuenta que, a partir del 1 de septiembre de 2019, el nombre de Liberty Life Assurance Company of Boston ha sido cambiado a Lincoln Life Assurance Company of Boston.

**From:**SCU
**Sent:**Tue, 21 Jan 2020 16:55:27 +0000
**To:**'anne.leblanc@acadian.com'
**Cc:**Crawford, Troy;'liz.gerald@acadian.com'
**Subject:**New Disability Claim - 9711813 - TERESA LUNDBERG

Hello,

We have received a claim for TERESA LUNDBERG (SSN: with a reported date of disability of 01/08/2020.

In order to expedite the processing of this claim, we ask that you provide the following information within 24 hours.

- Reported Last Day Worked:

**Please do not respond back to this email address.** When submitting your response, please do so to the attention of the case manager, Troy Crawford at Troy.Crawford@Lfg.Com or fax your information to (603) 422-0119.

If you have any questions regarding our need for this information, please contact us at 800-320-7585.

Thank you,

Screening and Creation Unit
Lincoln Life Assurance Company of Boston

**Life Claim Detail**

Find | Clear | Save | New | Delete | Last Modified | Print | Help | Change Sub/Loc

Add Life Claim Event | Add Life Waiver | Add Note | Check | Contact Info | Correspond | Doc List | Life Account Info | Note

Populate Waiver Data | SPELL Letters | Tasks

Employee

First Name TERESA MI C

Last Name LUNDBERG

SSN DOB

Customer

Name ACADIAN AMBULANCE SERVICES,INC

Sub Name

Loc Name ASSUMPTION

***Life Claim Number** 10248812 Symbol SA Numeral 01 Life Claim Sub 0000 Life Claim Loc GR120000

Claimant

*Last Name LUNDBERG *First Name TERESA MI C *Relationship to Employee

*DOB *Gender Female Marital Status Unknown

Address Line 1

Address Line 2

Address Line 3

City State Zip Code

Country UNITED STATES OF AMERICA *State of Residence LA

Dependent

FT Student Age 0 Disabled Child ☐

Life Claim Events

| Event Number | Event Type | Event Reason | Event Status | Analyst Name |
|---|---|---|---|---|

Life Waivers

| Waiver Number | Waiver Type | Waiver Status | Date of Disability | Determination Date | Close Date | Maintenance Indicator |
|---|---|---|---|---|---|---|
| 1 | Waiver of Premium | Denied | 01/08/2020 | 12/15/2020 | | No |

**Life Waiver Detail**

Find | Clear | Save | New | Delete | Last Modified | Print | Help | Reopen Life Waiver

Add Vendor Pmt Check Correspond Life Account Info Linked Prov Note Tasks Vendor Pmt

Employee

First Name TERESA MI C

Last Name LUNDBERG

SSN DOB

Customer

Name ACADIAN AMBULANCE SERVICES,INC

Sub Name

Loc Name ASSUMPTION

Life Claim Number 10248812 Waiver Number 1 Life Claim Sub 0000 Life Claim Loc GR120000 Submissio

Employee Information

Class Code 8 Census Validation

*Takeover Indicator No Annual Earnings $ 32748.72

Waiver Information

Date Input 07/09/2020 Date Acknowledgement Letter Sent 07/13/2020 Received Date 07/09/

*Type Waiver of Premium *Status Denied *Determination Date 12/15/

Close Date *Status Reason Not TD Any Occ

Reopen Date Reopen Reason

Liberty LTD ☑ Disablity Claims Office Phoenix

Maintenance Indicator ☐ Benefit Reduction Schedule 31 Waiver EP 6

Disability Information

*Date of Disability 01/08/2020 Date Disability Reported 07/09/2020 Date Last Worked 01/07/2020

Diagnosis Information

Description

Code (1) M48.06 Spinal stenosis, lumbar region

Code (2)

Coverage & Reserve Amounts

Basic Coverage Amount $ 50000.00 Optional Coverage Amount $ 0.00

*Basic Reserve Amount $ 50000.00 Optional Reserve Amount $ 0.00

Case Manager

*Assign To: AGUIRRE MARIA

**Note Report**

Report | Clear | Print | Help

AS Accom AS Event Add Note Appeal Claim Coord Claim Note Correspond Doc List Employee Leave Life Claim Lve Addtl Info Lve Correspondence Lve Program Lve Work Sched Medical Medical History Note SPELL Letters Scheduled Pmt Task Print Task Rpt Tasks

Claim

***Claim/Event/Leave Number** 10248812 **Accommodation Number**

**Note type:**

Primary Sort Order
Note Type
Note Number
● Note Date/Time
Accm. No.

Sec
●

**02/04/2021 1:15 PM - LIFE Note 28**
Claim/Event/Leave: 10248812
NoteSubject : Phone Call
Other Subject :
Text: [02/04/2021 - AGUIRRE, MARIA]( - CALL TO EE, IGOES TO VM. LEFT MSG THAT 1/4 OVN RECEIVED, NO OTHER INFO. JUST COURTESY CLAL, LEFT # AND EXT. FOR ANY Q'S RE APPEAL

**01/28/2021 7:09 AM - LIFE Note 27**
Claim/Event/Leave: 10248812
NoteSubject : Med Records Rcvd
Other Subject :
Text: [01/28/2021 - AGUIRRE, MARIA]OVN 1/4/2021 FROM SPINE CTR / DR. MCCARTHY[01/28/2021 - AGUIRRE, MARIA]DROPPED A COPY INTO LTD CLAIM

**01/15/2021 1:15 PM - LIFE Note 26**
Claim/Event/Leave: 10248812
NoteSubject : Phone Call
Other Subject : INFO RECEIVED?
Text: [01/15/2021 - AGUIRRE, MARIA] - EE CALLED TO ASK IF WE RECEIVED MEDS FROM AP FROM 1/4 VISIT. LCE CHECKED WOP, LTD, ADVISED NO INFO WAS RECEIVED. EE HAS HAND-WRITTEN OVN FROM AP AND CAN FAX OVER. LCE AGREED. ADVISED WE CAN REVIEW AND F/U WITH HER. EE WILL ALSO CALL AP TO CHECK ON RECORDS.

**12/21/2020 1:08 PM - LIFE Note 25**
Claim/Event/Leave: 10248812
NoteSubject : Phone Call
Other Subject : PCM - DETERM.
Text: [12/21/2020 - AGUIRRE, MARIA]( - CALLED EE, INFORMED OF CLOSURE OF WOP BASED ON RECENT REVIEW 11/2020 - EE ADVISED NOTHING HAS CHANGED, IN FACT HAS HAD MORE TX FOR HER BACK. EE EXPLAINED DURING SX THEY WEER NOT BALE TO REACH THE LOWEST LEVEL OF HER SPINE, AND THI SIS SITLL GIVING HER ISSUES. SHE HAS NUMBNESSS IN THE LEGS AND UNABLE TO SIT VERY LONG OR WALK VERY LONG. EE HAS F/U WITH AP 1/4/2021, AND HAD LOV 12/17 TO EVALUATE FOR INJECTION. EE HAD INJECTION 12/18/2020 - AND PENDINGHOW SHE RESPONDS, AP HAS MENTIONED STIMULATOR IMPLANT OR MORE SURGERY WHICH WOULD BE FRONTAL APPROACH. EE FEELS SHE IS UNABLE TO DO ANY WORK. - LCE ACKNOWLEDGED AND WENT OVER APPEAL RIGHTS AND WENT OVER TIMEFRAMES. EE CAN LOOK FOR LETTER AND CALL WITHANY Q'S OTHERWISE LCE WILL LOOK FOR APPEAL REQUEST, AND ANY INFO SHE WOULD LIKE TO SEND FOR APPEAL AFTER AP NOV 1/4.[12/21/2020 - AGUIRRE, MARIA]*

**12/15/2020 9:52 AM - LIFE Note 24**
Claim/Event/Leave: 10248812
NoteSubject : LTR to EE
Other Subject :
Text: [12/15/2020 - AGUIRRE, MARIA]DETERM LETTER TO EE, EMAILED NOTICES TO ER AND OMAHA

**12/15/2020 8:47 AM - LIFE Note 23**
Claim/Event/Leave: 10248812
NoteSubject : Denied
Other Subject : NO TD
Text: [12/15/2020 - AGUIRRE, MARIA]SPINE SX PEER REVIEW COMPLETED 11/3/2020 CONCLUDED EE RETAINS CAPACITY FOR SED WORK. DENYING WOP AS EE NOT TD ANY OCC.

**12/15/2020 8:42 AM - LIFE Note 22**
Claim/Event/Leave: 10248812
NoteSubject : Med Records Rcvd
Other Subiect : PEER REVIEW 11/2020

Text: [12/15/2020 - AGUIRRE, MARIA]ORTHOPEDIC SURGERY, SPINE - PEER REVIEW 11/3/2020 - PRIMARY IMPAIRING DIAGNOSIS LUMBAR STENOSIS -- THERE IS NO EVIDENCE OF CLINICALLY SIGNIFICANT COMORBID DIAGNOSIS. -- THE CLAIMANT REQUIRES R&LS FROM 9/1/2020 UNTIL 2/25/2021, PENDING RE-ASSESSMENT. STANDING: UP TO 15 MINUTES AT A TIME FOR A TOTAL OF 2 HOURS PER DAY WALKING: UP TO 15 MINUTES AT A TIME FOR A TOTAL OF 2 HOURS PER DAY SITTING: UNRESTRICTED LIFTING/CARRYING/PUSHING/PULLING OCCASIONALLY UP TO 20 LBS.BUE CLIMBING STAIRS: OCCASIONALLY CLIMBING LADDERS: NEVER STOOPING: OCCASIONALLY KNEELING: OCCASIONALLY CROUCHING: OCCASIONALLY CRAWLING: NEVER REACHING: OCCASIONALLY OVERHEAD AND BELOW WAIST LEVEL, UNRESTRICTED DESK LEVEL BUE USE LOWER EXTREMITIES FOR FOOT CONTROLS: FREQUENTLY RLE AND UNRESTRICTED LLE FINE MANIPULATION: UNRESTRICTED SIMPLE AND FIRM GRASPING UNRESTRICT

**09/22/2020 4:52 PM - LIFE Note 21**
Claim/Event/Leave: 10248812
NoteSubject : Other
Other Subject : PAID INVOICE
Text: [09/22/2020 - AGUIRRE, MARIA]RELEASEPOINT - MED RECORD REQUESTS - $12

**09/09/2020 12:39 PM - LIFE Note 20**
Claim/Event/Leave: 10248812
NoteSubject : LTR to EE
Other Subject :
Text: [09/09/2020 - AGUIRRE, MARIA]APPROVAL NOTICES SENT TO EE, ER, OMAHA

**09/09/2020 12:26 PM - LIFE Note 19**
Claim/Event/Leave: 10248812
NoteSubject : Approved
Other Subject : TD ANY
Text: [09/09/2020 - AGUIRRE, MARIA]REVIEWED LTD. FORMS ON FILE. 52 YOF EMT-PARAMEDIC LDW 1/7/2020 DX LUMBAR STENOSIS, RADICULOPATHY; S/P L3-S1 OPEN FUSION 2/19/2020. LAST MEDS ON FILE DATE 3/30/2020. AP DR. MCCARTHY, LOV 6/4/2020, EE REPORTED SHE WOULD NEED AN INJECTION AND BEGIN PT. UPDATED MEDS FROM PT RECEIVED AND AP R&L'S. CLAIM REVIEWED BY MDS, BASED ON RECORDS RECEIVED, CLAIMANT UNDERWENT MULTILEVEL LUMBAR SPINAL FUSION WITH PERSISTENT COMPLAINTS NOTED POST-OPERATIVELY, INCLUDING ONGOING PAIN, RIGHT LEG WEAKNESS, ANTALGIC GAIT, REQUIRING DAILY MEDICATION MANAGEMENT (NARCOTICS, MUSCLE RELAXANT,) WITH FURTHER ESCALATION IN CARE (EPIDURAL INJECTIONS TO BE COMPLETED IN A SERIES). CLAIMANT IS PENDING FURTHER ADVANCED IMAGING TO ASSESS CLINICALSTATUS, WHICH WILL IMPACT ONGOING TREATMENT PLANNING. THEREFORE, LESS THAN SEDENTARY R/LS ARE REASONABLE AND SUPPORTED FROM 2/19/20 ONGOING, THROUGH COMPLETION OF EPIDURAL STEROID INJECTIONS SERIES, REPEAT MRI TESTING AND PROVIDER EVALUATION. BASEDON CLINICAL FINDINGS, CLAIMANT WOULD NOT BE CAPABLE OF SUSTAINED ACTIVITY, AT ANY LEVEL, AT THIS TIME. IT IS REASONABLE FOR CLAIMANT TO COMPLETE PRESCRIBED TESTING, AP EVAL. 3 MONTH FOLLOW-UP TO INCLUDE PT NOTES, AP RECORDS AND R&L'S, AND MRI IF PERFORMED. - APPROVING WOP DUE TO NO SUSTAINED CAPACITY AT ANY LEVEL, WITH F/U IN 3 MONTHS.

**08/28/2020 7:17 AM - LIFE Note 18**
Claim/Event/Leave: 10248812
NoteSubject : Other
Other Subject : MDS
Text: [08/28/2020 - AGUIRRE, MARIA]BASED ON CLINICAL FINDINGS, CLAIMANT WOULD NOT BE CAPABLE OF SUSTAINED ACTIVITY, AT ANY LEVEL, AT THIS TIME.SUGGEST SECURING UPDATED MEDICAL AND R&L'S IN 3 MONTHS 11/2020

**08/27/2020 8:18 AM - LIFE Note 17**
Claim/Event/Leave: 10248812
NoteSubject : Other
Other Subject : MDS REVIEW
Text: [08/27/2020 - MONROE, AMY]SEE WAIVER OF PREMIUM NURSE MEMORANDUM IN DOC LIST.

**08/19/2020 2:35 PM - LIFE Note 16**
Claim/Event/Leave: 10248812
NoteSubject : Action Plan
Other Subject : ERISA EXT, MDS
Text: [08/19/2020 - AGUIRRE, MARIA]SENDING ERISA EXTENSION AND REFERRING CLAIM TO MDS FOR REVIEW OF RECORDS. DAY 75: 9/22/2020 - SHARED DOCS WITH LTD

**08/19/2020 2:22 PM - LIFE Note 15**
Claim/Event/Leave: 10248812
NoteSubject : Med Records Rcvd
Other Subject : PT
Text: [08/19/2020 - AGUIRRE, MARIA]RECEIVED RECORDS FROM DAIGLE HIMEL DAIGLE PT - DATED 6/29/20 - 7/16/20

**08/04/2020 1:28 PM - LIFE Note 14**
Claim/Event/Leave: 10248812
NoteSubject : LTR to Other
Other Subject :
Text: [08/04/2020 - AGUIRRE, MARIA]RP - REQ PT RECORDS 5/1 FORWARD - CANCELLED MDS REFERRAL

**08/04/2020 1:25 PM - LIFE Note 13**

Claim/Event/Leave: 10248812
NoteSubject : Phone Call
Other Subject : PCM
Text: [08/04/2020 - AGUIRRE, MARIA]8/3/20 MON 4:20 PM TERESA LUNDBERG 10248812 RECD LETTER REQUESTING INFO FROM AP MCCARTHY HAS BEEN CONTACTING AP ABOUT SUBMITTING INFO, LTD: 9832837. DIDN T GET CHECK FOR THIS MONTH -- LCE R/C AND REACHED EE. WENT OVER WOP BENEFIT, REQUIREMENT FOR TD AND REVIEW PROCESS. CONFIRMED WE RECEIVED MEDS FROM DR. MCCARTHY THOUGH 6/30 (OVN, INJECTION). EE ADVISED SHE WAS ALSO DOING PT 2X/WEEK BUT HAD TO STOP BECAUSE IT WAS CAUSING HER PAIN. SHE SAW KIM (WITH DR. MCCARTHY) AGAIN 7/22/2020 AND THEY REFERRED HER TO HAVE ANOTHER MRI, AND STOP PT UNTIL MRI WAS COMPLETED. EE SAID MRI NOT YET SCHEDUOLED, WAITING ON APPROVAL. LAST PT VISIT WAS 7/16. - REGARDING ABILITY TO WORK, EE ADVISED SHE IS NOT BEDRIDDENOR ON WHEELCHAIR, BUT HAS DIFFICULTY WITH SITTING LONG DUE TO BACK. LCE ACKNOWLEDGED. ADVISED LCE WILL REQUEST THE PT RECORDS TO INCLUDE IN REVIEW. EE RECEIVED HER LTD CHECK. PT IS AT DAIGLE PT, GARDENS BLVD.

**08/04/2020 8:19 AM - LIFE Note 12**
Claim/Event/Leave: 10248812
NoteSubject : MDS Referral
Other Subject :
Text: [08/04/2020 - AGUIRRE, MARIA]REVIEWED RP, LTD. AP MCCARTHY PROVIDED STATEMENT INDICATING THEY DO NOT COMPLETE FORMS RE: LTD. (NOTIFIED RP TO STOP REQUEST FOR FORMS TO AP). --

**07/20/2020 10:11 AM - LIFE Note 11**
Claim/Event/Leave: 10248812
NoteSubject : Other
Other Subject : WOP
Text: [07/20/2020 - AGUIRRE, MARIA]WOP - LDW PRIOR TO AGE 65 (52). EP MET. REDUCTION CODE 31: TERMS AT AGE 65 OR PENSION/RETIREMENT. TD ANY OCC. PORT FOR BASIC.

**07/20/2020 10:11 AM - LIFE Note 10**
Claim/Event/Leave: 10248812
NoteSubject : Other
Other Subject : WOP ADJUDICATION
Text: [07/20/2020 - AGUIRRE, MARIA]WOP ADJUDICATION TYPE OF COVERAGE WOP BASIC LIFE INSURANCE PROD EFF DATE 1/1/2020 ERISA SITUS STATE LA ELIGIBILITY MET, DOH 03/05/2001 LDW 01/07/2020 CLASS 8: ALL OTHER ACTIVE FULL-TIME EMPLOYEES NON-CONTRIBEMPLOYEE BASIC LIFE INSURANCE: APPLICABLE TO CLASS 8: $50,000.00 (FLAT) EOI: N/A, NO REDUCTIONS PRIOR TO WOP TERM

**07/19/2020 5:21 PM - LIFE Note 9**
Claim/Event/Leave: 10248812
NoteSubject : Med Records Rcvd
Other Subject : MCCARTHY, MD
Text: [07/19/2020 - AGUIRRE, MARIA]BONE & JOINT OF BATON ROUGE - OVN 6/2/2020, ESI REPORT 6/30/2020 - EE RECEIVED R L4-5 ESI

**07/17/2020 10:59 AM - LIFE Note 8**
Claim/Event/Leave: 10248812
NoteSubject : Med Records Rcvd
Other Subject : RP UPDATE
Text: [07/17/2020 - AGUIRRE, MARIA]ORIGINAL PROVIDER: BONE & JOINT CLINIC OF BATON ROUGE PLEASE BE ADVISED THAT RELEASEPOINT HAS RECEIVED RECORDS ON THE INDIVIDUAL ABOVE, HOWEVER OUR QA TEAM HAS DETERMINED THAT THE RECORDS ARE DEFICIENT FOR THE FOLLOWING REASON(S): REQUESTED ITEMS NOT RECEIVED, WE ONLY RECEIVED MEDICAL RECORDS WITHIN SCOPE. PLEASE REQUEST FOR THE COMPLETED FORM SEEN BY THE REQUESTED PHYSICIAN/FACILITY IN S/A, THANKS THE REQUEST HAS BEEN RETURNED TO THE RETRIEVAL TEAM, AND WE WILL ATTEMPT TO OBTAIN THE MISSING INFORMATION. THE RECORDS ARE AVAILABLE FOR VIEWING ON RPNET (AND THROUGH YOUR SYSTEM FEED IF ONE HAS BEEN ESTABLISHED) SHOULD YOU WISH TO REVIEW WHAT WE HAVE AT THIS TIME.

**07/13/2020 2:28 PM - LIFE Note 7**
Claim/Event/Leave: 10248812
NoteSubject : Acknowledgment Sent
Other Subject :
Text: [07/13/2020 - AGUIRRE, MARIA]SENT ACK/N&P FOR UPDATED MEDS FROM DR. MCCARTHY - DAY 30 8/7, DAY 45 8/21

**07/13/2020 2:27 PM - LIFE Note 6**
Claim/Event/Leave: 10248812
NoteSubject : Phone Call
Other Subject : PCM ATTEMPT
Text: [07/13/2020 - AGUIRRE, MARIA]( - CALLED EE FOR PCM. GOES TO VM. LEFT MSG NOTIFYING OF RECEIPT OF WOP CLAIM AND REVIEW. LEFT # AND EXT AND REQUESTED A R/C TO DISCUSS FURTHER.

**07/10/2020 7:56 AM - LIFE Note 5**
Claim/Event/Leave: 10248812
NoteSubject : Action Plan
Other Subject :
Text: [07/10/2020 - AGUIRRE, MARIA]REQUESTED UPDATED MEDS AND AP R&L'S (DR. MCCARTHY) - PLAN TO REVIEW ONCE

Text: [07/10/2020 - AGUIRRE, MARIA]REQUESTED UPDATED MEDS AND AP R&L'S (DR. MCCARTHY) - PLAN TO REVIEW ONCE RECEIVED. AS NEEDED ALSO REQUEST PT RECORDS, OR MEDS FROM ANY OTHER AP'S SEEN.

**07/10/2020 7:55 AM - LIFE Note 4**
Claim/Event/Leave: 10248812
NoteSubject : LTR to ER
Other Subject :
Text: [07/10/2020 - AGUIRRE, MARIA]TEMPLATE

**07/10/2020 7:51 AM - LIFE Note 3**
Claim/Event/Leave: 10248812
NoteSubject : LTR to AP
Other Subject :
Text: [07/10/2020 - AGUIRRE, MARIA]VIA RP - REQUESTED MEDICAL AND R&L'S FROM DR. MCCARTHY

**07/10/2020 7:41 AM - LIFE Note 2**
Claim/Event/Leave: 10248812
NoteSubject : Med Records Rcvd
Other Subject :
Text: [07/10/2020 - AGUIRRE, MARIA]REVIEWED LTD. FORMS ON FILE. 52 YOF EMT-PARAMEDIC LDW 1/7/2020 DX LUMBAR STENOSIS, RADICULOPATHY; S/P L3-S1 OPEN FUSION 2/19/2020. LAST MEDS ON FILE DATE 3/30/2020. AP DR. MCCARTHY, LOV 6/4/2020, EE REPORTED SHE WOULD NEED AN INJECTION AND BEGIN PT.

**07/09/2020 9:16 AM - LIFE Note 1**
Claim/Event/Leave: 10248812
NoteSubject : Initial Entry
Other Subject :
Text: [07/09/2020 - FREEMAN, SHEILA]EOI CHECKED, NO HITS.

# SUMMARY OF THE LOUISIANA LIFE AND HEALTH INSURANCE GUARANTY ASSOCIATION ACT AND NOTICE CONCERNING COVERAGE LIMITATIONS AND EXCLUSIONS

Residents of Louisiana who purchase life insurance, annuities or health insurance should know that the insurance companies licensed in this state to write these types of insurance are members of the Louisiana Life and Health Insurance Guaranty Association. The purpose of this association is to assure that policyholders will be protected, within limits, in the unlikely event that a member insurer becomes financially unable to meet its obligations. If this should happen, the Guaranty Association will assess its other member insurance companies for the money to pay the claims of insured persons who live in this state and, in some cases, to keep coverage in force. However, the valuable extra protection provided by these insurers through the Guaranty Association is limited. As noted in the disclaimer below, this protection is not a substitute for consumers' care in selecting companies that are well-managed and financially stable.

**DISCLAIMER**

The Louisiana Life and Health Insurance Guaranty Association provides coverage of claims under some types of policies if the insurer becomes impaired or insolvent. COVERAGE MAY NOT BE AVAILABLE FOR YOUR POLICY. Even if coverage is provided, there are significant limitations and exclusions. Coverage is always conditioned upon residence in this state. Other conditions may also preclude coverage.

Insurance companies and insurance agents are prohibited by law from using the existence of the association or its coverage to sell you an insurance policy.

You should not rely on the availability of coverage under the Louisiana Life and Health Insurance Guaranty Association when selecting an insurer.

The Louisiana Life and Health Insurance Guaranty Association or the Department of Insurance will respond to any questions you may have which are not answered by this document.

| | |
|---|---|
| LLHIGA | Department of Insurance |
| P.O. Drawer 44126 | P.O. Box 94212 |
| Baton Rouge, LA 70804 | Baton Rouge, LA 70804-9214 |

The state law that provides for this safety-net coverage is called the Louisiana Life and Health Insurance Guaranty Association Act. The following is a brief summary of this law's coverages, exclusions and limits. This summary does not cover all provisions of the law; nor does it in any way change any person's rights or obligations under the Act or the rights or obligations of the Guaranty Association.

**COVERAGE**

Generally, individuals will be protected by the Louisiana Life and Health Insurance Guaranty Association if they live in this state and hold a life or health insurance contract, or an annuity, or if they are insured under a group insurance contract, issued by an insurer authorized to conduct business in Louisiana. The beneficiaries, payees or assignees of insured persons are protected as well even if they live in another state.

**EXCLUSION FROM COVERAGE**

However, persons holding such policies are not protected by this association, if:

- They are eligible for protection under the laws of another state (This may occur when the insolvent insurer was incorporated in another state whose Guaranty Association protects insureds who live outside that state.);
- the insurer was not authorized to do business in this state;
- their policy was issued by a non-profit hospital or medical service organization (the " Blues" ), an HMO, a fraternal benefit society, a mandatory state pooling plan, a mutual assessment company or similar plan in which the policyholder is subject to future assessments, or by an insurance exchange.

The association also does not provide coverage for:

- Any policy or portion of a policy which is not guaranteed by the insurer or for which the individual has assumed the risk, such as a variable contract sold by prospectus;
- any policy of reinsurance (unless an assumption certificate was issued);
- interest rate yields that exceed an average rate;
- dividends;
- credits given in connection with the administration of a policy by a group contract holder;
- employer's plans to the extent they are self-funded (that is, not insured by an insurance company, even if an insurance company administers them);
- unallocated annuity contracts (which give rights to group contract holders, not individuals), unless qualified under Section 403(b) of the Internal Revenue Code, except that, even if qualified under Section 403(b), unallocated annuities issued to employee benefit plans protected by the Federal Pension Benefit Guaranty Corporation are not covered.

**LIMITS ON AMOUNTS OF COVERAGE**

The act also limits the amount the association is obligated to pay out: The association cannot pay more than what the insurance company would owe under a policy or contract. Also, for any one insured life, the association will pay a maximum of $300,000 no matter how many policies and contracts there were with the same company, even if they provided different types of coverage. Within this overall $300,000 limit, the association will not pay more than $100,000 in cash surrender values, $500,000 in health insurance benefits, $250,000 in present value of annuities, or $300,000 in life insurance death benefits. Again, no matter how many policies and contracts there were with the same company, and no matter how many different types of coverages.

# GROUP LIFE INSURANCE POLICY
## WITH ACCELERATED BENEFIT

**Sponsor:** **Acadian Ambulance Services, Inc.**

**Policy Number:** **SA3-890-LF0211-01**

**Effective Date:** **January 1, 2020**

**Governing Jurisdiction** is **Louisiana** and subject to the laws of that State.

**Premiums** are due and payable monthly on the first day of each month.

**Policy Anniversaries** shall occur each January 1st beginning in 2021.

Lincoln Life Assurance Company of Boston (hereinafter referred to as Lincoln) agrees to pay the benefits provided by this policy in accordance with its provisions.

**PLEASE READ THIS POLICY CAREFULLY FOR FULL DETAILS.**

This policy is a legal contract and is issued in consideration of the Application of the Sponsor, a copy of which is attached, and of the payment of premiums by the Sponsor.

For purposes of this policy, the Sponsor acts on its own behalf or as the Covered Employee's agent. Under no circumstances will the Sponsor be deemed the agent of Lincoln.

This policy is delivered in and governed by the laws of the governing jurisdiction and to the extent applicable by The Employee Retirement Income Security Act of 1974 (ERISA) and any subsequent amendments.

The following pages including any amendments, riders or endorsements are a part of this policy.

Benefits as specified under this policy will be reduced upon receipt of an accelerated benefit.
Receipt of an Accelerated Death Benefit may be taxable. A Covered Employee should consult his tax consultant or legal advisor before applying for an Accelerated Death Benefit.

Signed at Lincoln's Home Office, 100 Liberty Way, Suite 100, Dover, New Hampshire 03820-4695.

Non-participating

SECRETARY PRESIDENT

Form GLP.9

# TABLE OF CONTENTS

SECTION 1 .................................................................. SCHEDULE OF BENEFITS

SECTION 2 .................................................................. DEFINITIONS

SECTION 3 .................................................................. ELIGIBILITY AND EFFECTIVE DATES

SECTION 4 .................................................................. INSURANCE BENEFITS

SECTION 5 .................................................................. EXCLUSIONS

SECTION 6 .................................................................. TERMINATION PROVISIONS

SECTION 7 .................................................................. GENERAL PROVISIONS

SECTION 8 .................................................................. PREMIUMS

SECTION 9 .................................................................. APPLICATION

# SECTION 1 - SCHEDULE OF BENEFITS

## ELIGIBILITY REQUIREMENTS FOR INSURANCE BENEFITS

**Minimum Hourly Requirement:**

Employees working a minimum of 30 regularly scheduled hours per week

**Classification of Covered Employees:**

Class 1: All active full-time Chairman of the Board and Chief Executive Officer

Class 2: All active full-time President and Chief Operations Officer

Class 3: All active full-time Employees classified as Executive Vice Presidents and Executive Committee Members

Class 4: All active full-time Employees classified as Senior Vice President of Strategic Initiatives, President of Acadian Monitoring Services, and Vice President Chief Medical Officer Management Systems

Class 5: All active full-time Employees classified as other Vice Presidents, Medical Director, and Regional Vice Presidents

Class 6: All active full-time Employees classified as Directors and General Counsel

Class 7: All active full-time Administrators, Managers, Supervisors, Coordinators, Accountatns, Pilots, Air Medical Staff, Executive Administrative Assistants, and Associate Counsel

Class 8: All other active full-time Employees

**Note:** This policy does not cover the following Employees: Temporary and Seasonal Employees, and Employees who are not legal residents working in the United States.

**Eligibility Waiting Period:**

1. If the Covered Person is employed by the Sponsor on the policy effective date - 59 days of continuous, Active Employment

2. If the Covered Person begins employment for the Sponsor after the policy effective date - 59 days of continuous, Active Employment

**Employee Contributions Required:**

| | |
|---|---|
| Employee Basic Life Insurance Benefits: | No |
| Employee Optional Life Insurance Benefits: | Yes |
| Employee Basic Accidental Death and Dismemberment Insurance Benefits: | No |
| Employee Optional Accidental Death and Dismemberment Insurance Benefits: | No |
| Dependent Optional Life Insurance Benefits: | Yes |
| Dependent Optional Accidental Death and Dismemberment Insurance Benefits: | No |

## SECTION 1 - SCHEDULE OF BENEFITS
(Continued)

**LIFE INSURANCE**

**Amount of Insurance:**

**Employee Basic Life Insurance:**

Applicable to Class 1:
$550,000.00

Applicable to Class 2:
$450,000.00

Applicable to Class 3:
$350,000.00

Applicable to Class 4:
$300,000.00

Applicable to Class 5:
$250,000.00

Applicable to Class 6:
$150,000.00

Applicable to Class 7:
$100,000.00

Applicable to Class 8:
$50,000.00

**Employee Optional Life Insurance:**

An amount in increments of $10,000.00. This amount may not exceed the lesser of $500,000.00 or 5 times Annual Earnings. The minimum amount is $10,000.00.

**Dependent Optional Life Insurance:**

**SPOUSE**

Spouse:

An amount in increments of $5,000.00. This amount may not exceed $250,000.00.

**CHILD**
Children (Age at Death):

Live birth, but under 16 years.

| | |
|---|---|
| Live Birth to under 14 days of age: | $0 |
| 14 days to under 6 months of age: | $1,000.00 |

6 months to 26 years of age: $10,000.00

**Note:** The amount of Dependent Life Insurance may not exceed 50% of the amount of Employee Optional Life Insurance in force on the Covered Employee.

## SECTION 1 - SCHEDULE OF BENEFITS
(Continued)

**ACCIDENTAL DEATH AND DISMEMBERMENT INSURANCE**

**Full Amount of Insurance:**

**Employee Basic Accidental Death and Dismemberment Insurance:**

Applicable to Class 1:
$550,000.00

Applicable to Class 2:
$450,000.00

Applicable to Class 3:
$350,000.00

Applicable to Class 4:
$300,000.00

Applicable to Class 5:
$250,000.00

Applicable to Class 6:
$150,000.00

Applicable to Class 7:
$100,000.00

Applicable to Class 8:
$50,000.00

**Employee Optional Accidental Death and Dismemberment Insurance:**

Applicable to Class 1:
$550,000.00

Applicable to Class 2:
$450,000.00

Applicable to Class 3:
$350,000.00

Applicable to Class 4:
$300,000.00

Applicable to Class 5:
$250,000.00

Applicable to Class 6:
$150,000.00

Applicable to Class 7:

$100,000.00

Applicable to Class 8:
$50,000.00

**Dependent Optional Accidental Death and Dismemberment Insurance:**

There are three Dependent Life Options available: Spouse Only, Child Only, Spouse and Child(ren).

**SPOUSE**
Spouse:

Applicable to Class 1:
With Dependent Child Accidental Death and Dismemberment coverage, an amount equal to 40.00% of the Covered Employee's elected amount.This amount may not exceed $220,000.00.
Without Dependent Child Accidental Death and Dismemberment coverage, an amount equal to 50.00% of the Covered Employee's elected amount. This amount may not exceed $275,000.00

Applicable to Class 2:
With Dependent Child Accidental Death and Dismemberment coverage, an amount equal to 40.00% of the Covered Employee's elected amount.This amount may not exceed $180,000.00.
Without Dependent Child Accidental Death and Dismemberment coverage, an amount equal to 50.00% of the Covered Employee's elected amount. This amount may not exceed $225,000.00

Applicable to Class 3:
With Dependent Child Accidental Death and Dismemberment coverage, an amount equal to 40.00% of the Covered Employee's elected amount.This amount may not exceed $140,000.00.
Without Dependent Child Accidental Death and Dismemberment coverage, an amount equal to 50.00% of the Covered Employee's elected amount. This amount may not exceed $175,000.00

Applicable to Class 4:
With Dependent Child Accidental Death and Dismemberment coverage, an amount equal to 40.00% of the Covered Employee's elected amount.This amount may not exceed $120,000.00.
Without Dependent Child Accidental Death and Dismemberment coverage, an amount equal to 50.00% of the Covered Employee's elected amount. This amount may not exceed $150,000.00

Applicable to Class 5:
With Dependent Child Accidental Death and Dismemberment coverage, an amount equal to 40.00% of the Covered Employee's elected amount.This amount may not exceed $100,000.00.
Without Dependent Child Accidental Death and Dismemberment coverage, an amount equal to 50.00% of the Covered Employee's elected amount. This amount may not exceed $125,000.00

Applicable to Class 6:
With Dependent Child Accidental Death and Dismemberment coverage, an amount equal to 40.00% of the Covered Employee's elected amount.This amount may not exceed $60,000.00.
Without Dependent Child Accidental Death and Dismemberment coverage, an amount equal to 50.00% of the Covered Employee's elected amount. This amount may not exceed $75,000.00

Applicable to Class 7:
With Dependent Child Accidental Death and Dismemberment coverage, an amount equal to 40.00% of the Covered Employee's elected amount.This amount may not exceed $40,000.00.
Without Dependent Child Accidental Death and Dismemberment coverage, an amount equal to 50.00% of the Covered Employee's elected amount. This amount may not exceed $50,000.00

Applicable to Class 8:

With Dependent Child Accidental Death and Dismemberment coverage, an amount equal to 40.00% of the Covered Employee's elected amount.This amount may not exceed $20,000.00.
Without Dependent Child Accidental Death and Dismemberment coverage, an amount equal to 50.00% of the Covered Employee's elected amount. This amount may not exceed $25,000.00

**CHILD**
Children (Age at Death):

Live birth, but under 26 years.

Applicable to Class 1:
With Dependent Spouse Accidental Death and Dismemberment coverage, an amount equal to 10.00% of the Covered Employee's elected amount. This amount may not exceed $55,000.00.
Without Dependent Spouse or Domestic Partner Accidental Death and Dismemberment coverage, an amount equal to 15.00% of the Covered Employee's elected amount. This amount may not exceed $82,500.00.

Applicable to Class 2:
With Dependent Spouse Accidental Death and Dismemberment coverage, an amount equal to 10.00% of the Covered Employee's elected amount. This amount may not exceed $45,000.00.
Without Dependent Spouse or Domestic Partner Accidental Death and Dismemberment coverage, an amount equal to 15.00% of the Covered Employee's elected amount. This amount may not exceed $67,500.00.

Applicable to Class 3:
With Dependent Spouse Accidental Death and Dismemberment coverage, an amount equal to 10.00% of the Covered Employee's elected amount. This amount may not exceed $35,000.00.
Without Dependent Spouse or Domestic Partner Accidental Death and Dismemberment coverage, an amount equal to 15.00% of the Covered Employee's elected amount. This amount may not exceed $52,500.00.

Applicable to Class 4:
With Dependent Spouse Accidental Death and Dismemberment coverage, an amount equal to 10.00% of the Covered Employee's elected amount. This amount may not exceed $30,000.00.
Without Dependent Spouse or Domestic Partner Accidental Death and Dismemberment coverage, an amount equal to 15.00% of the Covered Employee's elected amount. This amount may not exceed $45,000.00.

Applicable to Class 5:
With Dependent Child Accidental Death and Dismemberment coverage, an amount equal to 40.00% of the Covered Employee's elected amount.This amount may not exceed $100,000.00.
Without Dependent Child Accidental Death and Dismemberment coverage, an amount equal to 50.00% of the Covered Employee's elected amount. This amount may not exceed $125,000.00

Applicable to Class 6:
With Dependent Spouse Accidental Death and Dismemberment coverage, an amount equal to 10.00% of the Covered Employee's elected amount. This amount may not exceed $15,000.00.
Without Dependent Spouse or Domestic Partner Accidental Death and Dismemberment coverage, an amount equal to 15.00% of the Covered Employee's elected amount. This amount may not exceed $22,500.00.

Applicable to Class 7:

With Dependent Spouse Accidental Death and Dismemberment coverage, an amount equal to 10.00% of the Covered Employee's elected amount. This amount may not exceed $10,000.00.
Without Dependent Spouse or Domestic Partner Accidental Death and Dismemberment coverage, an amount equal to 15.00% of the Covered Employee's elected amount. This amount may not exceed $15,000.00.

Applicable to Class 8:

With Dependent Spouse Accidental Death and Dismemberment coverage, an amount equal to 10.00% of the Covered Employee's elected amount. This amount may not exceed $5,000.00.
Without Dependent Spouse or Domestic Partner Accidental Death and Dismemberment coverage, an amount equal to 15.00% of the Covered Employee's elected amount. This amount may not exceed $7,500.00.

**Note:** The amount of Dependent Optional Accidental Death and Dismemberment Insurance may not exceed 50.00% of the amount of Employee Optional Accidental Death and Dismemberment Insurance in force on the Covered Employee.

## SECTION 1 - SCHEDULE OF BENEFITS
(Continued)

**ADDITIONAL ACCIDENTAL DEATH AND DISMEMBERMENT INSURANCE**

**Employee Seat Belt Benefit:**

| | |
|---|---|
| Maximum Benefit Amount: | 10.00% of Full Amount up to $25,000.00 |

**Employee Air Bag Benefit:**

| | |
|---|---|
| Maximum Benefit Amount: | 10.00% of Full Amount up to $10,000.00 |

**Applicable to Basic Insurance:**

Applicable to Class 1:

**Employee Disappearance Benefit:**

| | |
|---|---|
| Maximum Benefit Amount: | Full Amount up to $550,000.00 |

Applicable to Class 2:

**Employee Disappearance Benefit:**

| | |
|---|---|
| Maximum Benefit Amount: | Full Amount up to $450,000.00 |

Applicable to Class 3:

**Employee Disappearance Benefit:**

| | |
|---|---|
| Maximum Benefit Amount: | Full Amount up to $350,000.00 |

Applicable to Class 4:

**Employee Disappearance Benefit:**

| | |
|---|---|
| Maximum Benefit Amount: | Full Amount up to $300,000.00 |

Applicable to Class 5:

**Employee Disappearance Benefit:**

| | |
|---|---|
| Maximum Benefit Amount: | Full Amount up to $250,000.00 |

Applicable to Class 6:

**Employee Disappearance Benefit:**

| | |
|---|---|
| Maximum Benefit Amount: | Full Amount up to $150,000.00 |

Applicable to Class 7:

**Employee Disappearance Benefit:**

| | |
|---|---|
| Maximum Benefit Amount: | Full Amount up to $100,000.00 |

Applicable to Class 8:

**Employee Disappearance Benefit:**

| | |
|---|---|
| Maximum Benefit Amount: | Full Amount up to $50,000.00 |

**Applicable to Optional Insurance:**

Applicable to Class 1:

**Employee Disappearance Benefit:**

| | |
|---|---|
| Maximum Benefit Amount: | Full Amount up to $550,000.00 |

Applicable to Class 2:

**Employee Disappearance Benefit:**

| | |
|---|---|
| Maximum Benefit Amount: | Full Amount up to $450,000.00 |

Applicable to Class 3:

**Employee Disappearance Benefit:**

| | |
|---|---|
| Maximum Benefit Amount: | Full Amount up to $350,000.00 |

Applicable to Class 4:

**Employee Disappearance Benefit:**

| | |
|---|---|
| Maximum Benefit Amount: | Full Amount up to $300,000.00 |

Applicable to Class 5:

**Employee Disappearance Benefit:**

| | |
|---|---|
| Maximum Benefit Amount: | Full Amount up to $250,000.00 |

Applicable to Class 6, 7:

**Employee Disappearance Benefit:**

| | |
|---|---|
| Maximum Benefit Amount: | Full Amount up to $150,000.00 |

Applicable to Class 8:

**Employee Disappearance Benefit:**

| | |
|---|---|
| Maximum Benefit Amount: | Full Amount up to $50,000.00 |

**Reduction Formula**:

The amount of Life and Accidental Death and Dismemberment Insurance applicable to the Covered Employee's class of benefits will reduce at age 70 or older as follows:

ages 70 & up: to 50%

Applicable to Dependent Optional Life Insurance:

at age 65: to 65%

Note: Spouse Optional Life Insurance will terminate at age 70.

## SECTION 1 - SCHEDULE OF BENEFITS
(Continued)

**Evidence of Insurability Requirements**

**Non-Medical Maximum:**

| | |
|---|---|
| Employee Optional Life Insurance Benefits: | $250,000.00 |
| Dependent Spouse Optional Life Insurance Benefits: | $50,000.00 |

**Annual Enrollment:**

| | |
|---|---|
| Employee Optional Life Insurance Benefits: | Any increases of more than two levels above the current benefit level will be subject to Evidence of Insurability. |

Any increases elected during Annual Enrollment will be subject to Evidence of Insurability if an Employee has previously been denied coverage. The Non-Medical Maximum will apply to any changes made during the Annual Enrollment Period.

| | |
|---|---|
| Dependent Spouse Optional Life Insurance: | Any increases of more than two levels above the current benefit level will be subject to Evidence of Insurability. |

**Family Status Change:**

| | |
|---|---|
| Employee Optional Life Insurance Benefits: | Any increases of more than two levels above the current benefit level will be subject to Evidence of Insurability. |

Any increases elected due to a Family Status Change will be subject to Evidence of Insurability if an Employee has previously been denied coverage. The Non-Medical Maximum will apply to any changes made due to a Family Status Change.

| | |
|---|---|
| Dependent Spouse Optional Life Insurance: | Any increases of more than two levels above the current benefit level will be subject to Evidence of Insurability. |

# SECTION 2 - DEFINITIONS

In this section Lincoln defines some basic terms needed to understand this policy. The male pronoun whenever used in this policy includes the female.

**"Active Employment"** means the Employee must be actively at work for the Sponsor:

1. on a full-time basis and paid regular earnings;

2. for at least the minimum number of hours shown in the Schedule of Benefits; and either perform such work:

   a. at the Sponsor's usual place of business; or
   b. at a location to which the Sponsor's business requires the Employee to travel.

An Employee will be considered actively at work if he was actually at work on the day immediately preceding:

1. a weekend (except where one or both of these days are scheduled work days);
2. holidays (except when the holiday is a scheduled work day);
3. paid vacations;
4. any non-scheduled work day;
5. an excused leave of absence (except medical leave for the Covered Person's own disabling condition and lay-off); and
6. an emergency leave of absence (except emergency medical leave for the Covered Person's own disabling condition).

**"Administrative Office"** means Lincoln Life Assurance Company of Boston, 100 Liberty Way, Suite 100, Dover, New Hampshire 03820-4695.

**"Annual Earnings"** means the Covered Person's annual rate of earnings from the Sponsor. However, such earnings will not include bonuses, commissions, overtime pay and extra compensation.

**"Annual Enrollment Period"** or **"Enrollment Period"** means the period before each policy anniversary so designated by the Sponsor and Lincoln during which an Employee may enroll for coverage under this policy.

## SECTION 2 - DEFINITIONS
(Continued)

**"Application"** is the document designated in Section 9; it is attached to and is made a part of this policy.

**"Confined"** means confinement in a hospital, skilled nursing facility or rehabilitation facility.

**"Covered Dependent"** means a Dependent whose coverage is in effect. It does not include a Dependent whose coverage has ended.

**"Covered Employee"** means a person in Active Employment insured under this policy.

**"Covered Person"** means an Employee in Active Employment or a Dependent insured under this policy.

**"Dependent"** means:

1. a Covered Employee's lawful spouse, including a legally separated spouse; and
2. a Covered Employee's unmarried children, who meet the age requirements shown in the Schedule of Benefits.

Children include the Covered Employee's own natural offspring, lawfully adopted children, and full-time students as defined by the school being attended. A child will be considered adopted on the date of placement in the Covered Employee's home.

Applicable to Optional Dependent Life Insurance:

They also include stepchildren, grandchildren including an eligible child's child, foster children or other children who are dependent on the Covered Employee for support and maintenance and living with the Covered Employee in a regular parent-child relationship.

Applicable to Optional Dependent Accidental Death and Dismemberment Insurance:

They also include stepchildren, grandchildren including an eligible child's child, foster children or other children who are dependent on the Covered Employee for support and maintenance and living with the Covered Employee in a regular parent-child relationship.

They also include children who, on and after the date on which insurance would otherwise end because of the children's age, are Continuously Disabled.

With respect to this provision, **"Continuously Disabled"** means a child who is incapable of self-sustaining employment because of mental or physical disabilities and is chiefly dependent on the Covered Employee for support and maintenance, or institutionalized because of mental or physical disabilities.

## SECTION 2 - DEFINITIONS
(Continued)

**"Eligibility Date"** means the date an Employee becomes eligible for insurance under this policy. Eligibility Requirements are shown in the Schedule of Benefits.

**"Eligibility Waiting Period"** means the continuous length of time an Employee must be in Active Employment in an eligible class to reach his Eligibility Date.

**"Employee"** means a person in Active Employment with the Sponsor.

**"Enrollment Form"** is the document completed by the Covered Employee, if required, when enrolling for coverage. This form must be satisfactory to Lincoln.

**"Evidence of Insurability"** means a statement of proof of the Covered Person's medical history upon which acceptance for insurance will be determined by Lincoln.

## SECTION 2 - DEFINITIONS
(Continued)

**"Family and Medical Leave"** means a leave of absence for the birth, adoption or foster care of a child, or for the care of the Covered Employee's child, spouse or parent or for the Covered Employee's own serious health condition as those terms are defined by the Federal Family and Medical Leave Act of 1993 (FMLA) and any amendments, or by applicable state law.

**"Family Status Change"** means any one of the following events that may occur:

1. the Employee's marriage or divorce;
2. the birth of a child to the Employee;
3. the adoption of a child by the Employee;
4. the death of the Employee's spouse or child;
5. the commencement or termination of employment of the Employee's spouse;
6. the change from part-time employment to full-time employment by the Employee or the Employee's spouse;
7. the change from full-time employment to part-time employment by the Employee or the Employee's spouse;
8. the taking of unpaid leave of absence by the Employee or the Employee's spouse.

## SECTION 2 - DEFINITIONS
(Continued)

**"Initial Enrollment Period"** means one of the following periods during which an Employee may first enroll for coverage under this policy:

1. if the Employee is eligible for insurance on the policy effective date, a period before the policy effective date set by the Sponsor and Lincoln.

2. if the Employee becomes eligible for insurance after the policy effective date, the period which ends 30 days after his Eligibility Date.

**"Injury"** means bodily impairment resulting directly from an accident and independently of all other causes.

**"Non-Medical Maximum"** means an amount of insurance on a Covered Person which is not subject to Evidence of Insurability. The Non-Medical Maximum amounts are shown in the Schedule of Benefits. Any amounts of insurance in excess of the Non-Medical Maximums are subject to Evidence of Insurability. Evidence of Insurability will be at the Covered Employee's expense.

**"Physician"** means a person who:

1. is licensed to practice medicine and is practicing within the terms of his license; or

2. is a licensed practitioner of the healing arts in a category specifically favored under the health insurance laws of the state where the treatment is received and is practicing within the terms of his license.

It does not include a Covered Person, any family member or domestic partner.

## SECTION 2 - DEFINITIONS
(Continued)

**"Proof"** means the evidence in support of a claim for benefits and includes, but is not limited to, the following:

1. a claim form completed and signed (or otherwise formally submitted) by the Covered Employee or his beneficiary claiming benefits;

2. an attending Physician's statement completed and signed (or otherwise formally submitted) by the Covered Person's attending Physician; and

3. the provision by the attending Physician of standard diagnosis, chart notes, lab findings, test results, x-rays and/or other forms of objective medical evidence in support of a claim for benefits;

4. a certified copy of a death certificate.

Proof must be submitted in a form or format satisfactory to Lincoln.

**"Schedule of Benefits"** means the section of this policy which shows, among other things, the Eligibility Requirements, Eligibility Waiting Period, and Amount of Insurance Benefit.

**"Sickness"** means disease or illness including related conditions and recurrent symptoms of the sickness. Sickness also includes pregnancy.

**"Sponsor"** means the entity to whom this policy is issued.

# SECTION 3 - ELIGIBILITY AND EFFECTIVE DATES

**Eligibility Requirements for Employee and Dependent Insurance Benefits**

The eligibility requirements for insurance benefits are shown in the Schedule of Benefits.

**Eligibility Date for Insurance Benefits**

**Employee Coverage:**

If the Employee is in an eligible class he will qualify for insurance on the later of:

1. this policy's effective date; or

2. the day after he completes the Eligibility Waiting Period shown in the Schedule of Benefits.

**Dependent Coverage:**

If the Employee is eligible for Employee coverage he will be eligible for Dependent coverage on the later of:

1. the date he is eligible for Employee coverage if on that date he has a Dependent; or

2. the date he acquires a Dependent if on that date he is eligible for Employee coverage.

If both parents are Employees, only one will be eligible for Dependent coverage with respect to their Dependent children.

**Annual Enrollment Period**

During each Annual Enrollment Period, an Employee may keep his coverage at the same level or make any one of the following changes in coverage for the next policy year, subject to any Evidence of Insurability Requirements as shown in the Schedule of Benefits:

1. decrease his coverage;

2. increase his coverage including enrolling for the first time.

If an Employee fails to enroll for a change in his coverage option during any Annual Enrollment Period he will continue to be insured for the same coverage option during the next policy year, unless the Covered Employee experiences a Family Status Change.

## SECTION 3 - ELIGIBILITY AND EFFECTIVE DATES
(Continued)

**Family Status Change**

When a Covered Employee experiences a Family Status Change, a Covered Employee may keep his coverage at the same level or make any one of the following changes in coverage, subject to any Evidence of Insurability Requirements as shown in the Schedule of Benefits:

1. decrease his coverage;

2. increase his coverage including enrolling for the first time.

The Covered Employee must apply for the change in coverage within 31 days of the date of the Family Status Change. Such changes in coverage must be due to or consistent with the reason that the change in coverage was permitted. A change in coverage is consistent with a Family Status Change only if it is necessary or appropriate as the result of the Family Status Change.

**Effective Date for Insurance Benefits**

Insurance will be effective at 12:01 A.M. Standard Time in the governing jurisdiction on the day determined as follows, but only if the Employee's application or enrollment for insurance is made with Lincoln through the Sponsor in a form or format satisfactory to Lincoln.

**Employee Coverage:**

1. For non-contributory coverage not subject to Evidence of Insurability, the Covered Employee will be insured on his Eligibility Date.

2. For non-contributory coverage subject to Evidence of Insurability, the Covered Employee will be insured on the later of the date Lincoln gives approval or his Eligibility Date.

3. For contributory coverage not subject to Evidence of Insurability, the Covered Employee will be insured on the later of the date he makes application or his Eligibility Date, provided he makes application no later than 30 days after his Eligibility Date.

4. For contributory coverage subject to Evidence of Insurability, the Covered Employee will be insured on the later of the date Lincoln gives approval or his Eligibility Date, provided he makes application no later than 30 days after his Eligibility Date.

Evidence of Insurability will be at the Covered Employee's Expense.

## SECTION 3 - ELIGIBILITY AND EFFECTIVE DATES
(Continued)

**Effective Date for Insurance Benefits** (Continued)

**Dependent Coverage:**

1. For contributory coverage not subject to Evidence of Insurability, the Covered Employee's Dependent will be insured on the later of the date the Covered Employee makes application or his Eligibility Date, provided he makes application no later than 30 days after his Eligibility Date.

2. For contributory coverage subject to Evidence of Insurability, the Covered Employee's Dependent will be insured on the later of the date Lincoln gives approval or his Eligibility Date, provided he makes application no later than 30 days after his Eligibility Date.

Evidence of Insurability will be at the Covered Employee's Expense.

**Increases or Decreases:**

Any increase in or addition to coverage will take effect on the date of the change.

Any decrease in or deletion of coverage will take effect on the date of the change.

Any such change applies to loss of life or accidental Injury that occurs on or after the effective date of the change.

**Delayed Effective Date for Employee Insurance**

The effective date of any initial, increased or additional insurance will be delayed for an individual if he is not in Active Employment because of Injury or Sickness. The initial, increased or additional insurance will begin on the date the individual returns to Active Employment.

**Delayed Effective Date for Dependent Insurance**

If a Covered Dependent is Confined on the date the increase or addition is to take effect, it will take effect when the confinement ends.

## SECTION 3 - ELIGIBILITY AND EFFECTIVE DATES
(Continued)

**Family and Medical Leave**

A Covered Employee's coverage may be continued under this policy for an approved family or medical leave of absence for up to 12 weeks following the date coverage would have terminated, subject to the following:

1. the authorized leave is in writing;

2. the required premium is paid;

3. the Covered Employee's benefit level, or the amount of earnings upon which the Covered Employee's benefit may be based, will be that in effect on the date before said leave begins; and

4. continuation of coverage will cease immediately if any one of the following events should occur:

    a. the Covered Employee returns to work;
    b. this policy terminates;
    c. the Covered Employee is no longer in an eligible class;
    d. nonpayment of premium when due by the Sponsor or the Covered Employee;
    e. the Covered Employee's employment terminates.

**Leave of Absence**

The Sponsor may continue the Covered Employee's coverage(s) by paying the required premiums, if the Covered Person is granted an approved leave of absence.

The Covered Employee's coverage(s) will not continue beyond a period of six months for personal leaves of absence and a period of twelve months for military leaves of absence. In continuing such coverage(s) under this provision, the Sponsor agrees to treat all Covered Employees equally.

**Leave of Absence Due to Disability**

The Sponsor may continue the Covered Employee's coverage(s) by paying the required premiums, if the Covered Employee is granted an approved leave of absence due to a disability.

The Covered Employee's coverage(s) will not continue beyond a period of six months. In continuing such coverage(s) under this provision, the Sponsor agrees to treat all Covered Employees equally.

**Rehire Terms**

If a former Employee is re-hired by the Sponsor within 6 months of his termination date, all past periods of Active Employment with the Sponsor will be used in determining the re-hired Employee's Eligibility Date. If a former Employee is re-hired by the Sponsor more than 6 months after his termination date, he is considered to be a new Employee when determining his Eligibility Date.

# SECTION 4 - INSURANCE BENEFITS

## EMPLOYEE LIFE INSURANCE

**Benefits**

When Lincoln receives satisfactory Proof of the Covered Employee's death, Lincoln will pay the proceeds of the Life Insurance in force on the Covered Employee's life under this policy. The benefit payable is shown in the Schedule of Benefits.

**Conversion Privilege**

**Conversion Privilege at Individual Termination or Reduction of Benefits:**

If all or part of a Covered Employee's coverage ends, the Covered Employee may convert the amount that ends to an individual Life Insurance policy. Conversion is subject to the following conditions:

1. within 31 days after coverage ends or is reduced, the Covered Employee must make written application to Lincoln and pay the first premium payment.

2. the individual policy will be issued without Evidence of Insurability. It will contain Life Insurance benefits only. The policy will be one then being offered by Lincoln. The premium due will be based on the premium schedule of Lincoln's conversion policy that applies to the Covered Employee's class of risk and age at the birthday nearest to the effective date of the individual policy.

The individual policy will be effective 31 days after the Covered Employee's group coverage ends.

**Conversion Privilege at Class or Policy Termination:**

If coverage ends for all employees or for a Covered Employee's class, the Covered Employee is entitled to a limited conversion privilege. The Covered Employee must have been covered for at least 5 years. The Covered Employee must apply for the individual policy in the same manner as described above. The amount the Covered Employee may convert is limited to the lesser of:

1. the amount the Covered Employee was covered for on the date the group coverage terminated less any group insurance he becomes eligible for within 31 days; or

2. $2,000.

The individual policy will be effective 31 days after the Covered Employee's group coverage ends.

**Death Within the 31 Days Allowed for Conversion:**

If a Covered Employee dies within the 31 days allowed for conversion, Lincoln will pay to his beneficiary the amount he was eligible to convert. Such insurance will be paid as a claim under this policy. Any premiums paid for a converted policy will be refunded.

## SECTION 4 - INSURANCE BENEFITS
(Continued)

**EMPLOYEE LIFE INSURANCE COVERAGE** (Continued)

**Accelerated Death Benefit**

**Note:** The receipt of an Accelerated Death Benefit may be taxable. A Covered Employee should consult his tax consultant or legal advisor before applying for an Accelerated Death Benefit.

If, while insured under this policy, a Covered Employee gives Lincoln satisfactory Proof of having a Terminal Condition, the Covered Employee may receive a portion of his Life Insurance as an Accelerated Death Benefit. Such insurance will be paid one time to the Covered Employee in one lump sum.

The amount of Accelerated Death Benefit payable under this policy is limited to the lesser of the following:

1. the Accelerated Death Benefit amount requested by the Covered Employee;

2. 75.00% of the Covered Employee's Life Insurance that is in force on the date the Covered Employee applies for an Accelerated Death Benefit; or

3. $500,000.00.

If the amount of a Covered Employee's Life Insurance under this policy is scheduled to reduce within 12 months following the date the Covered Employee applies for the Accelerated Death Benefit, the benefit payable under this policy will be based on the reduced amount.

**Application for an Accelerated Death Benefit**

A Covered Employee must apply for an Accelerated Death Benefit. To apply, the Covered Employee must give Lincoln:

1. certification, from a Physician, that he has a Terminal Condition, as defined by this policy;
2. supporting evidence satisfactory to Lincoln, documenting the Terminal Condition;
3. a completed claims form.

## SECTION 4 - INSURANCE BENEFITS
(Continued)

**EMPLOYEE LIFE INSURANCE COVERAGE** (Continued)

**Accelerated Death Benefit** (Continued)

**Application for an Accelerated Death Benefit** (Continued)

During the pendency of a claim, Lincoln may, at its own expense, have a Physician examine the Covered Employee.

If the Covered Employee has assigned all or a portion of the Life Insurance under this policy or named an irrevocable beneficiary, the Covered Employee must also give Lincoln a signed written consent form from the assignee or irrevocable beneficiary.

The Accelerated Death Benefit will be payable upon receipt of satisfactory Proof of a Terminal Condition; and signed written consent from an assignee or irrevocable beneficiary, if required.

With respect to this provision **"Terminal Condition"** means a condition:
1. which is expected to result in the Covered Employee's death within 12 months; and
2. from which there is no reasonable prospect of recovery.

**Effect on Insurance**

The amount of a Covered Employee's Life Insurance will be reduced by the amount paid as an Accelerated Death Benefit. Premiums, if any, for the remaining portion of a Covered Employee's Life Insurance will be based on the amount of the remaining Life Insurance in effect after payment of the Accelerated Death Benefit. All other terms and provisions of this policy will apply to the remaining portion. Receipt of an Accelerated Death Benefit does not affect any Accidental Death or Dismemberment insurance benefit in force on a Covered Employee's life.

**Exceptions**

No Accelerated Death Benefit will be paid if:
1. the Covered Employee is required by a court of law to exercise this option to satisfy a claim of creditors, whether in bankruptcy or otherwise;
2. the Covered Employee is required by a governmental agency to exercise this option in order to apply for, receive, or continue a government benefit or entitlement;
3. all or a part of a Covered Employee's insurance must be paid to the Covered Employee's children or spouse or former spouse as part of a divorce decree, separate maintenance agreement or property settlement agreement;
4. the Covered Employee is married and lives in a community property state, unless the Covered Employee's spouse has given Lincoln signed written consent; or
5. the Covered Employee has previously received an Accelerated Death Benefit under this policy or any other group policy held by the Sponsor.

## SECTION 4 - INSURANCE BENEFITS
(Continued)

**DEPENDENT LIFE INSURANCE**

**Benefits**

When Lincoln receives satisfactory Proof of the Covered Dependent's death, Lincoln will pay to the Covered Employee the amount in force on such Covered Dependent's life under this policy. The Dependent Life Insurance benefit will be paid in one sum. It is shown in the Schedule of Benefits.

**Conversion Privilege**

**Conversion Privilege at Individual Termination or Reduction of Benefits:**

If a Covered Dependent's coverage ends because:

1. of the Covered Employee's death; or
2. the Covered Employee's employment in an eligible class for Dependent Life Insurance ends,

the Covered Employee's Covered Dependent spouse may convert Dependent Life Insurance to an individual policy. Within 31 days after coverage ends, the Covered Dependent spouse must make written application to Lincoln and pay the first premium payment. The individual policy will contain Life Insurance benefits only. The policy will be one then being offered by Lincoln. Evidence of Insurability will not be required.

**Conversion Privilege at Class or Policy Termination:**

If a Covered Dependent's coverage ends because:

1. coverage ends for all employees; or
2. coverage ends for all employees in the Covered Employee's eligible class,

the Covered Dependent spouse is entitled to a limited conversion privilege. The Covered Employee must be entitled to convert to an individual policy in order for his Covered Dependent spouse to have this limited privilege. Conversion must be applied for in the same way as stated above. The amount the Covered Dependent spouse may convert is limited to the lesser of:

1. the amount the Covered Dependent spouse was covered for on the date coverage ended less any group insurance he becomes eligible for within 31 days; or
2. $2,000.

The individual policy will become effective 31 days after the Covered Dependent spouse's coverage ends.

**Death Within the 31 Days Allowed for Conversion:**

Dependent Life Insurance is payable if a Covered Dependent spouse dies during this period. The amount payable is the amount the Covered Dependent spouse was entitled to convert. Such insurance will be paid under this policy. Any premium paid for an individual policy will be refunded.

## SECTION 4 - INSURANCE BENEFITS
(Continued)

**EMPLOYEE AND DEPENDENT ACCIDENTAL DEATH AND DISMEMBERMENT INSURANCE**

**Benefits**

Accidental Death and Dismemberment benefits are payable when a Covered Person suffers a loss solely as the result of accidental Injury that occurs while covered. The loss must occur within 365 days after the date of the accident. The benefit payable is called the Full Amount. It is shown in the Schedule of Benefits.

| **Loss Schedule:** | **Benefit Payable:** |
|---|---|
| Life | Full Amount |
| Both Hands or Both Feet | Full Amount |
| Sight of Both Eyes | Full Amount |
| One Hand and One Foot | Full Amount |
| One Hand and Sight of One Eye | Full Amount |
| One Foot and Sight of One Eye | Full Amount |
| Speech and Hearing in Both Ears | Full Amount |
| One Hand or One Foot | One-half Full Amount |
| Sight of One Eye | One-half Full Amount |
| Speech or Hearing in Both Ears | One-half Full Amount |
| Thumb and Index Finger of the Same Hand | One-quarter Full Amount |
| Quadriplegia | Full Amount |
| Paraplegia | Three- Quarters Full Amount |
| Hemiplegia | One-half Full Amount |
| Diplegia | One-half Full Amount |
| Monoplegia | One-quarter Full Amount |

Payment is made for loss due to each accident without regard to loss resulting from any prior accident. In no event may the total amount payable for all losses due to any one accident exceed the Full Amount.

Loss of hands or feet means complete severance through or above the wrist or ankle joint.

Loss of sight, speech or hearing must be total and irrecoverable.

Loss of thumb and index finger means that all of the thumb and index finger are cut off at or above the joint closest to the wrist. This benefit is not payable if a benefit is payable for the loss of the same entire hand.

Quadriplegia means the total and permanent paralysis of both upper and lower limbs.
Paraplegia means the total and permanent paralysis of both lower limbs.
Hemiplegia means the total and permanent paralysis of the upper and lower limbs on one side of the body.
Diplegia means the total and permanent paralysis of both arms.
Monoplegia means the total and permanent paralysis of one arm or one leg.

## SECTION 4 - INSURANCE BENEFITS
(Continued)

**ADDITIONAL ACCIDENTAL DEATH AND DISMEMBERMENT INSURANCE**

**Benefits**

**Seat Belt Benefit**

Lincoln will pay an additional benefit if accidental death was caused by an Automobile accident while the Covered Person was driving or riding in an Automobile and the Covered Person was covered by this policy. The benefit is payable if the Covered Person was wearing a Seat Belt at the time of the accident. The benefit payable is shown in the Schedule of Benefits.

Lincoln must be given satisfactory written Proof that the Covered Person's death resulted from an Automobile accident while wearing a Seat Belt. A copy of the police accident report should be submitted with the claim.

No benefit will be paid if the Covered Person was the driver of the Automobile and did not hold a current valid driver's license.

**Air Bag Benefit**

Lincoln will pay an additional benefit if accidental death was caused by an Automobile accident while the Covered Person was driving or riding in an Automobile and the Covered Person was covered by this policy. The benefit is payable if the Covered Person was wearing a Seat Belt at the time of the accident and was seated behind a properly installed Air Bag. The benefit payable is shown in the Schedule of Benefits.

Lincoln must be given satisfactory written Proof that the Covered Person's death resulted from an Automobile accident while wearing a Seat Belt and the Automobile was equipped with an Air Bag directly in front of the Covered Person. A copy of the police accident report should be submitted with the claim.

No benefit will be paid if the Covered Person was the driver of the Automobile and did not hold a current valid driver's license.

With respect to this provision, **"Air Bag"** means the passive restraint device in an Automobile which inflates automatically upon collision to provide protection in Automobile accidents. The Air Bag must meet the Federal Vehicle Safety Standards of the National Highway Traffic Safety Administration and be installed by the manufacturer.

With respect to this provision, **"Automobile"** means a private passenger motor vehicle licensed for use on public highways.

With respect to this provision, **"Seat Belt"** means a combination lap and shoulder restraint system that must meet the Federal Vehicle Safety Standards of the National Highway Traffic Safety Administration and be installed by the manufacturer. A Seat Belt will include a lap belt alone, but only if the Automobile did not have a combination lap and shoulder restraint system when manufactured. Seat Belt does not include a shoulder restraint alone.

## SECTION 4 - INSURANCE BENEFITS
(Continued)

**ADDITIONAL ACCIDENTAL DEATH AND DISMEMBERMENT INSURANCE** (Continued)

**Benefits** (Continued)

**Exposure Benefit**

Lincoln will pay a benefit to the Covered Person or beneficiary in the event the Covered Person suffers a loss from exposure to the elements of nature by reason of a covered Injury. The benefit payable is shown on the Loss Schedule in the Accidental Death and Dismemberment provision.

**Disappearance Benefit**

Lincoln will pay a benefit to the beneficiary in the event the body of the Covered Person is not found within 365 days after the disappearance, sinking or wrecking of a public conveyance in which the Covered Person was known to be a fare-paying Passenger. The Covered Person will be presumed to have died resulting from Injury caused by an accident. The benefit payable is equal to the Full Amount payable under Accidental Death and Dismemberment shown in the Schedule of Benefits.

With respect to this provision, **"Passenger"** is defined as an individual other than a pilot, operator or crew member who is riding in or on, boarding, or dismounting from a public conveyance.

## SECTION 4 - INSURANCE BENEFITS
(Continued)

**WAIVER OF PREMIUM FOR TOTAL DISABILITY**

If a Covered Employee becomes Totally Disabled while insured under this policy he may be eligible for continued Life Insurance coverage without premium payment, provided that:

1. he becomes Totally Disabled while insured under this policy and before age 65;
2. within one year from the date he is no longer in Active Employment Lincoln receives initial Proof that his Total Disability has continued for 6 months (initial Proof); and
3. during the three months before each anniversary of receipt of initial Proof, Lincoln receives Proof of continuation of Total Disability.

In addition, Lincoln, at its own expense, may request the Covered Employee to be examined by a Physician chosen by Lincoln. After the benefit has been continued for two years under this provision, Lincoln will not require an examination more than once a year.

When Proof of Total Disability has been approved, premiums will be waived beginning the later of:

1. the date Lincoln gives approval; or
2. 6 months from the date the Covered Employee is no longer in Active Employment due to Total Disability.

Accidental Death and Dismemberment and Dependent coverage will not be continued during the Covered Employee's period of Total Disability.

The Life Insurance benefit continued under this provision will be the amount in force on the Covered Employee's life under this policy on the date the Covered Employee is no longer in Active Employment due to Total Disability, subject to any reductions provided by any part of this policy. The amount continued will not include any part of the Covered Employee's Life Insurance that he converted to an individual policy unless he was Totally Disabled when he applied to convert and he returns the converted policy to Lincoln without claim other than for a refund of the premiums.

If the Waiver of Premium provision has been denied, the Covered Employee may convert his Life Insurance benefit as provided in the Conversion Privilege.

A Covered Employee's continued Life Insurance coverage under this provision will end on the earliest of the date when:

1. he recovers and ceases to be Totally Disabled;
2. he returns to Active Employment;
3. he refuses to have an examination by a Physician chosen by Lincoln or fails to give satisfactory Proof of continuation of Total Disability;
4. 90 Days after the date Lincoln mails the Covered Employee a request for additional Proof of loss, Lincoln does not receive such Proof;
5. he reaches age 65;
6. the date he begins receiving a benefit from a retirement or pension plan; or
7. the date the Sponsor classifies him as retired.

## SECTION 4 - INSURANCE BENEFITS
(Continued)

**WAIVER OF PREMIUM FOR TOTAL DISABILITY**

If continued Life Insurance coverage under this provision ends or reduces, the Covered Employee may convert his Life Insurance benefit as provided in the Conversion Privilege. Dependent coverage may be converted as allowed within this policy.

If the Covered Employee dies within one year from the date he is no longer in Active Employment due to Total Disability, Lincoln will pay the Life Insurance benefit provided satisfactory Proof of continuous Total Disability until death is given to Lincoln within one year after death.

If this policy terminates before the Covered Employee has received approval of waiver of premium, he is eligible to convert to an individual policy until such approval has been received. If this policy terminates after approval for waiver of premium, coverage will continue as if this policy continued to be in force.

With respect to this provision, **"Total Disability"** or **"Totally Disabled"** means the complete inability, as a result of Injury or Sickness, to perform the Material and Substantial Duties of Any Occupation.

With respect to this provision, **"Material and Substantial Duties"** means responsibilities that are normally required to perform Any Occupation, and cannot be reasonably eliminated or modified.

With respect to this provision, **"Any Occupation"** means any occupation that the Covered Employee is or becomes reasonably fitted by training, education, experience, age, physical and mental capacity.

## SECTION 4 - INSURANCE BENEFITS
(Continued)

**PORTABLE GROUP TERM LIFE INSURANCE**

If any of a Covered Person's coverage under this Policy ends, he may be eligible to continue all or a part of the amount that ends, less any amount converted to an individual policy as provided in the Conversion Privilege, subject to any minimum and maximum amounts specified in this provision, as portable group term life insurance. The coverage must end because the Covered Employee is no longer in an eligible class or is no longer in Active Employment.

If a Covered Employee is eligible for portable group term life insurance, he may also elect portable group term life insurance on his Covered Dependent spouse or Dependent child whose coverage under this policy ends. A Covered Dependent is eligible to directly apply for portable group term life insurance if they no longer satisfy the definition of Dependent under the policy.

Portable group term life insurance is not available if coverage ends because this policy terminates, or if any life insurance under this policy will be continued on a waiver of premium basis.

A Covered Person is eligible to apply for portable group term life insurance if he has no Injury or Sickness that has a material effect on his life expectancy.

An Injury or Sickness that has a material effect on life expectancy means a condition that, according to generally accepted medical opinion, may contribute to or result in death within the next 5 years. Some examples include cancers and lung diseases.

Any Covered Person is eligible for portable group term Life Insurance if:

1. he is under age 65;

2. he is a citizen or legal resident of the United States or Canada; and

3. he is not a full-time member of the armed forces of any country.

To apply for portable group term life insurance, a Covered Person must, within 31 days of the date a Covered Person ceases to be eligible for coverage under this policy submit a completed portable group term life insurance application along with the first premium payment and any required application fee to Lincoln at the address shown on the application.

If a Covered Person is applying for coverage his portable group term life insurance will be effective at 12:01 A.M. Standard Time on the day after coverage under this policy ends as long as any required Evidence of Insurability is approved. A Covered Person is responsible for the expense of securing supporting information to satisfy Evidence of Insurability.

The policy available will be one then being offered by Lincoln as portable group term life insurance. The premium due will be based on Lincoln's then current rate for such policies that apply to the Covered Employee, Covered Dependent spouse and Covered Dependent child's class of risk and age at birthday nearest to the effective date of portable group term life insurance.

The amount of portable group term life insurance may be decreased at any time. Once elected, the amount of portable group term life insurance may be increased annually, subject to Evidence of Insurability and Policy maximums.

COVERED EMPLOYEE PORTABLE GROUP TERM LIFE INSURANCE

The amount of portable group term life insurance a Covered Employee may apply for is subject to the following limits:

1. the maximum amount is equal to the lesser of:

   a. the amount of insurance that terminated under this policy; or
   b. $500,000.00.

2. the minimum amount is $10,000.00.

This amount is subject to any reductions due to age that may be contained in the portable group term life insurance policy.

DEPENDENT SPOUSE PORTABLE GROUP TERM LIFE INSURANCE

The amount of portable group term life insurance a Covered Dependent spouse may apply for is subject to the following limits:

1. the maximum amount is equal to the lesser of:

   a. the amount of insurance that terminated under this policy; or
   b. $500,000.00.

2. the minimum amount is $5,000.00.

This amount is subject to any reductions due to age that may be contained in the portable group term life insurance policy.

DEPENDENT CHILD PORTABLE GROUP TERM LIFE INSURANCE

An eligible person may apply for portable group term life insurance for their Dependent child, subject to the following limits:

1. the maximum amount is equal to the lesser of:

   a. the amount of insurance that terminated under this policy; or
   b. $100,000.00.

2. the minimum amount is $2,500.00.

This amount is subject to any reductions due to age that may be contained in the portable group term life insurance policy.

# SECTION 5 - EXCLUSIONS

## LIFE INSURANCE EXCLUSIONS

No benefits are payable for any loss for death that results from, is contributed to or caused by:

1. suicide occurring within 24 months after the Covered Person's initial effective date of insurance with the Sponsor; and

2. suicide occurring within 24 months after the date any increases or additional insurance become effective for the Covered Person under this Policy.

The suicide exclusion will apply to any amounts of insurance for which the Covered Person pays all or part of the premium.

The suicide exclusion will also apply to any amount that is subject to Evidence of Insurability Lincoln approved.

## SECTION 5 - EXCLUSIONS
(Continued)

**ACCIDENTAL DEATH AND DISMEMBERMENT EXCLUSIONS**

No benefits are payable for any loss that is contributed to or caused by:

1. war, declared or undeclared, or any act of war;

2. intentionally self-inflicted injuries, while sane or insane;

3. suicide, or suicide attempt, while sane or insane;

4. active Participation in a Riot;

5. committing or attempting to commit a felony or misdemeanor;

6. disease, bodily or mental illness (or medical or surgical treatment thereof);

7. infections, except septic infections of and through a visible wound;

8. controlled substances (as defined in Title II of the Comprehensive Drug Abuse Prevention and Control Act of 1970 and all amendments) that are voluntarily taken, ingested or injected, unless as prescribed or administered by a Physician;

9. serving full-time active duty in the Armed Forces of any country or international authority;

10. boarding, leaving or being in or on any kind of aircraft. However, this exclusion will not apply if the Covered Person is a fare paying passenger on a commercial aircraft or traveling as a passenger in any aircraft that is owned or leased by or on behalf of the Sponsor; or

11. the presence of alcohol in the Covered Person's blood which raises a presumption that the Covered Person was under the influence of alcohol and contributed to the cause of the accident. The blood alcohol level is governed by the jurisdiction of the state in which the accident occurred; or

12. hazardous sports, including but not limited to, motor sports (land or water), mountain climbing, skydiving, parachuting, bungee jumping, hang gliding and scuba diving

No benefit will be payable for any loss suffered as a result of Accidental Injury during any period of incarceration.

With respect to this provision, **"Participation"** shall include promoting, inciting, conspiring to promote or incite, aiding, abetting, and all forms of taking part in, but shall not include actions taken in defense of public or private property, or actions taken in defense of the Covered Person, if such actions of defense are not taken against persons seeking to maintain or restore law and order including, but not limited to police officers and fire fighters.

With respect to this provision, **"Riot"** shall include all forms of public violence, disorder or disturbance of the public peace, by three or more persons assembled together, whether or not acting with a common intent and whether or not damage to persons or property or unlawful act or acts is the intent or the consequence of such disorder.

# SECTION 6 - TERMINATION PROVISIONS

**Termination of a Covered Person's Insurance**

A Covered Person will cease to be insured on the earliest of the following dates:

1. the date this policy terminates, but without prejudice to any claim originating prior to the time of termination;
2. the date the Covered Employee is no longer in an eligible class;
3. the date the Covered Employee's class is no longer included for insurance;
4. the last day for which any required Employee contribution has been made;
5. the date employment (status as an active Employee) or eligibility ends for any reason; or
6. the date the Covered Employee ceases to be in Active Employment due to a labor dispute, including any strike, work slowdown, or lockout.

Lincoln reserves the right to review and terminate all classes insured under this policy if any class(es) cease(s) to be covered.

## SECTION 6 - TERMINATION PROVISIONS
(Continued)

**Policy Termination**

1. Termination of this policy under any conditions will not prejudice any claim which occurs while this policy is in force.

2. If the Sponsor fails to pay any premium within the grace period, this policy will terminate at 12:00 midnight Standard Time on the last day of the grace period. The Sponsor may terminate this policy by advance written notice delivered to Lincoln at least 31 days prior to the termination date. This policy will not terminate during any period for which premium has been paid. The Sponsor will be liable to Lincoln for all premiums due and unpaid for the full period for which this policy is in force.

3. Lincoln may terminate this policy on any premium due date by giving written notice to the Sponsor at least 31 days in advance if:

   a. the number of Employees insured is fewer than 10; or
   b. the Sponsor fails:
      i. to furnish promptly any information which Lincoln may reasonably require; or
      ii. to perform any other obligations pertaining to this policy.

4. Lincoln may terminate this policy or any coverage(s) afforded hereunder and for any class of covered Employees on any premium due date after it has been in force for 12 months. Lincoln will provide written notice of such termination to the Sponsor at least 31 days before the termination is effective.

5. Termination may take effect on an earlier date if agreed to by the Sponsor and Lincoln.

# SECTION 7 - GENERAL PROVISIONS

**Appeal Process**

Lincoln will notify in writing any Covered Person or beneficiary whose claim is denied in whole or part. That written notice will explain the reasons for denial. If the claimant does not agree with the reasons given, he may request an appeal of the claim. To do so, the claimant should write to Lincoln within 60 days after the notice of denial was received. The claimant should state why he believes the claim was improperly denied. Any data, questions or comments that the claimant thinks are appropriate should be included. Unless Lincoln requests additional material in a timely fashion, the claimant will be advised of Lincoln's decision within 60 days after his or her letter is received.

**Assignment**

The coverage under this policy is not assignable by the Sponsor without Lincoln's written consent. A Covered Employee may assign all of his present and future right, title, interest, and incidents of ownership of:

1. any Life Insurance;
2. any disability provision of Life Insurance; and
3. any Accidental Death and Dismemberment Insurance under this policy.

Such assignment will include, but is not limited to, the rights:

1. to make any contribution required to keep the coverage in force;
2. to exercise any conversion privilege; and
3. to change the beneficiary.

**Beneficiary**

Each Covered Employee must name a beneficiary to whom the insurance benefits under this policy are payable. If more than one beneficiary is named and if their interests are not specified, any surviving Beneficiaries will share equally.

If, at the death of a Covered Employee, there is no named or surviving beneficiary, Lincoln will pay the benefits to the executor or administrator of the Covered Employee's estate. Lincoln may, at its option, pay the benefits to a surviving relative in the following order: spouse, child, parent, sibling. Such payment will release Lincoln of all further liability to the extent of payment.

A Covered Employee may change his beneficiary at any time by written request. Lincoln or the Sponsor will provide a form for that purpose. Any change of beneficiary will take effect when the Sponsor receives the written request whether or not the Covered Employee is alive at that time. Such change will relate back to the date of the request. Any change of beneficiary will not apply to any payment made before the request was received by the Sponsor.

**Conformity with State Statutes**

Any provision of this policy which, on its effective date, is in conflict with the statutes of the governing jurisdiction of this policy is hereby amended to conform to the minimum requirements of such statute.

## SECTION 7 - GENERAL PROVISIONS
(Continued)

**Employee's Certificate**

Lincoln will provide a Certificate to the Sponsor for delivery to Covered Employees. It will state:

1. the name of the insurance company and the policy number;
2. a description of the insurance provided;
3. the method used to determine the amount of benefits;
4. to whom benefits are payable;
5. limitations or reductions that may apply;
6. the circumstances under which insurance terminates; and
7. the rights of the Covered Person upon termination of this policy.

If the terms of a Certificate and this policy differ, this policy will govern.

**Entire Contract - Policy Changes**

1. This policy is the entire contract. It consists of:

   a. all of the pages;
   b. the attached signed Application of the Sponsor; and
   c. if contributory each Employee's signed application for insurance.

2. This policy may be changed in whole or in part. Only an officer of Lincoln can approve a change to the policy. The approval must be in writing and endorsed on or attached to this policy.

3. No other person, including an agent, may change this policy or waive any part of it.

**Examination**

Lincoln, at its own expense, has the right and opportunity to have a Covered Person, whose Injury or Sickness is the basis of a claim, examined or evaluated at reasonable intervals deemed necessary by Lincoln. This right may be used as often as reasonably required. Lincoln may also require an autopsy unless prohibited by law.

**Facility of Payment**

If a beneficiary or Covered Person is a minor or is physically or mentally incapable of giving a valid release for payment, Lincoln, at its option, may make payment not to exceed $2,000.00 to a party who appears to have assumed responsibility for the care and support of such person. Lincoln will only make such payment until claim is made by a guardian of the estate of the beneficiary or the Covered Person. Such payment will release Lincoln of all further liability to the extent of payment.

## SECTION 7 - GENERAL PROVISIONS
(Continued)

**Furnishing of Information - Access to Records**

1. The Sponsor will furnish at regular intervals to Lincoln:

   a. information relative to Employees:

      i. who qualify to become insured;
      ii. whose amounts of insurance change; and/or
      iii. whose insurance terminates.

   b. any other information about this policy that may be reasonably required.

   The Sponsor's records which, in the opinion of Lincoln, have a bearing on the insurance will be opened for inspection at any reasonable time.

2. Clerical error or omission will not deprive an Employee of insurance.

**Incontestability**

This policy will not be contested, except for nonpayment of premium, after it has been in force for two years from the date of issue. The coverage of any Covered Person shall not be contested, except for nonpayment of premium, on the basis of a statement made relating to insurability of the Covered Person after such coverage has been in force for two years during the Covered Person's lifetime.

In the absence of fraud, any statements in any application will be deemed representations and not warranties. No representation made by:

1. the Sponsor in applying for this policy will make it void unless the representation is contained in the Sponsor's signed Application; or

2. any Covered Person in enrolling for insurance under this policy will be used to reduce or deny a claim unless the representation is contained in an application signed by him and such application is given to him or his beneficiary.

**Interpretation of the Policy**

Lincoln shall possess the authority, in its sole discretion, to construe the terms of this policy and to determine benefit eligibility hereunder. Lincoln's decisions regarding construction of the terms of this policy and benefit eligibility shall be conclusive.

**Legal Proceedings**

A claimant or the claimant's authorized representative cannot start any legal action:

1. until 60 days after Proof of claim has been given; or

2. more than three years after the time Proof of claim is required.

Legal actions are contingent upon first having followed the Claims and Appeals procedure outlined in this policy.

## SECTION 7 - GENERAL PROVISIONS
(Continued)

**Misstatement of Age**

If a Covered Person's age has been misstated, an equitable adjustment will be made in the premium. If the amount of the benefit is dependent upon the Covered Person's age, the amount of the benefit will be the amount the Covered Person would have been entitled to if his correct age were known.

A refund of premium will not be made for a period more than 12 months before the date Lincoln is advised of the error.

**Notice and Proof of Claim**

1. **Notice**

   a. Notice of claim must be given to Lincoln within 30 days of the date of the loss on which the claim is based. If that is not possible, Lincoln must be notified as soon as it is reasonably possible to do so. Such notice of claim must be received in a form or format satisfactory to Lincoln.

   b. When written notice of claim is applicable and has been received by Lincoln, the Covered Person will be sent claim forms. If the forms are not received within 15 days after written notice of claim is sent, the Covered Person can send to Lincoln written Proof of claim without waiting for the forms.

2. **Proof**

   a. Satisfactory Proof of loss must be given to Lincoln no later than 30 days after the date of loss.

   b. Failure to furnish such Proof within such time shall not invalidate or reduce any claim if it was not reasonably possible to furnish such Proof within such time. Such Proof must be furnished as soon as reasonably possible, and in no event, except in the absence of legal capacity of the claimant, later than one year from the time Proof is otherwise required.

Lincoln reserves the right to determine if the Covered Person’s Proof of loss is satisfactory.

**Optional Methods of Settlement**

Benefits are usually payable in one sum. However, the Covered Person may elect in writing to have the proceeds paid through an installment program offered by Lincoln. If the Covered Person makes no such election, his beneficiary may do so at the Covered Person's death.

Any installments remaining after the death of the payee will be paid as directed in the election of this option. Such direction is subject to the approval of Lincoln.

**Payment of Benefits**

All benefits are payable when Lincoln receives written satisfactory Proof of loss. Benefits for loss of life of the Covered Employee are paid to the beneficiary. Benefits for loss of life of the Covered Dependent are paid to the Covered Employee. Benefits for other losses are paid to the Covered Employee.

## SECTION 7 - GENERAL PROVISIONS
(Continued)

**Right of Recovery**

Lincoln has the right to recover any overpayment of benefits caused by, but not limited to, the following:

1. fraud;
2. any error made by Lincoln in processing a claim; or
3. any error made in the eligibility or administration of this policy by the Sponsor.

Lincoln may recover an overpayment by, but not limited to, the following:

1. requesting a lump sum payment of the overpaid amount;
2. reducing any benefits payable under this policy; or
3. taking any appropriate collection activity available including any legal action needed.

It is required that full reimbursement be made to Lincoln.

**Workers' Compensation**

This Policy and the coverages provided are not in lieu of, nor will they affect any requirements for coverage under any Workers' Compensation Law or other similar law.

# SECTION 8 - PREMIUMS

**Premium Rates**

Lincoln has set the premiums that apply to the coverage(s) provided under this policy. Those premiums are shown in a notice given to the Sponsor with or prior to delivery of this policy.

A change in the initial premium rate(s) will not take effect within the first 36 months except that Lincoln may change premium rates at any time for reasons which affect the risk assumed, including those reasons shown below:

1. a change occurs in the policy design;
2. a division, subsidiary or Associated Company is added to or deleted from this policy;
3. when the number of Covered Persons changes by 15.00% or more from the number insured on this policy's effective date; or
4. a change in existing law which affects this policy.

Lincoln may, upon notice to the Sponsor, set new premium rates to become effective on or at any time after the first anniversary date of this policy. However, no premium may be changed unless Lincoln notifies the Sponsor at least 31 days in advance. Premium changes may take effect on an earlier date when both Lincoln and the Sponsor agree.

**Payment of Premiums**

1. All premiums due under this policy, including adjustments, if any, are payable by the Sponsor on or before their due dates at Lincoln's Administrative Office, or to Lincoln's agent. The due dates are specified on the first page of this policy.
2. All payments made to or by Lincoln shall be in United States dollars.
3. If premiums are payable on a monthly basis, premiums for additional or increased insurance becoming effective during a policy month will be charged from the next premium due date.
4. The premium charge for insurance terminated during a policy month will cease at the end of the policy month in which such insurance terminates. This manner of charging premium is for accounting purposes only. It will not extend insurance coverage beyond a date it would have otherwise terminated as shown in the "Termination of a Covered Person's Insurance" provision of this policy.
5. If premiums are payable on other than a monthly basis, premiums for additional, increased, reduced or terminated insurance will cause a prorated adjustment on the next premium due date.
6. Except for fraud and premium adjustments, refunds of premiums or charges will be made only for:

   a. the current policy year; and
   b. the immediately preceding policy year.

## SECTION 8 - PREMIUMS
(Continued)

**Grace Period**

A grace period of 31 days will be allowed for the payment of premium after a premium due date other than the first. No interest will be charged. During this period this policy will continue in force. But, if the Sponsor gives Lincoln written notice to terminate the policy on an earlier date, then this policy will end on such earlier date. The Sponsor must pay the pro rata premium for the time the policy was in force during the grace period.

THE SPINE CENTER AT
BONE AND JOINT CLINIC OF BATON ROUGE
7301 HENNESSY BLVD. SUITE 200 BATON ROUGE, LA 70808
TELEPHONE: (225) 766-0050 FAX: (225) 768-2456

FAX COVER SHEET

Today's Date: 1/26/2021

This is the first of 2 pages

This fax is being sent to fax number: 603.427.1888

To the attention of: Maria Aguirre

RE: Teresa Lundberg - clinic notes

From: KG Dr. Kevin P. McCarthy's Office

Confidentiality Notice

The document accompanying this telecopy transmission contains confidential information belonging to the sender that is legally privileged. This information is intended only for the use of the individual or entity named above. The authorized recipient of this information is prohibited from disclosing this information to any other party and required to destroy the information after its stated need has been fulfilled, unless otherwise required by state law.

If you are not the intended recipient, you are hereby notified that any disclosure, copying, distribution or action taken in reliance on the contents of these documents is strictly prohibited. If you have received this telecopy in error, please notify the sender immediately to arrange for the return of these documents.

Patient Name: Teresa Lundberg
Medical Record Number: 3435070 Date: January 4, 2021 Location: Baton Rouge
Date of Birth:

**HISTORY OF PRESENT ILLNESS**: The patient returns to clinic today for follow-up. She is s/p lumbar epidural steroid injection 12-18-20. Unfortunately, she got no relief. In fact, her right side is no better and it has since aggravated her left side. She has burning if she lays on her left side. She has pain with any prolonged sit, stand or walk. She is also noting episodes where her pain gets really bad and causes pain in the rectal region and temporary numbness. This will only last for a few minutes and resolves. She has had no issues with incontinence or any other episodes of saddle anesthesia. She states that she has been approached about possible spinal cord stimulation and is interested going forward.

**PHYSICAL EXAMINATION**: General: She presents as a pleasant, well developed, well nourished 53 y/o female. She is in no acute distress. She has a normal mood and affect. She is alert and oriented x 3. She moves all extremities without difficulty. Head: Normocephalic, atraumatic. Pupils are equal, round and reactive to light. Extraocular muscles intact. Heart regular rate and rhythm. Lungs are symmetric. Respirations are unlabored. Abdomen is soft, nontender. Skin: No rashes or lesions present. Extremities: No clubbing, cyanosis or edema.

Exam shows 5/5 strength in all muscle groups of both legs. Sensation to light touch is intact. Gait is normal.

**RADIOGRAPHS**: Three view lumbar spine AP, lateral and spot show good position of the hardware without failure or lucency.

**IMPRESSION**: S/p L3-S1 TLIF 2-19-20.

**RECOMMENDATIONS/PLAN**: (1) The patient will be sent for thoracic MRI. I want to make sure there is no stenosis that would be causing any additional neurologic symptoms. She is interested in possible spinal cord stimulator trial and this would be necessary for that purpose as well.

(2) If the thoracic MRI is benign, we will likely proceed with spinal cord stimulator trial and potential implant.

(3) She is unable to perform any work at the present time.

(4) Refill request of her pain medication will be submitted to Dr. McCarthy for authorization. Follow-up will be after the MRI is performed. She has no remaining questions.

Physician Assistant Signature: Meegan Domangue, PA-C

I have personally reviewed this patient's chart and radiographs. I agree with the diagnosis and prescribed treatment plan as outlined by the above signed mid-level practitioner.

Physician Signature: Kevin P. McCarthy, M.D.

CPT 99072 is assigned during this declared public health emergency (COVID 19 Pandemic) to account for healthcare provider PPE, masks provided to patients as needed, additional screening time and personnel, additional disinfectant material and time, as well as slower processes to respect current social distancing guidelines.

cg
dt: 1-7-21
*3435070*

Lincoln Life Assurance Company of Boston
Disability and Life Claims
PO Box 2578
Omaha, NE 68172-9688

MS. TERESA LUNDBERG

Lincoln Financial Group®

Lincoln Life Assurance Company of Boston
Disability and Life Claims
PO Box 2578
Omaha, NE 68172-9688
Phone No.: (888) 437-7611
Secure Fax No.: (603) 427-1888

December 16, 2020

Ms. Teresa C. Lundberg

RE: Waiver of Premium Benefits-Group Life Insurance
Policyholder: Acadian Ambulance Services,inc
Policy #: SA3-890-LF0211-01
Claim #: 10248812

Dear Ms. Teresa Lundberg:

We have completed a thorough review of your continued eligibility for the ***Waiver of Premium Benefit*** regarding your ***Group Life Insurance*** through ***Acadian Ambulance Services, Inc.*** The Waiver of Premium is a benefit for you to continue your ***Group Life Insurance*** while you are out on disability provided you meet the ***Acadian Ambulance Services, Inc. Group Life Insurance*** definition of ***"total disability"*** defined as:

*With respect to this provision, "**Total Disability**" or "**Totally Disabled**" means the complete inability, as a result of Injury or Sickness, to perform the Material and Substantial Duties of Any Occupation.*

*With respect to this provision, "**Material and Substantial Duties**" means responsibilities that are normally required to perform Any Occupation, and cannot be reasonably eliminated or modified.*

*With respect to this provision, "**Any Occupation**" means any occupation that the Covered Employee is or becomes reasonably fitted by training, education, experience, age, physical and mental capacity.*

In order to determine if you continue to remain totally disabled (as defined above) from your last follow up, we conducted a review regarding your functional capacity and medical status for our files. We recently received medical records from your Long -Term Disability file (hereinafter "LTD") and your treating physicians in order to evaluate whether or not you meet the above definition of "***total disability".***

The Waiver of Premium Benefit will continue as long as you remain "***totally disabled"*** from "***any occupation".*** Our review of your claim was based on the current restrictions and limitations due to your diagnoses of Lumbar stenosis. In order to determine your current restrictions and limitations,

we reviewed updated medical documentation from your providers.

Your claim was referred to Dr. A. Alen Nourian, a physician Board Certified in Orthopedic Surgery, Spine Surgery. Dr. Nourian attempted to contact your physician to discuss your case. The report noted:

*Phone call placed to Dr. Mccarthy on Wednesday October 21th at 9:52 / Left a message at Bone & Joint Clinic of Baton Rouge on Dr. Mccarthy's nurse line voicemail.*

*Voicemail October 21, 2020: Hi, I'm calling from Dr. Mccarthy's office. You're inquiring about work restrictions for claimant Teresa Lundberg. Our last records indicate she cannot return to work and her follow up will be after her injection, which has been submitted for approval. Her last office visit was October 16th so we're still waiting for the approval for the injection.*

*Phone call placed to Dr. Mccarthy on Thursday October 22th at 10:06 / Left an additional message at Bone and Joint Clinic of Baton Rouge on Dr. Mccarthy's nurse line voicemail.*

Based on the medical records on file, Dr. Nurian's report was completed on November 2, 2020, and concluded the following:

*The medical documentation reflects that the claimant is a 52-year-old female presenting with medical history significant for lumbar stenosis. X-ray lumbar spine dated 3/5/2020 revealed good positon of the lumbar hardware; good lordosis; interbody spacers in appropriate position. X-ray lumbar spine dated 3/16/2020 revealed good position of the hardware without failure or lucency. X-ray lumbar spine dated 3/30/2020 revealed TLIF at L3-4 and L4-5; no interbody spacer placed at L5-S1 secondary to an intraoperative conjoined nerve root; posterior pedicle screws from L3-S1 all of which are in good position. X-ray lumbar spine dated 6/2/2020 revealed TLIF at L3-4 and L4-5, interbody cage with increased bone growth; no acute findings; all hardware in good position. Dr. Kevin McCarthy recorded on 6/2/2020 the claimant is s/p L3-S1 open TLIF; and she complains of low back pain, right leg pain, burning pain down the leg to the big toe with numbness in a L4 distribution. Examination in the note revealed strength 4+/5, antalgic gait. Daigle Himel Daigle PT recorded on 6/29/2020, 7/10/2020, 7/14/2020 and 7/16/2020 the claimant has right sided low back pain with numbness/tingling downright lower extremity. The claimant has confirmed history of lumbar condition. She has continued to have residual disabling issues. There is no evidence of any significant improvement in her condition. Therefore, the claimant requires R&Ls from 9/1/2020 until 2/25/2021, pending re-assessment.*

*Standing: up to 15 minutes at a time for a total of 2 hours per day*
*Walking: up to 15 minutes at a time for a total of 2 hours per day*
*Sitting: unrestricted*
*Lifting/carrying/pushing/pulling occasionally up to 20 lbs. BUE* [bilateral upper extremities]
*Climbing stairs: occasionally*
*Climbing ladders: never*
*Stooping: occasionally*
*Kneeling: occasionally*

*Crouching: occasionally*
*Crawling: never*
*Reaching: occasionally overhead and below waist level, unrestricted desk level BUE*
*Use lower extremities for foot controls: frequently RLE* [right lower extremity] *and unrestricted* [left lower extremity]
*Fine manipulation: unrestricted*
*Simple and firm grasping unrestricted*

Our role in reviewing your claim is to determine whether your medical condition and the medical documentation contained in your claim continues to validate impairment, which would preclude you from, at a minimum, performing the duties of any occupation. We are not required to ensure the availability of your occupation, or that you return to active employment with your former employer in the same or different position. After thorough evaluation of your claim, we have determined that your medical condition is no longer of a nature and severity that would preclude you from performing the material and substantial duties of any occupation. Therefore, you no longer meet the definitions under the terms of the ***Acadian Ambulance Services, Inc.*** Group Life Insurance Policy of ***"totally disabled"*** from ***"any occupation".*** Therefore, we must deny your claim for further benefit consideration.

We are aware that your claim for LTD benefits is currently approved; however, the provisions in your employer's ***Group Life Insurance*** Policy differ from the provisions in the ***Group Disability Insurance*** Policy, and eligibility for LTD benefits does not determine entitlement to ***Waiver of Premium*** benefits.

You may have the right to convert your group life insurance to an individual life insurance policy. Please contact The Lincoln National Life Insurance Company at 1-877-321-1015 within 15 days from the date of this letter regarding your eligibility for the conversion privilege.

The following coverage(s) may be eligible for conversion/portability, subject to the terms of the Conversion/Portability Privilege in the policy:

Basic Life Insurance: $50,000.00
(Please retain a copy of this letter)

We regret our determination could not be more favorable; however, we must abide by policy provisions.

This claim determination reflects an evaluation of the claim facts and the Policy provisions. No internal rules, guidelines, protocols, standards or other similar criteria were relied upon in rendering the claim determination. We reserve the right to make a determination on any additional information that may be submitted.

Under the Employee Retirement Income Security Act of 1974 (ERISA), you may request a review of this denial by writing to the address below:

You may request a review of this denial by writing to the address below:

Lincoln Life Assurance Company of Boston
Attn: Appeal Review Unit
Disability and Life Claims
PO Box 2578
Omaha, NE 68172-9688

The written request for review must be sent within 180 days from receipt of this letter and state the reasons you feel your claim should not have been denied. If Lincoln Financial Group does not receive your written request within 180 days of your receipt of this notice, our claim decision will be final, your file will remain closed, and no further review of your claim will be conducted. In your request for review please include the following documentation:

any additional medical information which supports your continued ***Total Disability*** including records beyond July 16, 2020, such as office treatment notes, test results, consultation reports, procedure notes, therapy records, procedure reports, hospital admission/discharge reports, medications prescribed and filled, physician documentation of specific restrictions and limitations, or any other medical records from all treating providers (i.e., primary care physician, and all specialists, therapists, and hospitals)

Typically you would have 180 days to appeal this decision. Due to the impact of COVID-19, please be aware the Department of Labor has published guidance providing an additional 60 days past the "outbreak period" to appeal a claim. The "outbreak period" started March 1, 2020 and will end when the end of the National Emergency is announced or such other date is declared by the Department of Labor. While Lincoln Financial Group will allow this additional time, which is as of yet undefined, for you to file an appeal, we encourage you to file any planned appeal as soon as possible.

Please send any other information which you feel would support your claim. You are entitled to receive, upon request and free of charge, copies of all claim file documents relevant to the claim determination.

Under normal circumstances, you will be notified of the final decision within 45 days of the date that your request for review is received. If there are special circumstances requiring delay, you will be notified of the final decision no later than 90 days after your request for review is received.

If you require language translation assistance, please contact Lincoln Financial Group to initiate a service provided free of charge to assist with understanding your claim and appeal rights.

如果您需要翻译方面的帮助，请联系我，我会免费为您服务以便了解您的要求和诉求。

Shá ata' hane'go shíká a'doowoł nínízingo saad hosíníłįį' dóó ná'ookąąh nííní'ąągo naaltsoos nííníłtsoozígíí hazho'ó bik'idi'deeshtįįł nínízingo doo bąąh ílínígóó níká a'doowoł éí biniiyé shił hodííłnih áko ákwe'égi níká adeeshwoł.

Si necesita traducción, contácteme para iniciar un servicio gratuito a fin de ayudarle a entender sus

derechos de reclamo y apelación.

Kung nangangailangan ka ng tulong sa translation, mangyaring makipag-ugnayan sa akin upang gumamit ng serbisyong ibinigay nang walang bayad upang matulungan kang maunawaan ang iyong mga karapatan sa paghahabol at pag-aapela.

Under normal circumstances, you will be notified of the final decision within 45 days of the date that your request for review is received. If there are special circumstances requiring delay, you will be notified of the final decision no later than 90 days after your request for review is received.
If you require language translation assistance, please contact Lincoln Financial Group to initiate a service provided free of charge to assist with understanding your claim and appeal rights.

Nothing in this letter should be construed as a waiver of any rights and defenses under the above captioned Policy, and all of these rights and defenses are reserved by Lincoln Financial Group, whether or not they are specifically mentioned herein.

If you have any questions regarding this matter, please contact me.

Sincerely,

Maria Aguirre
Life Waiver Technical Claims Specialist
Phone No.: (888) 437-7611 Ext. 14637
Secure Fax No.: (603) 427-1888

| | |
|---|---|
| From: | LFGNotifications@LFG.com |
| Sent: | Tuesday, December 15, 2020 9:52:04 AM |
| To: | MHOLLIER@ACADIAN.COM; |
| CC: | |
| BCC: | |
| Subject: | [Send Secure]Acadian Ambulance Services,inc Claim No. 10248812 Teresa Lundberg |
| Attachments: | cgtxw8r9jgpcplbcwlef_9570797.pdf; |

---

This notification contains important information regarding a claim with Lincoln Financial Group company. THIS IS AN AUTOMATED EMAIL. PLEASE DO NOT RESPOND. You may use the contact information in the attached letter to respond if needed.

Lincoln Financial Group®

Lincoln Life Assurance Company of Boston
Disability and Life Claims
PO Box 2578
Omaha, NE 68172-9688
Phone No.: (888) 437-7611
Secure Fax No.: (603) 427-1888

December 15, 2020

M. Hollier - Acadian

RE: Waiver of Premium Benefits-Group Life Insurance
Policyholder: Acadian Ambulance Services,inc
Policy #: SA3-890-LF0211-01
Claim #: 10248812

To Whom It May Concern:

We have reviewed the Waiver of Premium claim for Teresa Lundberg.

Our Decision

Unfortunately, because of the medical/investigative information received, this individual does not qualify for the Waiver of Premium benefit. A letter has been sent to Ms. Lundberg detailing the reasons for our denial.

If you have any questions regarding this matter, please contact me.

Sincerely,

Maria Aguirre
Life Waiver Technical Claims Specialist
Phone No.: (888) 437-7611 Ext. 14637
Secure Fax No.: (603) 427-1888

CC: M.Domingue - Acadian
L. Gerald - Acadian

| | |
|---|---|
| From: | LFGNotifications@LFG.com |
| Sent: | Tuesday, December 15, 2020 9:52:09 AM |
| To: | MISSI.DOMINGUE@ACADIAN.COM; |
| CC: | |
| BCC: | |
| Subject: | [Send Secure]Acadian Ambulance Services,inc Claim No. 10248812 Teresa Lundberg |
| Attachments: | cc_cgtxw8r9jgpcplbcwlef_9570797_9840407.pdf; |

---

This notification contains important information regarding a claim with Lincoln Financial Group company. THIS IS AN AUTOMATED EMAIL. PLEASE DO NOT RESPOND. You may use the contact information in the attached letter to respond if needed.

Lincoln Financial Group®

Lincoln Life Assurance Company of Boston
Disability and Life Claims
PO Box 2578
Omaha, NE 68172-9688
Phone No.: (888) 437-7611
Secure Fax No.: (603) 427-1888

December 15, 2020

M. Hollier - Acadian

RE: Waiver of Premium Benefits-Group Life Insurance
Policyholder: Acadian Ambulance Services,inc
Policy #: SA3-890-LF0211-01
Claim #: 10248812

To Whom It May Concern:

We have reviewed the Waiver of Premium claim for Teresa Lundberg.

Our Decision

Unfortunately, because of the medical/investigative information received, this individual does not qualify for the Waiver of Premium benefit. A letter has been sent to Ms. Lundberg detailing the reasons for our denial.

If you have any questions regarding this matter, please contact me.

Sincerely,

Maria Aguirre
Life Waiver Technical Claims Specialist
Phone No.: (888) 437-7611 Ext. 14637
Secure Fax No.: (603) 427-1888

CC: M.Domingue - Acadian
L. Gerald - Acadian

| | |
|---|---|
| From: | LFGNotifications@LFG.com |
| Sent: | Tuesday, December 15, 2020 9:52:14 AM |
| To: | LIZ.GERALD@ACADIAN.COM; |
| CC: | |
| BCC: | |
| Subject: | [Send Secure]Acadian Ambulance Services,inc Claim No. 10248812 Teresa Lundberg |
| Attachments: | cc_cgtxw8r9jgpcplbcwlef_9570797_9840408.pdf; |

This notification contains important information regarding a claim with Lincoln Financial Group company. THIS IS AN AUTOMATED EMAIL. PLEASE DO NOT RESPOND. You may use the contact information in the attached letter to respond if needed.

Lincoln Financial Group®

Lincoln Life Assurance Company of Boston
Disability and Life Claims
PO Box 2578
Omaha, NE 68172-9688
Phone No.: (888) 437-7611
Secure Fax No.: (603) 427-1888

December 15, 2020

M. Hollier - Acadian

RE: Waiver of Premium Benefits-Group Life Insurance
Policyholder: Acadian Ambulance Services,inc
Policy #: SA3-890-LF0211-01
Claim #: 10248812

To Whom It May Concern:

We have reviewed the Waiver of Premium claim for Teresa Lundberg.

Our Decision

Unfortunately, because of the medical/investigative information received, this individual does not qualify for the Waiver of Premium benefit. A letter has been sent to Ms. Lundberg detailing the reasons for our denial.

If you have any questions regarding this matter, please contact me.

Sincerely,

Maria Aguirre
Life Waiver Technical Claims Specialist
Phone No.: (888) 437-7611 Ext. 14637
Secure Fax No.: (603) 427-1888

CC: M.Domingue - Acadian
L. Gerald - Acadian

Lincoln Life Assurance Company of Boston
Group Benefits Life Claims
P.O. Box 7212
London, KY 40742-7212

MS. TERESA LUNDBERG

Lincoln Financial Group®

Lincoln Life Assurance Company of Boston
Group Benefits Life Claims
P.O. Box 7212
London, KY 40742-7212
Phone No.: (888) 437-7611
Secure Fax No.: (603) 427-1888

September 9, 2020

Ms. Teresa C. Lundberg

RE: Waiver of Premium Benefits-Group Life Insurance
Policyholder: Acadian Ambulance Services,inc
Policy #: SA3-890-LF0211-01
Claim #: 10248812

Dear Ms. Teresa Lundberg:

We are writing in regard to your Waiver of Premium Benefit under your Group Life Insurance Policy. This matter is governed by the Employee Retirement Income Security Act of 1974 (hereinafter "ERISA").

Based on medical information currently in our files, we have approved the above-referenced claim for the Waiver of Premium Benefit under your Group Life Insurance Policy. This means while you are disabled, your coverage will remain in effect and we will not require payment of the premiums normally due from you and/or your employer.

The current value of your policy benefit is $50,000.00 Basic Life Insurance. However, based on the provisions of the policy at the time you became disabled, while you are on Waiver of Premium status:

*"A Covered Employee's continued Life Insurance coverage under this provision will end on the earliest of the date when:*

1. *he recovers and ceases to be Totally Disabled;*
2. *he returns to Active Employment;*
3. *he refuses to have an examination by a Physician chosen by Lincoln Financial Group or fails to give Due Proof of continuation of Total Disability; or*
4. *90 Days after the date Lincoln Financial Group mails the Covered Employee a request for additional Due Proof of loss, Lincoln Financial Group does not receive such Due Proof; or*
5. *he reaches age 65; or*
6. *the date he begins receiving a benefit from a retirement plan; or*
7. *the date the Sponsor classifies him as retired."*

This Waiver of Premium Benefit shall remain in effect as long as you continue to be totally disabled

by your illness/injury and your disability prevents you from performing any occupation. Since the Waiver of Premium Benefit is based on proof of continuous disability, we will periodically request current medical records or a physical examination.

Please be advised it is your responsibility to keep Lincoln Financial Group as well as the policyholder informed of any address changes. Please contact the policyholder for requests to change and/or update your beneficiary designation. Failure to communicate address changes to Lincoln Financial Group may result in the denial of your claim.

If you have any questions regarding this matter, please contact me.

Sincerely,

Maria Aguirre
Life Waiver Technical Claims Specialist
Phone No.: (888) 437-7611 Ext. 14637
Secure Fax No.: (603) 427-1888

CC: M. Hollier - Acadian
M.Domingue - Acadian
L. Gerald - Acadian

| | |
|---|---|
| From: | LFGNotifications@LFG.com |
| Sent: | Wednesday, September 9, 2020 1:31:24 PM |
| To: | MHOLLIER@ACADIAN.COM; |
| CC: | |
| BCC: | |
| Subject: | [Send Secure]Acadian Ambulance Services,inc Claim No. 10248812 Teresa Lundberg |
| Attachments: | cc_8weu0bwz2ogigc4lcdp1_8996011_9256224.pdf; |

---

This notification contains important information regarding a claim with Lincoln Financial Group company. THIS IS AN AUTOMATED EMAIL. PLEASE DO NOT RESPOND. You may use the contact information in the attached letter to respond if needed.

Lincoln Financial Group®

Lincoln Life Assurance Company of Boston
Group Benefits Life Claims
P.O. Box 7212
London, KY 40742-7212
Phone No.: (888) 437-7611
Secure Fax No.: (603) 427-1888

September 9, 2020

Ms. Teresa C. Lundberg

RE: Waiver of Premium Benefits-Group Life Insurance
Policyholder: Acadian Ambulance Services,inc
Policy #: SA3-890-LF0211-01
Claim #: 10248812

Dear Ms. Teresa Lundberg:

We are writing in regard to your Waiver of Premium Benefit under your Group Life Insurance Policy. This matter is governed by the Employee Retirement Income Security Act of 1974 (hereinafter "ERISA").

Based on medical information currently in our files, we have approved the above-referenced claim for the Waiver of Premium Benefit under your Group Life Insurance Policy. This means while you are disabled, your coverage will remain in effect and we will not require payment of the premiums normally due from you and/or your employer.

The current value of your policy benefit is $50,000.00 Basic Life Insurance. However, based on the provisions of the policy at the time you became disabled, while you are on Waiver of Premium status:

*"A Covered Employee's continued Life Insurance coverage under this provision will end on the earliest of the date when:*

1. *he recovers and ceases to be Totally Disabled;*
2. *he returns to Active Employment;*
3. *he refuses to have an examination by a Physician chosen by Lincoln Financial Group or fails to give Due Proof of continuation of Total Disability; or*
4. *90 Days after the date Lincoln Financial Group mails the Covered Employee a request for additional Due Proof of loss, Lincoln Financial Group does not receive such Due Proof; or*
5. *he reaches age 65; or*
6. *the date he begins receiving a benefit from a retirement plan; or*
7. *the date the Sponsor classifies him as retired."*

This Waiver of Premium Benefit shall remain in effect as long as you continue to be totally disabled

by your illness/injury and your disability prevents you from performing any occupation. Since the Waiver of Premium Benefit is based on proof of continuous disability, we will periodically request current medical records or a physical examination.

Please be advised it is your responsibility to keep Lincoln Financial Group as well as the policyholder informed of any address changes. Please contact the policyholder for requests to change and/or update your beneficiary designation. Failure to communicate address changes to Lincoln Financial Group may result in the denial of your claim.

If you have any questions regarding this matter, please contact me.

Sincerely,

Maria Aguirre
Life Waiver Technical Claims Specialist
Phone No.: (888) 437-7611 Ext. 14637
Secure Fax No.: (603) 427-1888

CC: M. Hollier - Acadian
M.Domingue - Acadian
L. Gerald - Acadian

| | |
|---|---|
| From: | LFGNotifications@LFG.com |
| Sent: | Wednesday, September 9, 2020 1:31:29 PM |
| To: | MISSI.DOMINGUE@ACADIAN.COM; |
| CC: | |
| BCC: | |
| Subject: | [Send Secure]Acadian Ambulance Services,inc Claim No. 10248812 Teresa Lundberg |
| Attachments: | cc_8weu0bwz2ogigc4lcdp1_8996011_9256225.pdf; |

---

This notification contains important information regarding a claim with Lincoln Financial Group company. THIS IS AN AUTOMATED EMAIL. PLEASE DO NOT RESPOND. You may use the contact information in the attached letter to respond if needed.

Lincoln Financial Group®

Lincoln Life Assurance Company of Boston
Group Benefits Life Claims
P.O. Box 7212
London, KY 40742-7212
Phone No.: (888) 437-7611
Secure Fax No.: (603) 427-1888

September 9, 2020

Ms. Teresa C. Lundberg

RE: Waiver of Premium Benefits-Group Life Insurance
Policyholder: Acadian Ambulance Services,inc
Policy #: SA3-890-LF0211-01
Claim #: 10248812

Dear Ms. Teresa Lundberg:

We are writing in regard to your Waiver of Premium Benefit under your Group Life Insurance Policy. This matter is governed by the Employee Retirement Income Security Act of 1974 (hereinafter "ERISA").

Based on medical information currently in our files, we have approved the above-referenced claim for the Waiver of Premium Benefit under your Group Life Insurance Policy. This means while you are disabled, your coverage will remain in effect and we will not require payment of the premiums normally due from you and/or your employer.

The current value of your policy benefit is $50,000.00 Basic Life Insurance. However, based on the provisions of the policy at the time you became disabled, while you are on Waiver of Premium status:

*"A Covered Employee's continued Life Insurance coverage under this provision will end on the earliest of the date when:*

1. *he recovers and ceases to be Totally Disabled;*
2. *he returns to Active Employment;*
3. *he refuses to have an examination by a Physician chosen by Lincoln Financial Group or fails to give Due Proof of continuation of Total Disability; or*
4. *90 Days after the date Lincoln Financial Group mails the Covered Employee a request for additional Due Proof of loss, Lincoln Financial Group does not receive such Due Proof; or*
5. *he reaches age 65; or*
6. *the date he begins receiving a benefit from a retirement plan; or*
7. *the date the Sponsor classifies him as retired."*

This Waiver of Premium Benefit shall remain in effect as long as you continue to be totally disabled

by your illness/injury and your disability prevents you from performing any occupation. Since the Waiver of Premium Benefit is based on proof of continuous disability, we will periodically request current medical records or a physical examination.

Please be advised it is your responsibility to keep Lincoln Financial Group as well as the policyholder informed of any address changes. Please contact the policyholder for requests to change and/or update your beneficiary designation. Failure to communicate address changes to Lincoln Financial Group may result in the denial of your claim.

If you have any questions regarding this matter, please contact me.

Sincerely,

Maria Aguirre
Life Waiver Technical Claims Specialist
Phone No.: (888) 437-7611 Ext. 14637
Secure Fax No.: (603) 427-1888

CC: M. Hollier - Acadian
M.Domingue - Acadian
L. Gerald - Acadian

| | |
|---|---|
| From: | LFGNotifications@LFG.com |
| Sent: | Wednesday, September 9, 2020 1:31:35 PM |
| To: | LIZ.GERALD@ACADIAN.COM; |
| CC: | |
| BCC: | |
| Subject: | [Send Secure]Acadian Ambulance Services,inc Claim No. 10248812 Teresa Lundberg |
| Attachments: | cc_8weu0bwz2ogigc4lcdp1_8996011_9256226.pdf; |

This notification contains important information regarding a claim with Lincoln Financial Group company. THIS IS AN AUTOMATED EMAIL. PLEASE DO NOT RESPOND. You may use the contact information in the attached letter to respond if needed.

Lincoln Financial Group®

Lincoln Life Assurance Company of Boston
Group Benefits Life Claims
P.O. Box 7212
London, KY 40742-7212
Phone No.: (888) 437-7611
Secure Fax No.: (603) 427-1888

September 9, 2020

Ms. Teresa C. Lundberg

RE: Waiver of Premium Benefits-Group Life Insurance
Policyholder: Acadian Ambulance Services,inc
Policy #: SA3-890-LF0211-01
Claim #: 10248812

Dear Ms. Teresa Lundberg:

We are writing in regard to your Waiver of Premium Benefit under your Group Life Insurance Policy. This matter is governed by the Employee Retirement Income Security Act of 1974 (hereinafter "ERISA").

Based on medical information currently in our files, we have approved the above-referenced claim for the Waiver of Premium Benefit under your Group Life Insurance Policy. This means while you are disabled, your coverage will remain in effect and we will not require payment of the premiums normally due from you and/or your employer.

The current value of your policy benefit is $50,000.00 Basic Life Insurance. However, based on the provisions of the policy at the time you became disabled, while you are on Waiver of Premium status:

*"A Covered Employee's continued Life Insurance coverage under this provision will end on the earliest of the date when:*

1. *he recovers and ceases to be Totally Disabled;*
2. *he returns to Active Employment;*
3. *he refuses to have an examination by a Physician chosen by Lincoln Financial Group or fails to give Due Proof of continuation of Total Disability; or*
4. *90 Days after the date Lincoln Financial Group mails the Covered Employee a request for additional Due Proof of loss, Lincoln Financial Group does not receive such Due Proof; or*
5. *he reaches age 65; or*
6. *the date he begins receiving a benefit from a retirement plan; or*
7. *the date the Sponsor classifies him as retired."*

This Waiver of Premium Benefit shall remain in effect as long as you continue to be totally disabled

by your illness/injury and your disability prevents you from performing any occupation. Since the Waiver of Premium Benefit is based on proof of continuous disability, we will periodically request current medical records or a physical examination.

Please be advised it is your responsibility to keep Lincoln Financial Group as well as the policyholder informed of any address changes. Please contact the policyholder for requests to change and/or update your beneficiary designation. Failure to communicate address changes to Lincoln Financial Group may result in the denial of your claim.

If you have any questions regarding this matter, please contact me.

Sincerely,

Maria Aguirre
Life Waiver Technical Claims Specialist
Phone No.: (888) 437-7611 Ext. 14637
Secure Fax No.: (603) 427-1888

CC: M. Hollier - Acadian
M.Domingue - Acadian
L. Gerald - Acadian

# Billing Statement:

ReleasePoint

**Invoice Date: 09/02/2020** **Invoice #: 712618-423**
**Lincoln Financial Group**

**Invoice for Requests for Medical Information completed between Aug 1 2020 and Aug 31 2020**

**LIBMTW** **Bill Code: LIBSFU**

| RP #<br>Cust ID | Patient Name<br>Provider Name | Status | Date<br>Req By | RP Fee | Med Fee | Rush | QC Amt<br>Pages | Total |
|---|---|---|---|---|---|---|---|---|
| 6682937<br>10248812 | LUNDBERG, TERESA<br>BONE & JOINT CLINIC OF BATON RO... | Canceled | 08/06/20<br>M Aguirre | $ 4.00 | $ 0.00 | $ 0.00 | $ 0.00<br>8 | **$ 4.00** |
| 6788442<br>10248812 | LUNDBERG, TERESA<br>DAIGLE HIMEL DAIGLE PT | Complete | 08/07/20<br>09-LF0211 | $ 8.00 | $ 0.00 | $ 0.00 | $ 0.00<br>32 | **$ 8.00** |

**ReleasePoint**

**Total Amount Due:** **$ 12.00**

**405 W. Foothill Blvd**
**Suite 204**
**Claremont, CA 91711**

**Tax ID: 95-2843455**

Lincoln Financial Group®

Date: August 27, 2020

Subject: **Waiver of Premium Nursing Memorandum**

***Claim#:*** 10248812

***Claimant:*** Teresa Lundberg

***Clinical Assessment:***

Full file reviewed, including associated file (9832837). Per records, claimant with a history of a work-related back injury (date of injury 6/5/11), with persistent low back pain radiating to right leg with associated weakness, not responding to conservative treatment. Claimant underwent multilevel Lumbar spinal fusion at L3-S1 with hardware placement on 2/19/20, per Dr. Kevin McCarthy (Orthopedic Surgery), due to lumbar stenosis, herniated disc and lumbar radiculopathy. Operative report reviewed. Comorbid conditions include high blood pressure, migraines, depressive disorder.

Postoperative OVN outline persistent complaints of right thigh / lower leg burning, with Lyrica (for nerve pain) prescribed (3/5/20). LOV 6/2/20 note complains of low back and right leg pain, burning sensation with associated numbness (right leg), with leg spasms. Claimant continues to require narcotic pain medication every 4 hours, in addition to muscle relaxant and Lyrica. Exam notes decreased right leg strength, hypersensitivity to touch (right leg), positive straight leg raise (clinical assessment for disc herniation), ambulating with antalgic gait. Prescriptions were refilled, with request submitted to Workers Compensation for Epidural Steroid injections (ESI – to be done in a series). Xray notes increased bone growth with hardware in good position. AP endorsed off work.

Claimant underwent right side L4-L5 ESI on 6/30/20 (per AP McCarthy).

P.T Progress notes dated 6/29/20 through 7/16/20 were reviewed. Per last P.T. Session, claimant with right sided low back pain with numbness/tingling going down right leg. Current problems include low back pain, leg weakness, antalgic gait, limited lumbar ROM and poor posture. FOTO score at 51 (functional assessment, noted as fair / still with difficulty performing moderate daily activities).

Per associated file (System Note entry 8/4/20), claimant reports last P.T. visit was on 7/16/20, now on hold due to pain. Repeat MRI is being scheduled (pending approval).

Based on records received, claimant underwent multilevel lumbar spinal fusion with persistent complaints noted post-operatively, including ongoing pain, right leg weakness, antalgic gait, requiring daily medication management (narcotics, muscle relaxant,) with further escalation in care (epidural injections – to be completed in a series). Claimant is pending further advanced imaging to assess clinical status, which will impact ongoing treatment planning. Therefore, less than sedentary r/ls are reasonable and supported from 2/19/20 ongoing, through completion of epidural steroid injections series, repeat MRI testing and provider evaluation. Based on clinical findings, claimant would not be capable of sustained activity, at any level, at this time. It is reasonable for claimant to complete prescribed testing

and provider evaluation, to establish an appropriate treatment plan ongoing. Therefore, suggest securing updated OVN and r/ls from AP McCarthy (beyond 6/2/20), including MRI report and procedure reports (injections planned), and updated P.T. Progress Notes (if treatment restarted) in 3 months (November 2020) to obtain a clinical update. Consider MDS referral at that time, if needed. LWCS updated. MDS assignment complete.

Amy M., RN, CCM

Nurse Disability Consultant II, Lincoln Financial Group

Lincoln Life Assurance Company of Boston
Group Benefits Life Claims
P.O. Box 7212
London, KY 40742-7212

MS. TERESA LUNDBERG

Lincoln Financial Group®

Lincoln Life Assurance Company of Boston
Group Benefits Life Claims
P.O. Box 7212
London, KY 40742-7212
Phone No.: (888) 437-7611
Secure Fax No.: (603) 427-1888

August 20, 2020

Ms. Teresa C. Lundberg

RE: Waiver of Premium Benefits-Group Life Insurance
Policyholder: Acadian Ambulance Services,inc
Policy #: SA3-890-LF0211-01
Claim #: 10248812

Dear Ms. Teresa Lundberg:

Lincoln Life Assurance Company of Boston is responsible for managing claims for benefits under the Acadian Ambulance Services,inc Waiver of Premium, Group Life Insurance Policy.

The purpose of this letter is to inform you that we require additional time to render a determination on your Waiver of Premium (hereinafter WOP) claim. Under the Employee Retirement Income Security Act of 1974 (ERISA), an initial claim determination should be rendered within 45 days of receipt of claim, unless there are special circumstances which require a delay in making a claim determination. If additional time is needed, ERISA allows for up to two 30-day extensions to evaluate and render a claim decision.

At this time, we need additional information which is necessary to render a full and fair determination on your WOP claim for benefits under the Policy. Currently, we are awaiting a medical review of your file from our clinical team. We expect to make a determination on your claim no later than September 22, 2020.

We apologize for any inconvenience caused by this delay and will make every effort to render a determination as soon as possible. In the interim, should you have any questions pertaining to the status of your claim, please contact me at the telephone number below.

Sincerely,

Maria Aguirre
Life Waiver Technical Claims Specialist
Phone No.: (888) 437-7611 Ext. 14637
Secure Fax No.: (603) 427-1888

ReleasePoint

**Medical Record Overview**

**Date:** **August 7, 2020**

**Patient Name:** LUNDBERG, TERESA

**Records From:** Daigle Himel Daigle Physical Therapy
125 Bayou Gardens Blvd
houma, LA 70364
(985) 223-4760

**Request Scope:** From April 30, 2020 to Present

**Chart Range:** 06/29/2020 - 07/16/2020

**RP ID:** 6788442

**Client ID:** 10248812

**Source:** LIBMTW

**Req By:** 09-LF0211

**SSN:**

| Classification | From | To | Total | Starts on Page |
|---|---|---|---|---|
| Progress Notes | Jun 29 2020 | Jul 16 2020 | 26 | 2 |
| Non Medical/Other | | | 1 | 28 |
| Request Correspondence | | | 5 | 29 |
| | | **Total Page Count:** | 32 | |

**Notes From QC:**

**Daigle Himel Daigle PT - BG**
125 Bayou Gardens Blvd
Houma, LA, 70364-1431
P: (985)223-4760
F: (985)223-4759
http://www.ptcenter-la.com/

## FLOWSHEET

**Patient:** Lundberg, Teresa

**Date:** 07/16/2020 **Start Date:** 06/29/2020

**Physician:** K. McCarthy, MD (1407843501)

**Diagnosis:** ICD10: Z47.89: Encounter for other orthopedic aftercare, M43.26: Fusion of spine, lumbar region, M54.5: Low back pain, M62.81: Muscle weakness (generalized)

**Location: gym**

**Manual Therapy**

| Date | Weights/Sets/Reps | Minutes | Surface | Procedure | Supervision |
|---|---|---|---|---|---|
| 2020-07-16 | -/-/- | 10' | | | 1:1 w/Therapist *KR* |

**Multi-Hip Abduction**

| Date | Weights/Sets/Reps | Minutes | Surface | Procedure | Supervision |
|---|---|---|---|---|---|
| 2020-07-16 | 40#/3/10 | - | | | 1:1 w/Assistant *KR* |

**Multi-Hip Flexion**

| Date | Weights/Sets/Reps | Minutes | Surface | Procedure | Supervision |
|---|---|---|---|---|---|
| 2020-07-16 | 40#/3/10 | - | | | 1:1 w/Assistant *KR* |

**NK Quads/Hams**

| Date | Weights/Sets/Reps | Minutes | Surface | Procedure | Supervision |
|---|---|---|---|---|---|
| 2020-07-16 | 5#/-/- | 4'/4' | | | 1:1 w/Assistant *KR* |

**Total Gym**

| Date | Weights/Sets/Reps | Minutes | Surface | Procedure | Supervision |
|---|---|---|---|---|---|
| 2020-07-16 | -/-/- | 4' | | | 1:1 w/Assistant *KR* |

**Core Stix Stir The Pot**

| Date | Weights/Sets/Reps | Minutes | Surface | Procedure | Supervision |
|---|---|---|---|---|---|
| 2020-07-16 | purple/3/10 | - | | | 1:1 w/Assistant *KR* |

**Core Stix Push/Pull**

| Date | Weights/Sets/Reps | Minutes | Surface | Procedure | Supervision |
|---|---|---|---|---|---|
| 2020-07-16 | purple/3/10 | - | | | 1:1 w/Assistant *KR* |

**Seated Swiss Ball Flexions**

| Date | Weights/Sets/Reps | Minutes | Surface | Procedure | Supervision |
|---|---|---|---|---|---|
| 2020-07-16 | -/-/- | 4' | | | 1:1 w/Assistant *KR* |

**Swiss Ball Trunk Rotations**

**Daigle Himel Daigle PT - BG**
125 Bayou Gardens Blvd
Houma, LA, 70364-1431
P: (985)223-4760
F: (985)223-4759
http://www.ptcenter-la.com/

& HAND CENTER

## FLOWSHEET

**Patient:** Lundberg, Teresa

| Date | Weights/Sets/Reps | Minutes | Surface | Procedure | Supervision |
|---|---|---|---|---|---|
| 2020-07-16 | -/3/10 | - | | | 1:1 w/Assistant *KR* |

**Swiss Ball Knee to Chest**

| Date | Weights/Sets/Reps | Minutes | Surface | Procedure | Supervision |
|---|---|---|---|---|---|
| 2020-07-16 | -/3/10 | - | | | 1:1 w/Assistant *KR* |

**Dead Bugs**

| Date | Weights/Sets/Reps | Minutes | Surface | Procedure | Supervision |
|---|---|---|---|---|---|
| 2020-07-16 | -/3/10 | - | | | 1:1 w/Assistant *KR* |

**Estim W/Heat**

| Date | Weights/Sets/Reps | Minutes | Surface | Procedure | Supervision |
|---|---|---|---|---|---|
| 2020-07-16 | -/-/- | 15' | | | 1:1 w/Assistant *KR* |

Daigle Himel Daigle PT - BG
125 Bayou Gardens Blvd
Houma, LA 70364-1431
Phone: (985)223-4760
Fax: (985)223-4759
http://www.ptcenter-la.com/

# Daily Note / Billing Sheet

**Patient Name:** Lundberg, Teresa
**Date of Birth:**
**Referring Physician(s):** McCarthy, Kevin MD

**Surgery:** (Date/Type) 02/19/2020 TLIF L3-5
**Visit No.:** 6

**Insurance Name:** Enstar

**Date of Daily Note:** 07/16/2020
**Injury/Onset/Change of Status Date:** 06/30/2019 Insidious
**Diagnosis:** ICD10: Z47.89: Encounter for other orthopedic aftercare, M43.26: Fusion of spine, lumbar region, M54.5: Low back pain, M62.81: Muscle weakness (generalized)
**Date of Original Eval:** 06/29/2020
**Treatment Diagnosis:** ICD10: Z47.89: Encounter for other orthopedic aftercare, M43.26: Fusion of spine, lumbar region, M54.5: Low back pain, M62.81: Muscle weakness (generalized)
**Workers' Comp Claim:** HU000769994

## Subjective

**Treatment Side:** Right
**Current Complaints / Gains:** R side low back pain with numbness/tingling down R LE.

Pt reports her legs are sore as expected due to LE strength TEs but low back is feeling great.
**Before the injury/onset/change of status date, the patient was able to perform the following activities:**
**Self Care:**
**Changing & Maintaining Body Position:**
**Mobility: Walking & Moving Around:**
**Current Functional Limitations:**
**Self Care:** Sleep: Disturbed Sleep
**Changing & Maintaining Body Position:** Maintaining a Body Position: Remaining Standing, Standing
**Mobility: Walking & Moving Around:** IADLs: Food Preparation, Housekeeping
**Aggravating Factors:** Standing
**Home Health Care:** No
**Medical History:** High Blood Pressure
**Complicating/Personal Factors:** No Known Complicating Factors Affecting the Plan of Care
**Mental Status/Cognitive Function Appears Impaired?** No

## Objective

| CPT® Code | Direct Timed Codes | Units |
|---|---|---|
| 97110 | Therapeutic Exercise<br>See Flowsheet | 2 |
| 97140 | Manual Therapy<br>STM, MFR, L5-S1 gapping, B LE stretching | 1 |

| CPT® Code | Untimed Codes | Units |
|---|---|---|
| 97014 | E-Stim Unattended<br>High Volt<br>with MHP | 1 |

CPT copyright 2019 American Medical Association. All rights reserved.

## Assessment

**Assessment/Diagnosis:** Pt tol tx well today with no reports of pain during session. Pt is working very well in the clinic and is completing all TEs with no difficulty. Pt is completing higher level strength and stability TEs today. Pt continues to respond well to manual therapy and is exhibiting reduced trigger points in lumbar paraspinals. Will progress pt as tolerated.
**Patient Education:** HEP, Postural Awareness
**Patient Demonstrates Compliance with Prescribed HEP**
**Rehab Potential:** Good
**Patient Problems:**
- Educational Needs
- Low Back Pain
- LE weakness
- Antalgic gait
- Lumbar ROM limitations
- Poor Posture

**Daigle Himel Daigle PT - BG**
125 Bayou Gardens Blvd
Houma, LA 70364-1431
Phone: (985)223-4760
Fax: (985)223-4759
http://www.ptcenter-la.com/

**Patient Name:** Lundberg, Teresa
**Date of Birth:**
**Document Date:** 07/16/2020

# Daily Note / Billing Sheet

- FOTO scoer of 51

**Short Term Goals:**
1: (1 Week) | Pt to be I with HEP. |
2: (2 Weeks) | Pt to report 4/10 low back pain at worst. |
3: (2 Weeks) | Pt to exhibit normal, pain free gait for all distances. |

**Long Term Goals:**
1: (4 Weeks) | Pt to report minimal to nil low back pain with all functional activities and ADLs. |
2: (4 Weeks) | Pt to exhibit at least 4+/5 LE strength with no fatiguing weakness. |
3: (4 Weeks) | Pt to exhibit functional lumbar ROM with no pain at end ranges. |
4: (4 Weeks) | Pt to exhibit normal standing posture and be able to wash dishes or do housework with no pain. |
5: (4 Weeks) | Pt to score at least 75 on FOTO. |

**Plan**
**Instructions:** Progressing Patient Next Visit
Progress pt per POC.

PT, DPT

Ryan Ocker, PT
License #09965
*Electronically Signed by Ryan Ocker, PT on July 16, 2020 at 4:13 pm*

**Daigle Himel Daigle PT - BG**
125 Bayou Gardens Blvd
Houma, LA, 70364-1431
P: (985)223-4760
F: (985)223-4759
http://www.ptcenter-la.com/

# FLOWSHEET

**Patient:** Lundberg, Teresa

**Date:** 07/14/2020 **Start Date:** 06/29/2020

**Physician:** K. McCarthy, MD (1407843501)

**Diagnosis:** ICD10: Z47.89: Encounter for other orthopedic aftercare, M43.26: Fusion of spine, lumbar region, M54.5: Low back pain, M62.81: Muscle weakness (generalized)

**Location: gym**

**Manual Therapy**

| Date | Weights/Sets/Reps | Minutes | Surface | Procedure | Supervision |
|---|---|---|---|---|---|
| 2020-07-14 | -/-/- | 10' | | | 1:1 w/Therapist *KR* |

**Multi-Hip Abduction**

| Date | Weights/Sets/Reps | Minutes | Surface | Procedure | Supervision |
|---|---|---|---|---|---|
| 2020-07-14 | 40#/3/10 | - | | | 1:1 w/Assistant *KR* |

**Multi-Hip Flexion**

| Date | Weights/Sets/Reps | Minutes | Surface | Procedure | Supervision |
|---|---|---|---|---|---|
| 2020-07-14 | 40#/3/10 | - | | | 1:1 w/Assistant *KR* |

**NK Quads/Hams**

| Date | Weights/Sets/Reps | Minutes | Surface | Procedure | Supervision |
|---|---|---|---|---|---|
| 2020-07-14 | 5#/-/- | 4'/4' | | | 1:1 w/Assistant *KR* |

**Total Gym**

| Date | Weights/Sets/Reps | Minutes | Surface | Procedure | Supervision |
|---|---|---|---|---|---|
| 2020-07-14 | -/-/- | 4' | | | 1:1 w/Assistant *KR* |

**Dead Bugs**

| Date | Weights/Sets/Reps | Minutes | Surface | Procedure | Supervision |
|---|---|---|---|---|---|
| 2020-07-14 | -/3/10 | - | | | 1:1 w/Assistant *KR* |

**Core Stix Stir The Pot**

| Date | Weights/Sets/Reps | Minutes | Surface | Procedure | Supervision |
|---|---|---|---|---|---|
| 2020-07-14 | purple/3/10 | - | | | 1:1 w/Assistant *KR* |

**Core Stix Push/Pull**

| Date | Weights/Sets/Reps | Minutes | Surface | Procedure | Supervision |
|---|---|---|---|---|---|
| 2020-07-14 | purple/3/10 | - | | | 1:1 w/Assistant *KR* |

**Seated Swiss Ball Flexions**

**Daigle Himel Daigle PT - BG**
125 Bayou Gardens Blvd
Houma, LA, 70364-1431
P: (985)223-4760
F: (985)223-4759
http://www.ptcenter-la.com/

## FLOWSHEET

**Patient:** Lundberg, Teresa

| Date | Weights/Sets/Reps | Minutes | Surface | Procedure | Supervision |
|---|---|---|---|---|---|
| 2020-07-14 | -/-/- | 4' | | | 1:1 w/Assistant *KR* |

**Swiss Ball Trunk Rotations**

| Date | Weights/Sets/Reps | Minutes | Surface | Procedure | Supervision |
|---|---|---|---|---|---|
| 2020-07-14 | -/3/10 | - | | | 1:1 w/Assistant *KR* |

**Swiss Ball Knee to Chest**

| Date | Weights/Sets/Reps | Minutes | Surface | Procedure | Supervision |
|---|---|---|---|---|---|
| 2020-07-14 | -/3/10 | - | | | 1:1 w/Assistant *KR* |

**Estim W/Heat**

| Date | Weights/Sets/Reps | Minutes | Surface | Procedure | Supervision |
|---|---|---|---|---|---|
| 2020-07-14 | -/-/- | 15' | | | 1:1 w/Assistant *KR* |

**Daigle Himel Daigle PT - BG**
125 Bayou Gardens Blvd
Houma, LA 70364-1431
Phone: (985)223-4760
Fax: (985)223-4759
http://www.ptcenter-la.com/

# Daily Note / Billing Sheet

**Patient Name:** Lundberg, Teresa
**Date of Birth:**
**Referring Physician(s):** McCarthy, Kevin MD

**Surgery:** (Date/Type) 02/19/2020 TLIF L3-5
**Visit No.:** 5

**Insurance Name:** Enstar

**Date of Daily Note:** 07/14/2020
**Injury/Onset/Change of Status Date:** 06/30/2019 Insidious
**Diagnosis:** ICD10: Z47.89: Encounter for other orthopedic aftercare, M43.26: Fusion of spine, lumbar region, M54.5: Low back pain, M62.81: Muscle weakness (generalized)
**Date of Original Eval:** 06/29/2020
**Treatment Diagnosis:** ICD10: Z47.89: Encounter for other orthopedic aftercare, M43.26: Fusion of spine, lumbar region, M54.5: Low back pain, M62.81: Muscle weakness (generalized)
**Workers' Comp Claim:** HU000769994

## Subjective

**Treatment Side:** Right
**Current Complaints / Gains:** R side low back pain with numbness/tingling down R LE.

Pt reports very minimal symptoms down R LE and R low back pain. Pt reports some tightness between shoulder blades. Pt reports she would like to strengthen B LEs.

**Before the injury/onset/change of status date, the patient was able to perform the following activities:**
- **Self Care:**
- **Changing & Maintaining Body Position:**
- **Mobility: Walking & Moving Around:**

**Current Functional Limitations:**
- **Self Care:** Sleep: Disturbed Sleep
- **Changing & Maintaining Body Position:** Maintaining a Body Position: Remaining Standing, Standing
- **Mobility: Walking & Moving Around:** IADLs: Food Preparation, Housekeeping

**Aggravating Factors:** Standing
**Home Health Care:** No
**Medical History:** High Blood Pressure
**Complicating/Personal Factors:** No Known Complicating Factors Affecting the Plan of Care
**Mental Status/Cognitive Function Appears Impaired?** No

## Objective

| CPT® Code | Direct Timed Codes | Units |
|---|---|---|
| 97110 | Therapeutic Exercise<br>See Flowsheet | 2 |
| 97140 | Manual Therapy<br>STM, MFR, L5-S1 gapping, B LE stretching | 1 |

| CPT® Code | Untimed Codes | Units |
|---|---|---|
| 97014 | E-Stim Unattended<br>High Volt<br>with MHP | 1 |

*CPT copyright 2019 American Medical Association. All rights reserved.*

## Assessment

**Assessment/Diagnosis:** Pt tol tx well today with no reports of increased pain during session. Pt is working very well in the clinic and was able to complete all new strength TEs with minimal difficulty. Pt exhibiting improved lumbar stability today. Pt still having most pain when doing dishes and housework. Will progress pt as tolerated.
**Patient Education:** HEP, postural awareness
**Patient Demonstrates Compliance with Prescribed HEP**
**Rehab Potential:** Good
**Patient Problems:**
- Educational Needs
- Low Back Pain
- LE weakness
- Antalgic gait
- Lumbar ROM limitations
- Poor Posture

**Daigle Himel Daigle PT - BG**
125 Bayou Gardens Blvd
Houma, LA 70364-1431
Phone: (985)223-4760
Fax: (985)223-4759
http://www.ptcenter-la.com/

**Patient Name:** Lundberg, Teresa
**Date of Birth:**
**Document Date:** 07/14/2020

## Daily Note / Billing Sheet

- FOTO scoer of 51

**Short Term Goals:**
1: (1 Week) | Pt to be I with HEP. |
2: (2 Weeks) | Pt to report 4/10 low back pain at worst. |
3: (2 Weeks) | Pt to exhibit normal, pain free gait for all distances. |

**Long Term Goals:**
1: (4 Weeks) | Pt to report minimal to nil low back pain with all functional activities and ADLs. |
2: (4 Weeks) | Pt to exhibit at least 4+/5 LE strength with no fatiguing weakness. |
3: (4 Weeks) | Pt to exhibit functional lumbar ROM with no pain at end ranges. |
4: (4 Weeks) | Pt to exhibit normal standing posture and be able to wash dishes or do housework with no pain. |
5: (4 Weeks) | Pt to score at least 75 on FOTO. |

**Plan**

**Instructions:** Progressing Patient Next Visit
Progress pt per POC.

PT, DPT

Ryan Ocker, PT
License #09965
*Electronically Signed by Ryan Ocker on July 14, 2020 at 2:42 pm*

**Daigle Himel Daigle PT - BG**
125 Bayou Gardens Blvd
Houma, LA, 70364-1431
P: (985)223-4760
F: (985)223-4759
http://www.ptcenter-la.com/

## FLOWSHEET

**Patient:** Lundberg, Teresa

**Date:** 07/10/2020 **Start Date:** 06/29/2020
**Physician:** K. McCarthy, MD (1407843501)
**Diagnosis:** ICD10: Z47.89: Encounter for other orthopedic aftercare, M43.26: Fusion of spine, lumbar region, M54.5: Low back pain, M62.81: Muscle weakness (generalized)

**Location: gym**

**Manual Therapy**

| Date | Weights/Sets/Reps | Minutes | Surface | Procedure | Supervision |
|---|---|---|---|---|---|
| 2020-07-10 | -/-/- | 10' | | | 1:1 w/Therapist *KR* |

**Core Stix Stir The Pot**

| Date | Weights/Sets/Reps | Minutes | Surface | Procedure | Supervision |
|---|---|---|---|---|---|
| 2020-07-10 | purple/3/10 | - | | | 1:1 w/Assistant *KR* |

**Core Stix Push/Pull**

| Date | Weights/Sets/Reps | Minutes | Surface | Procedure | Supervision |
|---|---|---|---|---|---|
| 2020-07-10 | purple/3/10 | - | | | 1:1 w/Assistant *KR* |

**Seated Swiss Ball Flexions**

| Date | Weights/Sets/Reps | Minutes | Surface | Procedure | Supervision |
|---|---|---|---|---|---|
| 2020-07-10 | -/-/- | 4' | | | 1:1 w/Assistant *KR* |

**Swiss Ball Trunk Rotations**

| Date | Weights/Sets/Reps | Minutes | Surface | Procedure | Supervision |
|---|---|---|---|---|---|
| 2020-07-10 | -/3/10 | - | | | 1:1 w/Assistant *KR* |

**Swiss Ball Knee to Chest**

| Date | Weights/Sets/Reps | Minutes | Surface | Procedure | Supervision |
|---|---|---|---|---|---|
| 2020-07-10 | -/3/10 | - | | | 1:1 w/Assistant *KR* |

**Estim W/Heat**

| Date | Weights/Sets/Reps | Minutes | Surface | Procedure | Supervision |
|---|---|---|---|---|---|
| 2020-07-10 | -/-/- | 15' | | | 1:1 w/Assistant *KR* |

**Daigle Himel Daigle PT - BG**
125 Bayou Gardens Blvd
Houma, LA 70364-1431
Phone: (985)223-4760
Fax: (985)223-4759
http://www.ptcenter-la.com/

# Daily Note / Billing Sheet

**Patient Name:** Lundberg, Teresa
**Date of Birth:**
**Referring Physician(s):** McCarthy, Kevin MD

**Surgery:** (Date/Type) 02/19/2020 TLIF L3-5
**Visit No.:** 4

**Insurance Name:** Enstar

**Date of Daily Note:** 07/10/2020
**Injury/Onset/Change of Status Date:** 06/30/2019 Insidious
**Diagnosis:** ICD10: Z47.89: Encounter for other orthopedic aftercare, M43.26: Fusion of spine, lumbar region, M54.5: Low back pain, M62.81: Muscle weakness (generalized)
**Date of Original Eval:** 06/29/2020
**Treatment Diagnosis:** ICD10: Z47.89: Encounter for other orthopedic aftercare, M43.26: Fusion of spine, lumbar region, M54.5: Low back pain, M62.81: Muscle weakness (generalized)
**Workers' Comp Claim:** HU000769994

## Subjective

**Treatment Side:** Right
**Current Complaints / Gains:** R side low back pain with numbness/tingling down R LE.

Pt continues to feel significant relief in R low back and down R LE.
**Before the injury/onset/change of status date, the patient was able to perform the following activities:**
**Self Care:**
**Changing & Maintaining Body Position:**
**Mobility: Walking & Moving Around:**
**Current Functional Limitations:**
**Self Care:** Sleep: Disturbed Sleep
**Changing & Maintaining Body Position:** Maintaining a Body Position: Remaining Standing, Standing
**Mobility: Walking & Moving Around:** IADLs: Food Preparation, Housekeeping
**Aggravating Factors:** Standing
**Home Health Care:** No
**Medical History:** High Blood Pressure
**Complicating/Personal Factors:** No Known Complicating Factors Affecting the Plan of Care
**Mental Status/Cognitive Function Appears Impaired?** No

## Objective

| CPT® Code | Direct Timed Codes | Units |
|---|---|---|
| 97110 | Therapeutic Exercise<br>See Flowsheet | 2 |
| 97140 | Manual Therapy<br>STM, MFR, L5-S1 gapping, B LE stretching | 1 |

| CPT® Code | Untimed Codes | Units |
|---|---|---|
| 97014 | E-Stim Unattended<br>High Volt<br>with MHP | 1 |

*CPT copyright 2019 American Medical Association. All rights reserved.*

## Assessment

**Assessment/Diagnosis:** Pt tol tx well today with no reports of increased pain during session. Pt is working well in the clinic and is completing all TEs with no difficulty. Pt continues to show improved sitting/standing posture. Pt progressing well with stability TEs. Pt exhibiting reduced trigger points in lumbar paraspinals. Pt responding well to manual therapy. Will progress pt as tolerated.
**Patient Education:** HEP, Postural Awareness
**Patient Demonstrates Compliance with Prescribed HEP**
**Rehab Potential:** Good
**Patient Problems:**
- Educational Needs
- Low Back Pain
- LE weakness
- Antalgic gait
- Lumbar ROM limitations
- Poor Posture

**Daigle Himel Daigle PT - BG**
125 Bayou Gardens Blvd
Houma, LA 70364-1431
Phone: (985)223-4760
Fax: (985)223-4759
http://www.ptcenter-la.com/

**Patient Name:** Lundberg, Teresa
**Date of Birth:**
**Document Date:** 07/10/2020

# Daily Note / Billing Sheet

- FOTO scoer of 51

**Short Term Goals:**
1: (1 Week) | Pt to be I with HEP. |
2: (2 Weeks) | Pt to report 4/10 low back pain at worst. |
3: (2 Weeks) | Pt to exhibit normal, pain free gait for all distances. |

**Long Term Goals:**
1: (4 Weeks) | Pt to report minimal to nil low back pain with all functional activities and ADLs. |
2: (4 Weeks) | Pt to exhibit at least 4+/5 LE strength with no fatiguing weakness. |
3: (4 Weeks) | Pt to exhibit functional lumbar ROM with no pain at end ranges. |
4: (4 Weeks) | Pt to exhibit normal standing posture and be able to wash dishes or do housework with no pain. |
5: (4 Weeks) | Pt to score at least 75 on FOTO. |

## Plan

**Instructions:** Progressing Patient Next Visit
Progress pt per POC.

PT, DPT

Ryan Ocker, PT
License #09965
*Electronically Signed by Ryan Ocker, PT on July 10, 2020 at 7am*

**Daigle Himel Daigle PT - BG**
125 Bayou Gardens Blvd
Houma, LA, 70364-1431
P: (985)223-4760
F: (985)223-4759
http://www.ptcenter-la.com/

# FLOWSHEET

**Patient:** Lundberg, Teresa

**Date:** 07/08/2020 **Start Date:** 06/29/2020

**Physician:** K. McCarthy, MD (1407843501)

**Diagnosis:** ICD10: Z47.89: Encounter for other orthopedic aftercare, M43.26: Fusion of spine, lumbar region, M54.5: Low back pain, M62.81: Muscle weakness (generalized)

**Location: gym**

**Manual Therapy**

| Date | Weights/Sets/Reps | Minutes | Surface | Procedure | Supervision |
|---|---|---|---|---|---|
| 2020-07-08 | -/-/- | 10' | | | 1:1 w/Therapist *KR* |

**Core Stix Stir The Pot**

| Date | Weights/Sets/Reps | Minutes | Surface | Procedure | Supervision |
|---|---|---|---|---|---|
| 2020-07-08 | purple/3/10 | - | | | 1:1 w/Assistant *KR* |

**Core Stix Push/Pull**

| Date | Weights/Sets/Reps | Minutes | Surface | Procedure | Supervision |
|---|---|---|---|---|---|
| 2020-07-08 | purple/3/10 | - | | | 1:1 w/Assistant *KR* |

**Seated Swiss Ball Flexions**

| Date | Weights/Sets/Reps | Minutes | Surface | Procedure | Supervision |
|---|---|---|---|---|---|
| 2020-07-08 | -/-/- | 4' | | | 1:1 w/Assistant *KR* |

**Swiss Ball Trunk Rotations**

| Date | Weights/Sets/Reps | Minutes | Surface | Procedure | Supervision |
|---|---|---|---|---|---|
| 2020-07-08 | -/3/10 | - | | | 1:1 w/Assistant *KR* |

**Swiss Ball Knee to Chest**

| Date | Weights/Sets/Reps | Minutes | Surface | Procedure | Supervision |
|---|---|---|---|---|---|
| 2020-07-08 | -/3/10 | - | | | 1:1 w/Assistant *KR* |

**Estim W/Heat**

| Date | Weights/Sets/Reps | Minutes | Surface | Procedure | Supervision |
|---|---|---|---|---|---|
| 2020-07-08 | -/-/- | 15' | | | 1:1 w/Assistant *KR* |

**Daigle Himel Daigle PT - BG**
125 Bayou Gardens Blvd
Houma, LA 70364-1431
Phone: (985)223-4760
Fax: (985)223-4759
http://www.ptcenter-la.com/

# Daily Note / Billing Sheet

**Patient Name:** Lundberg, Teresa
**Date of Birth:**
**Referring Physician(s):** McCarthy, Kevin MD

**Surgery:** (Date/Type) 02/19/2020 TLIF L3-5
**Visit No.:** 3

**Insurance Name:** Enstar

**Date of Daily Note:** 07/08/2020
**Injury/Onset/Change of Status Date:** 06/30/2019 Insidious
**Diagnosis:** ICD10: Z47.89: Encounter for other orthopedic aftercare, M43.26: Fusion of spine, lumbar region, M54.5: Low back pain, M62.81: Muscle weakness (generalized)
**Date of Original Eval:** 06/29/2020
**Treatment Diagnosis:** ICD10: Z47.89: Encounter for other orthopedic aftercare, M43.26: Fusion of spine, lumbar region, M54.5: Low back pain, M62.81: Muscle weakness (generalized)
**Workers' Comp Claim:** HU000769994

## Subjective

**Treatment Side:** Right
**Current Complaints / Gains:** R side low back pain with numbness/tingling down R LE.

Pt reports her R side low back and leg are feeling much better. Pt reports some pain in L UT and L hip today.
**Before the injury/onset/change of status date, the patient was able to perform the following activities:**
**Self Care:**
**Changing & Maintaining Body Position:**
**Mobility: Walking & Moving Around:**
**Current Functional Limitations:**
**Self Care:** Sleep: Disturbed Sleep
**Changing & Maintaining Body Position:** Maintaining a Body Position: Remaining Standing, Standing
**Mobility: Walking & Moving Around:** IADLs: Food Preparation, Housekeeping
**Aggravating Factors:** Standing
**Home Health Care:** No
**Medical History:** High Blood Pressure
**Complicating/Personal Factors:** No Known Complicating Factors Affecting the Plan of Care
**Mental Status/Cognitive Function Appears Impaired?** No

## Objective

| CPT® Code | Direct Timed Codes | Units |
|---|---|---|
| 97110 | Therapeutic Exercise<br>See Flowsheet | 2 |
| 97140 | Manual Therapy<br>STM, MFR, L5-S1 gapping, LE stretching | 1 |

| CPT® Code | Untimed Codes | Units |
|---|---|---|
| 97014 | E-Stim Unattended<br>High Volt<br>with MHP | 1 |

*CPT copyright 2019 American Medical Association. All rights reserved.*

## Assessment

**Assessment/Diagnosis:** Pt tol tx well today with no reports of increased pain during session. Pt is working well in the clinic and did well with new TEs today. Pt is exhibiting improved sitting/standing posture. Pt is also exhibiting decreased trigger points in R LQ today but did exhibiting increased trigger points in L piriformis today. Pt responded well to manual therapy. Will progress pt as tolerated.
**Patient Education:** HEP, postural awareness
**Patient Demonstrates Compliance with Prescribed HEP**
**Rehab Potential:** Good
**Patient Problems:**
- Educational Needs
- Low Back Pain
- LE weakness
- Antalgic gait
- Lumbar ROM limitations
- Poor Posture

**Daigle Himel Daigle PT - BG**
125 Bayou Gardens Blvd
Houma, LA 70364-1431
Phone: (985)223-4760
Fax: (985)223-4759
http://www.ptcenter-la.com/

**Daily Note / Billing Sheet**

**Patient Name:** Lundberg, Teresa
**Date of Birth:**
**Document Date:** 07/08/2020

- FOTO scoer of 51

**Short Term Goals:**
1: (1 Week) | Pt to be I with HEP. |
2: (2 Weeks) | Pt to report 4/10 low back pain at worst. |
3: (2 Weeks) | Pt to exhibit normal, pain free gait for all distances. |

**Long Term Goals:**
1: (4 Weeks) | Pt to report minimal to nil low back pain with all functional activities and ADLs. |
2: (4 Weeks) | Pt to exhibit at least 4+/5 LE strength with no fatiguing weakness. |
3: (4 Weeks) | Pt to exhibit functional lumbar ROM with no pain at end ranges. |
4: (4 Weeks) | Pt to exhibit normal standing posture and be able to wash dishes or do housework with no pain. |
5: (4 Weeks) | Pt to score at least 75 on FOTO. |

**Plan**

**Instructions:** Progressing Patient Next Visit
Progress pt per POC.

PT, DPT

Ryan Ocker, PT
License #09965
*Electronically Signed by Ryan Ocker on July 8, 2020 at 12:52 pm*

**Daigle Himel Daigle PT - BG**
125 Bayou Gardens Blvd
Houma, LA, 70364-1431
P: (985)223-4760
F: (985)223-4759
http://www.ptcenter-la.com/

PHYSICAL THERAPY & HAND CENTER
Leslie Daigle, PT
Eddie Himel, PT, DSc, OCS, Cert.MDT
John Daigle, PT, OCS, COMT
Tracy Palmer, PT, CAPP
Steven Landry, OT, CHT
Sawyer Triche, PT, DPT
Timothy B. Allen, PT, DPT
Joshua Graham, PT, DPT
Chase Chemmis, PTA

# FLOWSHEET

**Patient:** Lundberg, Teresa

**Date:** 07/02/2020 **Start Date:** 06/29/2020

**Physician:** K. McCarthy, MD (1407843501)

**Diagnosis:** ICD10: Z47.89: Encounter for other orthopedic aftercare, M43.26: Fusion of spine, lumbar region, M54.5: Low back pain, M62.81: Muscle weakness (generalized)

**Location: gym**

**Manual Therapy**

| Date | Weights/Sets/Reps | Minutes | Surface | Procedure | Supervision |
|---|---|---|---|---|---|
| 2020-07-02 | -/-/- | 10' | | | 1:1 w/Therapist *KR* |

**Seated Swiss Ball Flexions**

| Date | Weights/Sets/Reps | Minutes | Surface | Procedure | Supervision |
|---|---|---|---|---|---|
| 2020-07-02 | -/-/- | 4' | | | 1:1 w/Assistant *KR* |

**Swiss Ball Trunk Rotations**

| Date | Weights/Sets/Reps | Minutes | Surface | Procedure | Supervision |
|---|---|---|---|---|---|
| 2020-07-02 | -/3/10 | - | | | 1:1 w/Assistant *KR* |

**Swiss Ball Knee to Chest**

| Date | Weights/Sets/Reps | Minutes | Surface | Procedure | Supervision |
|---|---|---|---|---|---|
| 2020-07-02 | -/3/10 | - | | | 1:1 w/Assistant *KR* |

**Estim W/Heat**

| Date | Weights/Sets/Reps | Minutes | Surface | Procedure | Supervision |
|---|---|---|---|---|---|
| 2020-07-02 | -/-/- | 15' | | | 1:1 w/Assistant *KR* |

Daigle Himel Daigle PT - BG
125 Bayou Gardens Blvd
Houma, LA 70364-1431
Phone: (985)223-4760
Fax: (985)223-4759
http://www.ptcenter-la.com/

# Daily Note / Billing Sheet

**Patient Name:** Lundberg, Teresa
**Date of Birth:**
**Referring Physician(s):** McCarthy, Kevin MD

**Surgery:** (Date/Type) 02/19/2020 TLIF L3-5
**Visit No.:** 2

**Insurance Name:** Enstar

**Date of Daily Note:** 07/02/2020
**Injury/Onset/Change of Status Date:** 06/30/2019 Insidious
**Diagnosis:** ICD10: Z47.89: Encounter for other orthopedic aftercare, M43.26: Fusion of spine, lumbar region, M54.5: Low back pain, M62.81: Muscle weakness (generalized)
**Date of Original Eval:** 06/29/2020
**Treatment Diagnosis:** ICD10: Z47.89: Encounter for other orthopedic aftercare, M43.26: Fusion of spine, lumbar region, M54.5: Low back pain, M62.81: Muscle weakness (generalized)
**Workers' Comp Claim:** HU000769994

## Subjective

**Treatment Side:** Right
**Current Complaints / Gains:** R side low back pain with numbness/tingling down R LE.

Pt reports her low back back and leg symptoms are reduced today as compared to initial session.
**Before the injury/onset/change of status date, the patient was able to perform the following activities:**
- **Self Care:**
- **Changing & Maintaining Body Position:**
- **Mobility: Walking & Moving Around:**

**Current Functional Limitations:**
- **Self Care:** Sleep: Disturbed Sleep
- **Changing & Maintaining Body Position:** Maintaining a Body Position: Remaining Standing, Standing
- **Mobility: Walking & Moving Around:** IADLs: Food Preparation, Housekeeping

**Aggravating Factors:** Standing
**Home Health Care:** No
**Medical History:** High Blood Pressure
**Complicating/Personal Factors:** No Known Complicating Factors Affecting the Plan of Care
**Mental Status/Cognitive Function Appears Impaired?** No

## Objective

| CPT® Code | Direct Timed Codes | Units |
|---|---|---|
| 97110 | Therapeutic Exercise<br>See Flowsheet | 2 |
| 97140 | Manual Therapy<br>STM, MFR, L5-S1 gapping, LE stretching | 1 |

| CPT® Code | Untimed Codes | Units |
|---|---|---|
| 97014 | E-Stim Unattended<br>High Volt<br>with MHP | 1 |

CPT copyright 2019 American Medical Association. All rights reserved.

## Assessment

**Assessment/Diagnosis:** Pt tol tx well today with no reports of increased pain during session. Pt is working well in the clinic and is completing all TEs with no difficulty. Pt exhibited improved sitting/standing posture and had less pain with standing while at home. Pt exhibited reduced trigger points in low back and responded well to manual therapy today. Will progress pt as tolerated.
**Patient Education:** HEP, Postural Awareness
**Patient Demonstrates Compliance with Prescribed HEP**
**Rehab Potential:** Good
**Patient Problems:**
- Educational Needs
- Low Back Pain
- LE weakness
- Antalgic gait
- Lumbar ROM limitations
- Poor Posture

**Daigle Himel Daigle PT - BG**
125 Bayou Gardens Blvd
Houma, LA 70364-1431
Phone: (985)223-4760
Fax: (985)223-4759
http://www.ptcenter-la.com/

**Patient Name:** Lundberg, Teresa
**Date of Birth:**
**Document Date:** 07/02/2020

## Daily Note / Billing Sheet

- FOTO scoer of 51

**Short Term Goals:**
1: (1 Week) | Pt to be I with HEP. |
2: (2 Weeks) | Pt to report 4/10 low back pain at worst. |
3: (2 Weeks) | Pt to exhibit normal, pain free gait for all distances. |

**Long Term Goals:**
1: (4 Weeks) | Pt to report minimal to nil low back pain with all functional activities and ADLs. |
2: (4 Weeks) | Pt to exhibit at least 4+/5 LE strength with no fatiguing weakness. |
3: (4 Weeks) | Pt to exhibit functional lumbar ROM with no pain at end ranges. |
4: (4 Weeks) | Pt to exhibit normal standing posture and be able to wash dishes or do housework with no pain. |
5: (4 Weeks) | Pt to score at least 75 on FOTO. |

**Plan**

**Instructions:** Progressing Patient Next Visit
Progress pt per POC.

PT, DPT

Ryan Ocker, PT
License #09965
*Electronically Signed by Ryan Ocker, PT on July 2, 2020 at 3:38 pm*

**Daigle Himel Daigle PT - BG**
125 Bayou Gardens Blvd
Houma, LA, 70364-1431
P: (985)223-4760
F: (985)223-4759
http://www.ptcenter-la.com/

PHYSICAL THERAPY & HAND CENTER

## FLOWSHEET

**Patient:** Lundberg, Teresa

**Date:** 06/29/2020
**Physician:** K. McCarthy, MD (1407843501)
**Diagnosis:** ICD10: 00.0000: Unknown

**Location: gym**

### Manual Therapy

| Date | Weights/Sets/Reps | Minutes | Surface | Procedure | Supervision |
|---|---|---|---|---|---|
| 2020-06-29 | -/-/- | 10' | | | 1:1 w/Therapist *KR* |

### Swiss Ball Trunk Rotations

| Date | Weights/Sets/Reps | Minutes | Surface | Procedure | Supervision |
|---|---|---|---|---|---|
| 2020-06-29 | -/3/10 | - | | | 1:1 w/Assistant *KR* |

### Swiss Ball Knee to Chest

| Date | Weights/Sets/Reps | Minutes | Surface | Procedure | Supervision |
|---|---|---|---|---|---|
| 2020-06-29 | -/3/10 | - | | | 1:1 w/Assistant *KR* |

### Estim W/Heat

| Date | Weights/Sets/Reps | Minutes | Surface | Procedure | Supervision |
|---|---|---|---|---|---|
| 2020-06-29 | -/-/- | 15' | | | 1:1 w/Assistant *KR* |

Daigle Himel Daigle PT - BG
125 B ay ou G ardens B lvd
H oum a, L A 7 0364 -14 31
Phone: (985)223-4760
Fax: (985)223-4759
http://www.ptcenter-la.com/

# Plan of Care

**Patient Name:** Lundberg, Teresa
**Date of Birth:**
**Referring Physician(s):** McCarthy, Kevin MD

**Surgery:** (Date/Type) 02/19/2020 TLIF L3-5
**Visit No.:** 1

**Date of Plan of Care:** 06/29/2020
**Injury/Onset/Change of Status Date:** 06/30/2019 Insidious
**Diagnosis:** ICD10: Z47.89: Encounter for other orthopedic aftercare, M43.26: Fusion of spine, lumbar region, M54.5: Low back pain, M62.81: Muscle weakness (generalized)
**Date of Original Eval:** 06/29/2020
**Treatment Diagnosis:** ICD10: Z47.89: Encounter for other orthopedic aftercare, M43.26: Fusion of spine, lumbar region, M54.5: Low back pain, M62.81: Muscle weakness (generalized)

## Assessment

**Assessment/Diagnosis:** Pt is a 52 y/o female presenting to the clinic s/p TLIF of L3-5 on 2/19/2020. Pt had relief of low back pain and symptoms down R leg until ~2 months ago when she began to have low back pain and R LE pain as well. Back pain and symptoms down R LE are worst with standing for long periods and when pt is cooking or washing dishes. Pt is most comfortable when sitting or lying down on side in lumbar flexion. Pt did have increased leg symptoms with SLR with increased pain with DF but no increase with cervical flexion. Pt had normal sensation. Pt did have increased pain with lumbar extension and R side bending but no increase in R LE symptoms. Pt also had positive torsion test on R side at L5-S1. Pt is exhibiting signs/symptoms of possible stenosis on R side at level L5-S1. Pt is appropriate for and would benefit from PT treatment in order to address problems listed above and to return pt to a normal functional level.

**Patient Education:** HEP, Postural Awareness

**Patient Demonstrates Compliance with Prescribed HEP**

Following the evaluation and extensive patient education regarding diagnosis, prognosis, and treatment goals, the patient (parent/guardian, power of attorney holder) actively participated in the creation of the current goals and agrees to the current treatment plan.

**Rehab Potential:** Good

**Contraindications to Therapy:** None

**Patient Problems:**
- Educational Needs
- Low Back Pain
- LE weakness
- Antalgic gait
- Lumbar ROM limitations
- Poor Posture
- FOTO scoer of 51

**Short Term Goals:**
1: (1 Week) | Pt to be I with HEP. |
2: (2 Weeks) | Pt to report 4/10 low back pain at worst. |
3: (2 Weeks) | Pt to exhibit normal, pain free gait for all distances. |

**Long Term Goals:**
1: (4 Weeks) | Pt to report minimal to nil low back pain with all functional activities and ADLs. |
2: (4 Weeks) | Pt to exhibit at least 4+/5 LE strength with no fatiguing weakness. |
3: (4 Weeks) | Pt to exhibit functional lumbar ROM with no pain at end ranges. |
4: (4 Weeks) | Pt to exhibit normal standing posture and be able to wash dishes or do housework with no pain. |
5: (4 Weeks) | Pt to score at least 75 on FOTO. |

## Plan

**Frequency:** 2-3 times a week
**Duration:** 4 weeks
**Plan:** Begin Plan as Outlined
**Treatment to be provided:**

**Procedures**

Therapeutic Exercises (ROM, Strength, Endurance, Stability), Gait Training (Even Surfaces, Uneven Surfaces, Stairs, Curbs), Neuromuscular Rehabilitation (Balance/Proprioception Training, Muscle Re-Education, Sequencing, Coordination, PNF), Manual Therapy (Soft Tissue Mobilization, Joint Mobilization, Spinal Mobilization, Myofascial Release, Muscle Energy Techniques, Manual Resistive Exercise, Dry Needling/Intramuscular Manual Therapy, Graston or ASTYM Techniques), Patient Education (Home Exercise Program, Postural Training, Ergonomics, Lifting Mechanics)

**Modalities**

**Daigle Himel Daigle PT - BG**
125 B ay ou G ardens B lvd
H oum a, L A 7 0364 -14 31
Phone: (985)223-4760
Fax: (985)223-4759
http://www.ptcenter-la.com/

**Patient Name:** Lundberg, Teresa
**Date of Birth:**
**Document Date:** 06/29/2020

## Plan of Care

To Improve (Pain Relief, Decrease Inflammation, Increase Blood Flow, Improve Tissue Healing), Electrical Stimulation (High Volt, Interferential), Cryotherapy (Ice Pack), Hot Packs

Certification of Medical Necessity: It will be understood that the treatment plan mentioned above is certified medically necessary by the documenting therapist and referring physician mentioned in this report. Unless the physician indicates otherwise through written correspondence with our office, all further referrals will act as certification of medical necessity on the treatment plan indicated above.

Thank you for this referral. If you have questions regarding this plan of care, please contact me at (985)223-4760.

Please sign and return: Fax#: (985)223-4759

I certify the need for these services furnished under this plan of treatment and while under my care.

__I have no revisions to the plan of care.
__Revise the plan of care as follows________________

PT, DPT

Ryan Ocker, PT
License #09965
*Electronically Signed by Ryan Ocker, PT on June 30, 2020 at 9:11 am*

Physician Signature__________________
K. McCarthy, MD
Date:__________ Time:__________

Daigle Himel Daigle PT - BG
125 B ay ou G ardens B lvd
H oum a, L A 7 0364 -14 31
Phone: (985)223-4760
Fax: (985)223-4759
http://www.ptcenter-la.com/

# Daily Note / Billing Sheet

**Patient Name:** Lundberg, Teresa
**Date of Birth:**
**Referring Physician(s):** McCarthy, Kevin MD

**Surgery:** (Date/Type) 02/19/2020 TLIF L3-5
**Visit No.:** 1

**Insurance Name:** Enstar

**Date of Daily Note:** 06/29/2020
**Injury/Onset/Change of Status Date:** 06/30/2019 Insidious
**Diagnosis:** ICD10: Z47.89: Encounter for other orthopedic aftercare, M43.26: Fusion of spine, lumbar region, M54.5: Low back pain, M62.81: Muscle weakness (generalized)
**Date of Original Eval:** 06/29/2020
**Treatment Diagnosis:** ICD10: Z47.89: Encounter for other orthopedic aftercare, M43.26: Fusion of spine, lumbar region, M54.5: Low back pain, M62.81: Muscle weakness (generalized)
**Workers' Comp Claim:** HU000769994

## Subjective

**Treatment Side:** Right
**Current Complaints / Gains:** R side low back pain with numbness/tingling down R LE.
**Before the injury/onset/change of status date, the patient was able to perform the following activities:**
**Self Care:**
**Changing & Maintaining Body Position:**
**Mobility: Walking & Moving Around:**
**Current Functional Limitations:**
**Self Care:** Sleep: Disturbed Sleep
**Changing & Maintaining Body Position:** Maintaining a Body Position: Remaining Standing, Standing
**Mobility: Walking & Moving Around:** IADLs: Food Preparation, Housekeeping
**Pain Location:** Low Back Pain
**Pain Scale: Worst:** 7 **Best:** 3 **Current:** 6
**Pain Description:** Constant
**Pain Follow-up Plan:** Pt to report minimal to nil low back pain with all functional activities and ADLs.
**Aggravating Factors:** Standing
**Home Health Care:** No
**Medical History:** High Blood Pressure
**Complicating/Personal Factors:** No Known Complicating Factors Affecting the Plan of Care
**Mental Status/Cognitive Function Appears Impaired?** No

## Objective

| CPT® Code | Direct Timed Codes | Units |
|---|---|---|
| 97110 | Therapeutic Exercise<br>See Flowsheet | 1 |
| 97140 | Manual Therapy<br>STM, MFR, L5-S1 gapping, LE stretching | 1 |

| CPT® Code | Untimed Codes | Units |
|---|---|---|
| 97014 | E-Stim Unattended<br>High Volt<br>with MHP | 1 |

CPT copyright 2019 American Medical Association. All rights reserved.

## Assessment

**Assessment/Diagnosis:** Pt is a 52 y/o female presenting to the clinic s/p TLIF of L3-5 on 2/19/2020. Pt had relief of low back pain and symptoms down R leg until ~2 months ago when she began to have low back pain and R LE pain as well. Back pain and symptoms down R LE are worst with standing for long periods and when pt is cooking or washing dishes. Pt is most comfortable when sitting or lying down on side in lumbar flexion. Pt did have increased leg symptoms with SLR with increased pain with DF but no increase with cervical flexion. Pt had normal sensation. Pt did have increased pain with lumbar extension and R side bending but no increase in R LE symptoms. Pt also had positive torsion test on R side at L5-S1. Pt is exhibiting signs/symptoms of possible stenosis on R side at level L5-S1. Pt is appropriate for and would benefit from PT treatment in order to address problems listed above and to return pt to a normal functional level.
**Patient Education:** HEP, Postural Awareness
**Patient Demonstrates Compliance with Prescribed HEP**
**Rehab Potential:** Good
**Patient Problems:**

Daigle Himel Daigle PT - BG
125 B ay ou G ardens B lvd
H oum a, L A 7 0364 -14 31
Phone: (98 5)223-4760
Fax: (98 5)223-4759
http://www.ptcenter-la.com/

**Patient Name:** Lundberg, Teresa
**Date of Birth:**
**Document Date:** 06/29/2020

## Daily Note / Billing Sheet

- Educational Needs
- Low Back Pain
- LE weakness
- Antalgic gait
- Lumbar ROM limitations
- Poor Posture
- FOTO scoer of 51

**Short Term Goals:**

1: (1 Week) | Pt to be I with HEP. |
2: (2 Weeks) | Pt to report 4/10 low back pain at worst. |
3: (2 Weeks) | Pt to exhibit normal, pain free gait for all distances. |

**Long Term Goals:**

1: (4 Weeks) | Pt to report minimal to nil low back pain with all functional activities and ADLs. |
2: (4 Weeks) | Pt to exhibit at least 4+/5 LE strength with no fatiguing weakness. |
3: (4 Weeks) | Pt to exhibit functional lumbar ROM with no pain at end ranges. |
4: (4 Weeks) | Pt to exhibit normal standing posture and be able to wash dishes or do housework with no pain. |
5: (4 Weeks) | Pt to score at least 75 on FOTO. |

**Plan**

**Instructions:** Progressing Patient Next Visit

PT, DPT

Ryan Ocker, PT
License #09965
*E lectronically S igned b y R yan O ck er, PT on June 30, 2020 at 9:11 am*